**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____X

SOUND AROUND, INC.,                    :
                                       :
                       Plaintiff,      :        Case No.: 1:24-cv-01986
                                       :        (JHR)
        v.                             :
                                       :
MOISES FRIEDMAN, SHULIM ELIEZER        :
ILOWITZ, ML IMPORTS, INC., CYRF, INC., :
LRI GROUP, LLC, EXECUTIVE SERVICES,    :
EXECUTIVE LAUNDRY, LLC, MDF            :
MARKETING, INC., WORLD GROUP           :
IMPORT, LLC, HEFEI PAIDONG OUTDOOR     :
PRODUCTS CO., LTD.,                    :
                                       :
                       Defendants.     :
_____X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

_Respectfully submitted,_

ALLYN & FORTUNA LLP
400 Madison Avenue, Suite 10D
New York, New York 10017
(212) 213-8844

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT……………………………………….………...……….1

FACTUAL BACKGROUND...…………………………...…….……………………….2

ARGUMENT…………….………...…………………………….……………………...….6

    I.    There Are No Restrictive Covenants for this Court to Enforce.……………………...7

        A.  The Freidman Employment Agreement is Not Enforceable...…………………7

        B.  Ilowitz Never Signed a Non-Competition or Confidentiality Agreement....…….9

    II.    Defendants Are Not in Violation of Federal Trademark Law………………………10

    III.    Defendants Are Not in Possession of Any Confidential, Proprietary, or Trade Secret Information of Plaintiff…………………………………………..11

    IV.    Defendants Are Not Engaging in Unlawful Activity…………………..……………13

        A.  Defendants Are Not Engaged in Unfair Competition or Diverting Corporate Opportunities……………………………………………………13

        B.  Defendants Are Not in Breach of Any Fiduciary Duty or Duty of Loyalty to Plaintiff…………………………...…………………………….…………..14

CONCLUSION…………………………………………………………….……..16

## TABLE OF AUTHORITIES

**CASES**                                                               **Page**

Alexander & Alexander of New York, Inc. v. Fritzen,
    147 A.D.2d 241 (1st Dept. 1989)……………………………………………………13-14

American Broadcasting Companies, Inc. v. Wolf,
    2 N.Y.2d 394 (1981)…………………………………………………………………...7-8

Ashland Management Inc. v. Altair Investments N.A., L.L.C.,
    59 A.D.3d 97 (1st Dept. 2008), *aff'd as modified*, 14 N.Y.3d 774 (2010)…………...9, 11

BDO Seidman v. Hirschberg,
    93 N.Y.2d 382 (1999)…………………………………………………………………...8

Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.,
    719 F.2d 42 (2d Cir. 1983)……………………………………………………………6

Bluebanana Group v. Sargent,
    176 A.D.3d 408 (2019)…………………………………………………………………14

Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH,
    843 F.3d 48 (2d Cir. 2016)……………………………………………………………7

Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.,
    42 N.Y.2d 496 (1977)…………………………………………………………………8

Cornwell v. NRT New York LLC,
    95 A.D.3d 637 (1st Dept. 2012)…………………………………………………...15

EBC I, Inc. v. Goldman, Sachs & Co.,
    5 N.Y.3d 11 (2005)…………………………………………………………………...15

Geritrex Corp. v. Dermarite Industries, LLC,
    910 F.Supp. 955 (S.D.N.Y. 1996)…………………………………………...11-12

Innovation Ventures, LLC v. Ultimate One Distributing Corp.,
    76 F.Supp.3d 137 (E.D.N.Y. 2016)…………………………………………………14

Mazurek v. Armstrong,
    520 U.S. 968, 117 S. Ct. 1865 (1997)……………………………………………6

Moser v. Devine Real Estate, Inc. (Fla.),
    42 A.D.3d 731 (3rd Dept. 2007)……………………………………………………14

New York Pathological & X-Ray Labs., Inc. v. Imm. & Naturalization Serv.,,
    523 F.2d 79 (2d Cir. 1975)……………………………………………………………6

Northeast General Corporation v. Wellington Advertising, Inc.,
    82 N.Y.2d 158 (1993)……………………………………………………………..15

Palmetto Partners, L.P. v. AJW Qualified Partners, LLC,
    83 A.D.3d 804 (2011)……………………………………………………………..15

PaperCutter, Inc. v. Fay's Drug Co.,
    900 F.2d 558 (2d Cri. 1990)………………………………………………………10

Peregrine Myanmar Ltd. v. Segal,
    89 F.3d 41 (2d Cir. 1996)……………………………………………………...6-7

Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    48 N.Y.2d 84 (1979)……………………………………………………………..8

Quik Park W. 57, LLC v. Bridgewater Operating Corp.,
    148 A.D.3d 444 (1st Dept. 2017)…………………………………………………15

Sanders v. Air Line Pilots Association, International,
    473 F.2d 244 (2d Cir. 1972)………………………………………………………6

Swift & Co. v. United States,
    196 U.S. 375 (1905)……………………………………………………………..7

The KatiRoll Company, Inc. v. Kati Junction, Inc.,
    33 F.Supp.3d 359 (S.D.N.Y. 2014)………………………………………………14

Time, Inc. v. Petersen Publishing Co. L.L.C.,
    173 F.3d 113 (2d Cir. 1999)………………………………………………………10

Tom Doherty Assocs., Inc. v. Saban Ent., Inc.,
    60 F.3d 27 (2d Cir. 1995)…………………………………………………………11

Village of Kiryas Joel v. County of Orange,
    144 A.D.3d 895 (2nd Dept. 2016)………………………………………………14

Walter Karl, Inc. v. Wood,
    137 A.D.2d 22 (2nd Dept. 1988)………………………………………………..12

Warner-Lambert Co. v. Northside Development Corp.,
    86 F.3d 3 (2d Cir. 1996)…………………………………………………………6

**STATUES**                                                                                  **PAGE**

18 U.S.C.A. § 1836……………………………………………………………………..11

18 U.S.C.A. § 1839……………………………………………………………………...12

F.R.C.P. Rule 65……………………………………………………………………….6

N.Y. C.P.L.R. § 3016(b)…………………………………………………………………15

**SECONDARY SOURCES**                                                                        **PAGE**

Restatement [Second] of Torts § 874, Comment a………………………………..…………15

## PRELIMINARY STATEMENT

Defendants MOISES FRIEDMAN, SHULIM ELIEZER ILOWITZ (with Friedman, the "Individual Defendants"), ML IMPORTS, INC., CYRF, INC., LRI GROUP, LLC, MDF MARKETING, INC., and WORLD GROUP IMPORT, LLC (with ML Imports, CYRF, LRI, and MDF, the "Corporate Defendants") (collectively, the "Defendants") respectfully submit this Memorandum of Law in opposition to Plaintiff SOUND AROUND, INC. ("Plaintiff")'s motion for a preliminary injunction. For the reasons set forth herein, Plaintiff's motion should be denied in its entirety, together with such other and further relief as this Court deems appropriate.

Plaintiff asks this Court to: (1) enforce restrictive covenants against the Individual Defendants which either are no longer or never were in effect; (2) order the Defendants to return "confidential, proprietary, and trade secret information" belonging to Plaintiff, which Defendants do not possess; and (3) enjoin the Defendants "from continuing their unlawful activity," without demonstrating that any of the Defendants are engaging in any such activity. Plaintiff's motion for a preliminary injunction is replete with false and unsupported statements which have been refuted by the Individual Defendants in the Affirmation of Moises Friedman (hereinafter, the "Friedman Aff.") and the Affirmation of Shulim Eliezer Ilowitz (hereinafter, the "Ilowitz Aff.") submitted in opposition. Plaintiff's specific requests on this motion are contained on page 15 of their Memorandum of Law. (See the Declaration of Nicholas Fortuna, hereinafter, the Fortuna Decl., at ¶ 2.) These specific requests, and this action generally, are part of a concerted campaign by Plaintiff to bar the Defendants from engaging in any business and to remove honest competitors from the marketplace. However, because Plaintiff is not entitled to any of the relief requested, Plaintiff's motion for a preliminary injunction must be denied.[1]

---

[1] Defendants respectfully refer this Court to their motion to dismiss Plaintiff's Complaint, which was filed via CM/ECF at Document Nos. 52-56 on May 17, 2024. In that motion, Defendants argue in detail why Plaintiff's has failed to state

## FACTUAL BACKGROUND

Plaintiff's motion for a preliminary injunction is based on a fatal factual misapprehension: Plaintiff claims that the individual Defendants were, until early 2024, employees of Plaintiff. However, the evidence demonstrates that Friedman has not been an employee of Plaintiff since 2018, the last year that he was paid as a W-2 employee. (Friedman Aff., ¶ 6.) Starting in 2018 and continuing until his termination in early 2024, Friedman was an independent contractor who was paid sales commissions only via Form 1099, worked independently, and operated his own business as a buyer. (Friedman Aff., ¶¶ 6-7.) The "restrictive covenant" that Plaintiff seeks to enforce against Friedman is contained within an employment agreement dated June 6, 2018. (*See* Declaration of Jerry Brach, Doc. No. 35, hereinafter the "Brach Decl.," Ex. 1.) Paragraph 11 of that agreement provides that Friedman, as "Party B accepted upon himself in an effective manner not to compete (non-compete) with Party A," referring to Plaintiff, "neither during the hours in which he works as an employee with Party A, nor if he leaves his job either involuntarily, or voluntarily, or if he they [*sic*] will terminate him – for 2 years after he leaves the job." Not only is this non-competition provision not enforceable under New York law, as discussed below, but its effectiveness expired two years after Friedman ceased to be an employee of Plaintiff – in 2020. (Friedman Aff., ¶ 6.)

Likewise, Ilowitz has not been an employee of Plaintiff since 2022, when he ceased to be paid as a W-2 employee and transitioned to an independent contractor who was paid sales commissions only via form 1099, worked independently, and operated his own business as a buyer. (Ilowitz Aff., ¶ 7-8.) The "restrictive covenant" that Plaintiff seeks to enforce against Ilowitz is contained within the Sound Around Inc. Policy & Practices Guide ("Guide"), which is a handbook for employees of Plaintiff. (Brach Decl., Ex. 2.) There is no non-competition provision in the

---

a claim on the causes of action in its Complaint, including those causes of action on which Plaintiff relies in its motion for a preliminary injunction.

Guide. The provision regarding confidentiality is extremely vague, and states only that "[k]eeping company information, pricing structures and other financial data as well as any other proprietary information confidential is important. Employees may be asked to sign a proprietary information agreement and whether you sign it or not, the information must be kept confidential." (Brach Decl., Ex. 2, pg. 13.) In signing the Guide, Ilowitz acknowledged that it did "not create an expressed or implied contract or covenant of any type between the company and me." (Brach Decl., Ex. 3.) As discussed below, this is not an enforceable confidentiality agreement. Ilowitz was never asked to sign an actual confidentiality agreement by Plaintiff, and never signed any other agreement related to his employment, which ended as of 2022. (Ilowitz Aff., ¶ 5.)

As independent contractors, Friedman and Ilowitz used their knowledge and expertise in the industry to develop their own products, starting with coming up with new product ideas, leveraging relationships with factories in China to put those ideas into production, shepherd the products from China to be imported to the United States, and market those products for sale to consumers. (Freidman Aff., ¶¶ 7-8; Ilowitz Aff., ¶¶ 7-8.) Any contacts and knowhow utilized by Friedman and Ilowitz in connection with their product development businesses was developed by them on their own, and not using Plaintiff's resources or information. (Friedman Aff., ¶¶ 7-8; Ilowitz Aff., ¶¶ 7-8.)

Friedman and Ilowitz bore all costs related to the products they developed, including but not limited to import duties, shipping containers, storage and warehousing, advertising placement, advertising agency fees, administrative fees, and finance fees. (Friedman Aff., ¶ 9; Ilowitz Aff., ¶ 9.) Friedman and Ilowitz then offered Plaintiff certain products which Plaintiff could then sell to consumers via online retail platforms such as Amazon, Walmart, and Target. (Friedman Aff., ¶ 7; Ilowitz Aff., ¶ 7.) However, they were under no obligation to offer every product idea they had or

developed to Plaintiff, as they had no contractual obligation of exclusivity with respect to Plaintiff. (Friedman Aff., ¶ 14; Ilowitz Aff., ¶ 14.)

In operating their own businesses separate from and after the termination of their independent contractor relationship with Plaintiff, Friedman and Ilowitz relied exclusively on their own knowledge and information and not on any resources obtained from Plaintiff. In fact, Plaintiff had no proprietary strategies, formulae, or other information or know-how to bestow on the Defendants, and Defendants certainly did not steal any proprietary information from Plaintiff. (Friedman Aff., ¶ 27; Ilowitz Aff., ¶ 30.) Plaintiff should not maintain customer lists for sales of products made through Amazon, as per Amazon policy, and at no time did the Defendants steal customer lists or information from Plaintiff. (Ilowitz Aff., ¶ 34.) The remainder of what Plaintiff claims is its proprietary or confidential information – for example, the substance of product listings and products photography – is so vaguely described and universally applicable to many businesses as to be meaningless.

Plaintiff's claims in its motion for a preliminary injunction are so overstated and unsupported that they have lost all credibility. For example, Plaintiff has claimed, without basis, that Friedman and Ilowitz have been "stealing Plaintiff's funds for likely years and using them for their own personal and business needs" and that Friedman paid off his personal credit card with Plaintiff funds. (Brach Decl., ¶¶ 40, 44.) In fact, Plaintiff had a practice of asking Friedman to use his personal credit card to engage in a review-purchasing scheme that Plaintiff would be prohibited from engaging in under Amazon's vendor policies. Plaintiff then permitted Friedman to reimburse himself for these charges. (Friedman Aff., ¶ 21.) As another example, Plaintiff claims that the Defendants stole customer lists from Plaintiff based on an email that Ilowitz sent himself an email with a file called "Recall Order Export.csv" attached. (Brach Decl., ¶ 72; Ex. 28.) The reason that

Ilowitz downloaded this particular customer information – and only this information – was to send notices regarding a recall on a bike helmet, as required by the Consumer Product Safety Commission. (Ilowitz Aff., ¶ 34.) Plaintiff should not have been maintaining customer information in its systems generally because such conduct is prohibited by Amazon policies. (Ilowitz Aff., ¶ 34.)

As another example, Plaintiff has repeatedly claimed that the Defendants have stolen their Amazon Vendor Central and Walmart Drop Ship Vendor ("DSV") accounts or "licenses." This is patently false. Each Amazon seller is entitled to one Vendor Central account, and Plaintiff maintains their Vendor Central account to this day. (Freidman Aff., ¶ 34; Ilowitz Aff., ¶ 38.) Friedman and Ilowitz obtained their own Vendor Central account, which had no impact on Plaintiff's Vendor Central account. (Freidman Aff., ¶ 34; Ilowitz Aff., ¶ 38.) Friedman and Ilowitz did not obtain their own Walmart DSV account as alleged by Plaintiff. (Ilowitz Aff., ¶ 39.) The login with Century Distribution Systems, Inc. that Ilowitz obtained for his work with Plaintiff is *not* an Amazon Vendor Central account or "license" and has never been used by Ilowitz for non-Sound Around products. (Ilowitz Aff., ¶ 40.)

Plaintiff also claims that the Defendants have violated a trademark that Plaintiff has not even attempted to demonstrate is worthy of federal trademark protection, in the absence of any evidence that the Defendants are violating this alleged trademark.[2] Plaintiff goes one step further and claims ownership of several trademark applications submitted by ML Imports and World Group Imports as applied to products developed independently by Friedman and Ilowitz, despite Plaintiff having no colorable claim of ownership to those marks.

---

[2] Despite making several allegations regarding Defendants' alleged infringement of Plaintiff's trade dress in the Complaint, Plaintiff does not seek any preliminary injunctive relief related to that alleged trade dress, possibly because Plaintiff cannot establish any entitlement to any articulable trade dress under federal or common law.

## ARGUMENT

A party seeking a preliminary injunction pursuant to F.R.C.P. 65 must establish "(i) irreparable harm *and* (ii) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" its favor. Warner-Lambert Co. v. Northside Development Corp., 86 F.3d 3, 6 (2d Cir. 1996). The Supreme Court has noted that "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867 (1997), *quoting* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed.1995).

The showing of irreparable harm is "perhaps the single most important prerequisite for the issuance of a preliminary injunction." Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp., 719 F.2d 42, 45 (2d Cir. 1983). In order to establish entitlement to irreparable harm, the plaintiff must demonstrate that "there is a continuing wrong which cannot be adequately redressed by final relief on the merits" and "where money damages cannot provide adequate compensation." New York Pathological & X-Ray Laboratories, Inc. v. Immigration & Naturalization Serv., 523 F.2d 79, 81 (2d Cir. 1975).

In addition, the relief award on a preliminary injunction must be stated specifically and "describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). A requested injunction may not be so vague that "an enjoined party may unwittingly and unintentionally transcend its bounds." Sanders v. Air Line Pilots Association, International, 473 F.2d 244, 247 (2d Cir. 1972); *see also* Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 51 (2d Cir. 1996) (holding that an "injunction must be more

specific than a simple command that the defendant obey the law"); *see also* <u>Swift & Co. v. United States</u>, 196 U.S. 375, 396 (1905) (cautioning that federal courts "may not sanction a decree so vague as to put the whole conduct of the defendants' business at the peril of a summons for contempt"). Therefore,

> injunctive relief should be "no broader than necessary to cure the effects of the harm caused by the violation," <u>Forschner Group, Inc. v. Arrow Trading Co.</u>, 124 F.3d 402, 406 (2d Cir. 1997), and "should not impose unnecessary burdens on lawful activity," <u>Patsy's Brand, Inc. v. I.O.B. Realty, Inc.</u>, 317 F.3d 209, 220 (2d Cir. 2003).

<u>Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH</u>, 843 F.3d 48, 72 (2d Cir. 2016).

Here, Plaintiff is not entitled to a preliminary injunction because it cannot demonstrate that it will suffer irreparable harm absent the preliminary injunction, both because Defendants are not engaged in the conduct alleged by Plaintiff and because Plaintiff cannot articulate *any* damages. Plaintiff has also failed to demonstrate that it is likely to succeed on the merits of the claims in its Complaint.

### I.   <u>There Are No Restrictive Covenants for this Court to Enforce.</u>

Plaintiff claims, without basis, that Friedman and Ilowitz are employees who are subject to "restrictive covenants" which this Court should enforce. However, no such restrictive covenants exist.

### A.  <u>The Friedman Employment Agreement is Not Enforceable.</u>

The Friedman employment agreement, which was entered into in 2018, contained a non-competition provision which is not enforceable under New York law. As the Court of Appeals held in <u>American Broadcasting Companies, Inc. v. Wolf</u>, an anticompetitive restrictive covenant

> will be rigorously examined and specifically enforced only if it satisfies certain established requirements. Indeed, a court normally will not decree specific enforcement of an employee's anticompetitive covenant unless necessary to protect the trade secrets, customer lists or good will of the employer's business, or perhaps

when the employer is exposed to special harm because of the unique nature of the employee's services And, an otherwise valid covenant will *404 not be enforced if it is unreasonable in time, space or scope or would operate in a harsh or oppressive manner. There is, in short, general judicial disfavor of anticompetitive covenants contained in employment contracts.

(*internal citations omitted*.) 2 N.Y.2d 394, 403–404 (1981). A restrictive covenant is only reasonable and permitted under New York law if it "(1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388–389 (1999). New York Courts are loath to enforce restrictive covenants that "prevent an employee from pursuing a similar vocation after termination of employment." Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp., 42 N.Y.2d 496, 499 (1977); *see also* Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 48 N.Y.2d 84, 86 (1979) (holding that "powerful considerations of public policy militate against sanctioning the loss of a man's livelihood").

Here, Plaintiff has not demonstrated that the restrictive covenant in the employment agreement is no greater than necessary to protect its legitimate business interests or that it does not impose an undue hardship on Friedman. Friedman's knowledge of his own business, which he obtained by operating as an independent contractor buyer since 2018, was developed by him and Plaintiff has no legitimate interest in restricting the continued operation of his business. As detailed in Section II *below*, Friedman has no confidential, proprietary, or trade secret information belonging to Plaintiff that he is using and in which Plaintiff has a legitimate interest, justifying the enforcement of an impermissibly broad restrictive covenant.

The restriction is unduly burdensome on Friedman, as it is not limited in its geographic scope and effectively bars Friedman from working "as an employee or any other types of work for others in this line of business." (Brach Decl., Ex. 1.) This burdensome restriction would effectively

eliminate Friedman's ability to engage in meaningful employment in the area in which he has developed his knowledge and skills, robbing him of his ability to earn a living for himself and his family. Plaintiff has also not demonstrated that this broad restriction is no more than is required for the legitimate protection of Plaintiff, and not just an attempt to eliminate all possibility of competition in a crowded marketplace.

In addition, even if the restrictive covenant was enforceable at one point, it has since expired. Under the express terms of the employment agreement, Friedman was only to be restricted while he was an employee of Plaintiff and for two years thereafter. Since 2018, the last year that Friedman was paid as a W-2 employee by Plaintiff, Friedman has been an independent contractor and no longer operating under the terms of the employment agreement. By 2020, two years after the end of his employment with Sound Around, Friedman was no longer restricted in any way.

### B. Ilowitz Never Signed a Non-Competition or Confidentiality Agreement.

Plaintiff is also asking this Court to enforce a two-year restrictive covenant against Ilowitz, despite the fact that he never signed any agreement related to his employment, let alone one in which he agreed not to compete with Plaintiff. Ilowitz's acknowledgment of receipt of Plaintiff's Guide – what is essentially a form employee handbook and expressly not a contract – is not sufficient to create any obligation on the part of Ilowitz to not compete or disclose confidential information. Plaintiff's citation to Ashland Management Inc. v. Altair Investments N.A., LLC, is inapposite, as that case involved employees who actually signed confidentiality agreements. 59 A.D.3d 97 (1st Dept. 2008), *aff'd as modified*, 14 N.Y.3d 774 (2010). Here, by contrast, Ilowitz merely acknowledged receiving a handbook that stated only that employees *may* be asked to sign a proprietary information agreement but never was asked to sign any such agreement.

Because neither Friedman nor Ilowitz is subject to an enforceable restrictive covenant, this Court should deny that portion of Plaintiff's motion which seeks a preliminary injunction enforcing the restrictive covenants against the Individual Defendants as Plaintiff has no likelihood of succeeding on these claims.

## II.    Defendants Are Not In Violation of Federal Trademark Law.

Plaintiff alleges that a preliminary injunction is required because Defendants are currently using the "SCOOTKID" trademark in association with their children's scooter product, which is not the case. (Friedman Aff., ¶ 24; Ilowitz Aff., ¶ 27). Because there is no threat of any continuing harm to Plaintiff or any harm that cannot be adequately redressed by final relief on the merits, Plaintiff's request for relief related to the SCOOTKID trademark should be denied.[3]

Plaintiff also asks this Court to declare that the trademarks that the Defendants developed as independent contractors. and which ML Imports and World Group Import submitted for registration with the United States Patent and Trademark Office in 2023 and after the Individual Defendants' relationship with Plaintiff ended in early 2024. are the property of Plaintiff. Plaintiff provides with Court with no evidentiary support for this outrageous claim. Plaintiff's sole basis is its incorrect contention that Friedman and Ilowitz were employees of Plaintiff when they developed the trademarks, which the Defendants have conclusively refuted. Plaintiff has not even attempted to claim that it developed the marks "BAKKENMASTER," "BAKKËN-SWISS,"

---

[3] In addition, Plaintiff has not demonstrated that there is a sufficiently serious question regarding the merits of its claim that the "SCOOTKID" trademark is entitled to federal trademark protection under the Lanham Act, which would require Plaintiff to demonstrate that "it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." Time, Inc. v. Petersen Publishing Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999). Where, as here, Plaintiff's mark is descriptive, the pending federal trademark registration does not entitled Plaintiff to bypass the requirement that it demonstrate that the mark has secondary meaning or that there is a likelihood of consumer confusion, which Plaintiff has failed to do. See PaperCutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 563 (2d Cir. 1990). For additional argument regarding the merits of Plaintiff's federal trademark claims (or lack thereof), Defendants respectfully refer this Court to Defendants' motion to dismiss Plaintiff's Complaint, which was filed via CM/ECF at Document Nos. 52-56 on May 17, 2024.

"LIFEMASTER," "HIGHMASTER," "PROMASTER," "RUNMASTER," or "TOPMASTER," used them in association with *any* of its products at any time, or otherwise has ownership rights to those marks. On the basis of such flimsy evidence, it would be a miscarriage of justice for this Court to award Plaintiff ownership of these trademarks on this preliminary injunction motion.

### III.    Defendants Are Not in Possession Any Confidential, Proprietary, or Trade Secret Information of Plaintiff.

Plaintiff also seeks a preliminary injunction ordering the return of any confidential, proprietary, or trade secret information of Plaintiff, which Plaintiff claims Defendants stole and are using in violation of the federal Defend Trade Secrets Act and New York common law. As an initial matter, Plaintiff cannot articulate any specific confidential, proprietary, or trade secret information that is in the possession of the Defendants or any concrete harm that Plaintiff is in imminent risk of suffering as a result of the alleged possession or use of any such information. Where, as here, the harm alleged by the Plaintiff is doubtful and speculative, injunctive relief should be denied. Tom Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27, 38 (2d Cir. 1995) (denying preliminary injunction where the alleged loss was doubtful and could be compensated with money damages).

Plaintiff is not likely to succeed on the merits of its claims for misappropriation of trade secrets pursuant to the Defend Trade Secrets Act ("DTSA"),18 U.S.C.A. § 1836 *et seq*, or under New York law. Under both the federal statute and New York common law, in order to establish the existence of a trade secret, this Court must consider "the extent to which the information is known outside of [the] business;…the extent of measures taken by [the business] to guard the secrecy of the information;…the amount of effort or money expended by [the business] in developing the information;…[and] the ease or difficulty with which the information could be properly acquired or duplicated by others." Ashland Management Inc. v. Janien, 82 N.Y.2d 395, 407 (1993); *see also*

Geritrex Corp. v. Dermarite Industries, LLC, 910 F.Supp. 955 (S.D.N.Y. 1996) (holding that the test to evaluate whether something is a trade secret is the same as under New York common law, but "the most important consideration is whether the information was kept secret"). In addition, under the DTSA, a trade secret exists only when it involves nonpublic confidential information, the owner of that information has taken "reasonable measures to keep such information secret," and the information has economic value from not being generally known by or available to the general public. 18 U.S.C.A. § 1839 (West).

Here, Plaintiff is asking this Court to prevent Friedman and Ilowitz from using the knowledge and information they developed in their businesses as independent contractor buyers by claiming that Friedman and Ilowitz's relationships with manufacturers in China and their knowledge regarding product development, import, and marketing is Plaintiff's trade secret information when that is clearly not the case. *See* Walter Karl, Inc. v. Wood, 137 A.D.2d 22, 27 (2nd Dept. 1988) (holding that "[k]nowledge of the intricacies of a business operation does not necessarily constitute a trade secret").

Plaintiff has only stated in the most general terms that it has "purchasing patterns, listing processes, and strategies, and other nonpublic financial and strategic details," but has articulated no specific document or piece of information within the Defendants' possession that is entitled to trade secret protection. Plaintiff has not alleged that any specific information was unknown to those outside the business, closely held within the business, difficult to replicate, or generated by Plaintiff at great effort and expense.

Plaintiff does not use any trade secret computer programs or information to which Friedman and Ilowitz have access; its off-the-shelf computer programs were not maintained confidential, as Plaintiff granted wide access to all of its employees, independent contractors, and

offshore contract workers to those programs and their data. In fact, Plaintiff has not demonstrated to this Court that it has ever had an employee or other party enter into a confidentiality agreement regarding any sensitive business information. To the extent that Plaintiff claims that Defendants are in possession of Plaintiff's customer lists or customer information, that is also incorrect. And more concerningly, Plaintiff should not be maintaining customer information on its servers or in its files because doing so is prohibited by Amazon policy.

IV.  **Defendants Are Not Engaging in Unlawful Activity.**

    A.  <u>Defendants Are Not Engaged in Unfair Competition or Diverting Corporate Opportunities.</u>

Plaintiff has not demonstrated either irreparable harm or a likelihood of success on the merits of its claims for diversion of corporate opportunity or unfair competition against the Defendants. Plaintiff has failed to articulate *any* concrete harm that it is currently suffering or is in imminent danger of suffering as a result of Friedman and Ilowitz's continued operation of their own businesses. Plaintiff has not alleged with any specificity that Friedman or Ilowitz have or are using any specific documents or piece of data belonging to Sound Around, nor has Plaintiff alleged any concrete harm that it is currently suffering, such as loss of relationships with manufacturers or loss of customers. Since, as detailed above, neither Friedman nor Ilowitz are bound by an enforceable non-competition agreement and are not in possession of any of Plaintiff's confidential information, Plaintiff cannot demonstrate to this Court that it will suffer irreparable harm and instead is asking this Court to eliminate a competitor from the marketplace.

Plaintiff is also not likely to succeed on the merits of its claim for diversion of corporate opportunity under New York law. The doctrine of corporate opportunity "provides that corporate fiduciaries and employees cannot, without consent, divert and exploit for their own benefit any opportunity that should be deemed an asset of the corporation." <u>Alexander & Alexander of New</u>

York, Inc. v. Fritzen, 147 A.D.2d 241, 246 (1st Dept. 1989). Friedman and Ilowitz, as independent contractors, are not fiduciaries who owe a duty to Plaintiff. For that reason, Plaintiff's claim is insufficient as a matter of law from its inception. Plaintiff has also failed to allege that Friedman and Ilowitz's Individual Defendants' relationships with manufacturers in China or the products which they developed through their own efforts as independent contractors were opportunities in which Plaintiff had a tangible expectancy. Moser v. Devine Real Estate, Inc. (Fla.), 42 A.D.3d 731, 735 (3rd Dept. 2007) (tangible expectancy must be "more certain than a desire or hope").[4]

B. Defendants Are Not in Breach of Any Fiduciary Duty or Duty of Loyalty to Plaintiff.

As detailed above, Plaintiff has not articulated its entitlement to a preliminary injunction because Plaintiff cannot demonstrate that it will suffer irreparable harm as a result of Friedman or Ilowitz's continued operation of their businesses. In addition, Plaintiff is not likely to succeed on the merits of its claims for breach of fiduciary duty or breach of the duty of loyalty under New York law. Both claims require, as their initial element, that a plaintiff allege the existence of a fiduciary relationship. *See* Village of Kiryas Joel v. County of Orange, 144 A.D.3d 895, 898 (2nd Dept. 2016) (holding that a party asserting a claim for breach of fiduciary duty must allege "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct"); *see also* Bluebanana Group v. Sargent, 176 A.D.3d 408, 409 (2019) (applying same standards for determining breach of duty of loyalty as to a claim for breach of fiduciary duty).

---

[4] Plaintiff's Memorandum of Law contains a heading that references its unfair competition claim, but there is no substantive argument regarding this claim under New York law. A claim for unfair competition under New York law requires the plaintiff to "state a Lanham Act claim coupled with a showing of bad faith or intent." Innovation Ventures, LLC .v Ultimate One Distributing Corp., 176 F.Supp.3d 137, 157 (E.D.N.Y. 2016), *citing* The KatiRoll Company, Inc. v. Kati Junction, Inc., 33 F.Supp.3d 359, 367 (S.D.N.Y. 2014). Plaintiff has not demonstrated that it is likely to succeed on the merits of this claim in any way.

A fiduciary relationship exists only when one party "is under a duty to act for or to give advice for the benefit for another upon matters within the scope of the relation" and is "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 19-20, (2005), *citing* Restatement [Second] of Torts § 874, Comment a. Where the parties "do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them." Northeast General Corporation v. Wellington Advertising, Inc., 82 N.Y.2d 158, 162 (1993). Claims for breach of fiduciary duty and breach of a duty of loyalty must be plead with particularity pursuant to C.P.L.R. § 3016(b), which requires a pleader to state the circumstances constituting the wrong in detail where a cause of action is based upon breach of trust. Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 83 A.D.3d 804, 808, (2011).

Here, the Individual Defendants were, at all relevant times, independent contractors and not employees, agents, or otherwise in a position of trust with respect to Plaintiff. There was no written agreement between the Plaintiff and the Individual Defendants that would impose a fiduciary duty upon them. The Individual Defendants had control over all aspects of their businesses, independent of Plaintiff, and were not operating in a position of trust or confidence with respect to Plaintiff when they developed their own products using their own contacts, knowledge, and expertise. Where an independent contractor deals with a party in an arm's length transaction, that independent contractor has no fiduciary duty to that party. *See* Cornwell v. NRT New York LLC, 95 A.D.3d 637, 638 (1st Dept. 2012); *see also* Quik Park W. 57, LLC v. Bridgewater Operating Corp., 148 A.D.3d 444, 445 (1st Dept. 2017). In light of this, Plaintiff's allegation that the Freidman and Ilowitz owed a fiduciary duty to the Plaintiff, without more, is

insufficient to state a claim for breach of fiduciary duty or a breach of the duty of loyalty under New York law.

**CONCLUSION**

As set forth above, Plaintiff has failed to articulate any entitlement to a preliminary injunction because the Defendants are not restricted by any enforceable employment agreement, and are also not in violation of federal trademark law, federal or New York law regarding trade secrets or confidential information, or otherwise engaged in unlawful conduct. Plaintiff has also failed to articulate any concrete irreparable harm that it is or is in imminent risk of suffering that could not be compensated with monetary damages. Therefore, the Defendants respectfully request that this Court deny Plaintiff Sound Around, Inc.'s motion for a preliminary injunction, together with such other and further relief as this Court deems appropriate.

Dated: May 24, 2024

ALLYN & FORTUNA LLP

By:_____ s/Nicholas Fortuna_____
                Nicholas Fortuna
*Attorneys for Defendants*
400 Madison Avenue, Suite 10D
New York, New York 10017
(212) 213-8844
nfortuna@allynfortuna.com