```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/3/2025
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
SOUND AROUND, INC.,

                              Plaintiff,                         24-CV-1986 (JHR) (KHP)

             -against-

MOISES FRIEDMAN, SHULIM ELIEZER ILOWITZ,                  **ORDER ON MOTIONS TO QUASH**
ML IMPORTS, INC., CYRF, INC., LRI GROUP, LLC,
EXECUTIVE SERVICES, EXECUTIVE LAUNDRY,
LLC, MDF MARKETING, INC., WORLD GROUP
IMPORT, LLC, HEFEI PAIDONG OUTDOOR
PRODUCTS CO., LTD.,

                              Defendants.
-----------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge:**

Defendants have moved to quash several subpoenas served by Plaintiff Sound Around, Inc. on various non-party entities including banks, retail and freight companies. (*See* ECF Nos. 78, 83, 86 and 90.) The Court addresses each of the motions to quash below.

## BACKGROUND

This case arises out of a dispute between Sound Around, Inc. ("Sound Around") and its former employees/agents and their related entities. Sound Around sells various products online on e-commerce platforms such as Amazon, Walmart, Yahoo and eBay. (Complaint ("Compl.") at ¶ 24.) Sound Around identifies products it wishes to sell, locates manufacturers and vendors of the products who are located overseas, purchases the products and offers them for distribution and resale online within the United States. (*Id.* at ¶ 22.) Examples of products include kitchen appliances and home products, health and fitness products and toys. (*Id.* at ¶ 25.)

1

Individual Defendants Moises Friedman and Shulim Eliezer Ilowitz are alleged to be former employees of Sound Around who worked as buyers and were paid salary and commissions. (*Id.* at ¶¶ 9-10, 37-38, 48.) Friedman is related by marriage to a founder of Sound Around, Abraham Brach. (*Id.* at ¶ 28.) Ilowitz is the brother of Sound Around founder's long-time secretary. (*Id.* at ¶ 40.)

Both Friedman and Ilowitz had discretion to negotiate with manufacturers as to pricing and to set prices and market strategy for the products' online resale. (*Id.* at ¶¶ 31, 45.) Although Sound Around called Friedman and Ilowitz employees, it paid them at least in part indirectly by sending their commission checks to companies alleged to be operated or controlled by Friedman and Ilowitz. (*Id.* at ¶¶ 37, 47.) Specifically, Friedman's commission payments were made to Defendant MDF Marketing, Inc. and Ilowitz's commission payments were made to Defendant Executive Laundry, LLC. (*Id.*)

Sound Around entered into a written contract with Friedman in June 2018. (*Id.* at ¶ 32.) The contract set out Friedman's work responsibilities with respect to a Los Angeles warehouse and as a buyer, required Friedman to give 2 months' notice before resigning, provided for a salary of $1,000/week and a commission of 3% of certain net online sales, and addressed other aspects of employment. (*Id.* at Exhibit A.) The contract contained a two-year non-compete provision. (*Id.*) Ilowitz does not appear to have had a written contract, but Sound Around has provided an acknowledgment signed by Ilowitz purporting to have received and read a copy of Sound Around's employee Policies & Practices Guide, which contained certain provisions regarding confidentiality and obligations toward the company. (*Id.* at ¶¶ 42, 44, Exhibits B and C.)

Sound Around alleges that Friedman and Ilowitz set up a competing business while employed at Sound Around and used Sound Around assets for personal or competing business purposes. (*Id.* at ¶¶ 49-50.) It alleges that Friedman and Ilowitz began conspiring in or around 2020 and over time defrauded Sound Around, diverted its assets and corporate opportunities for their personal gain and embezzled money. (*Id.*) For example, although they were tasked with developing new product ideas, Sound Around alleges Friedman and Ilowitz created brands and purchased products to compete with Sound Around in online marketplaces. (*Id.* at ¶ 52.) They allegedly used Sound Around's proprietary information about suppliers and pricing to illegally compete, all the while collecting salary and getting reimbursed for travel that was supposed to be on behalf of Sound Around. (*Id.* at ¶¶ 49, 53.) Sound Around also alleges that some of its vendors paid kickbacks to Friedman and Ilowitz, which caused them to charge overall higher prices for products sold to Sound Around, and that Friedman and Ilowitz used Sound Around funds to purchase goods and services for their own competing business. (*Id.* at ¶¶ 55-56, 58.) The Complaint alleges that Ilowitz used his Sound Around email address to contact Amazon to request a Vendor Central license for his and Friedman's competing business and then converted the license to be for Defendant LRI Group LLC—his own company. (*Id.* at ¶¶ 87-90, 95.) And, it alleges Friedman and Ilowitz created the Lifemaster USA brand to offer a series of children's scooters identical to ones being offered by Sound Around and marketed the scooters using Sound Around's trademark, "ScootKid." (*Id.* at 110-11, 115.) The Complaint contains multiple causes of action including for trademark infringement, breach of contract, misappropriation of confidential business information and opportunities, breach of fiduciary duty and loyalty, and civil conspiracy under federal anti-racketeering law.

Sound Around terminated Friedman's employment in February 2024. (*Id.* at ¶ 36.) Ilowitz resigned on January 30, 2024. (*Id.* at ¶ 46.)

Sound Around filed a motion for preliminary injunction to enforce its restrictive covenants to stop Friedman and Ilowitz and their related entities from competing against it. (ECF No. 34.) That motion is pending before the Honorable Jennifer H. Reardan.

Defendants Executive Laundry, LLC and Executive Services ("Executive Laundry Defendants") have denied the material allegations in the complaint or denied knowledge and information sufficient to form a belief as to the truth of the allegations in the complaint and filed a cross claim against the other Defendants for contribution and/or indemnification. (*See* ECF No. 71.)

The other Defendants—Friedman and Ilowitz and their purportedly related entities (the "Friedman/Ilowitz Defendants") – have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (*See* ECF No. 52.) For their part, they contend that they were not employees of Sound Around and that Sound Around is trying to put them out of business to eliminate legitimate competitors in the market. The motion to dismiss is pending before Judge Reardan.

**DISCOVERY DISPUTE**

At the start of discovery, Sound Around served document subpoenas on various banks, including M&T Bank (in Amherst, New York), Northfield Bank (in Staten Island), JP Morgan Chase Bank (in New York City), Bank of America (in Newark, Delaware), TD Bank (in New York City),

4

Capital One Bank (in McLean, Virginia), and Citibank (in New York City)(the "Bank Subpoenas"). Theses subpoenas all request essentially the same thing:

- All records for the period 2019 to the present pertaining to any of the following individuals and business entities whether held jointly or severally or as trustee or fiduciary as well as custodian, executor or guardian as well as any other entity in which these individuals or entities may have a financial interest: Moises Friedman, Shulim Eliezer Ilowitz, ML Imports, Inc., Cyrf, Inc., LRI Group, LLC, Executive Services, Executive Laundry, LLC, MDF Marketing, Inc., and/or World Group Import, LLC.

The subpoenas on Northfield Bank, TD Bank, Bank of America, and M&T Bank list specific account and routing numbers for either MDF Marketing, Inc. or Executive Services. Further, Records are defined broadly to include savings and checking account records, loan records, credit card records, purchases of bank checks, and all other records.

Sound Around also served document subpoenas on various online retailers including Target Corporation (in St. Paul, Minnesota), eBay Inc. (in New York City), Amazon Inc. (in Wilmington, Delaware), Walmart Inc. (in Wilmington, Delaware), Wayfair Inc. (in Boston, Massachusetts), and PayPal Inc. (in New York City) (the "Retail Subpoenas"). These subpoenas all request essentially the same things for the period 2019 to the present:

- All communications between you and any Defendant[1] prior to the execution of any and every agreement and/or contractual relationship between you and the given Defendant;

---

[1] Defendants is defined to include Friedman, Ilowitz, ML Imports, Inc., Cyrf, Inc., LRI Group, LLC, World Group Import, LLC, Executive Laundry, LLC, Executive Services, MDF Marketing, Inc., Hefei Paidong Outdoor Products Co., Ltd., and their officers, directors, employees, partners, corporate parent, subsidiaries and affiliates.

5

- All communications between you and any Defendant concerning any and every agreement and/or contractual relationship between you and the given Defendant;

- All contracts, licenses, agreements, and other documents that describe the relationship between you and any Defendant.

- All contracts, licenses, agreements, and other documents concerning any of the Brands;[2]

- All communications concerning the Brands and Products;[3]

- Documents sufficient to show the identity of all Products, the amount sold of each Product, and the amount paid (or to be paid) by you for each Product. These documents should include all documents that show how much you paid for the Products, to whom and where the payments were made, and the financial institutions that were used by the party receiving the payments from you to collect and receive the payments;

- All reports concerning the Products, including sales statistics;

- Documents sufficient to show the flow of cash between you and any Defendant, including the identity of all financial institutions used by the given Defendant;

- Intellectual property infringement reports, customer complaints, and similar documents and communications you received from other people concerning suspected misconduct and issues regarding any Defendant, Brand or Product;

- All communications concerning the suspected misconduct and issues referenced above; and

---

[2] Brands is defined as all trademarks and related means under which the Defendants sold or marketed, or offered to sell or market their goods or products, including, Bakken, Bakken-Swiss, BakkenMaster, LifeMaster, HighMaster, RunMaster, ProMaster, TopMaster, and ScootKid.

[3] Products is defined broadly to include all goods and products sold or to be sold by you pursuant to any agreement between the subpoenaed entity and the Defendants.

- A business records affidavit of all produced documents and communications.

And it served document subpoenas on Shifl Inc. (in Spring Valley, New York) and Convenient Logistics LLC (in Santa Fe Springs, California) (the "Freight Service Subpoenas").[4] These two subpoenas request mostly the same things for the period 2019 to the present including:

- All communications between you and any Defendant prior to the execution of any and every agreement between you and the given Defendant;

- All communications between you and any Defendant concerning any and every agreement and/or contractual relationship between you and a given Defendant;

- All contracts, licenses, agreements, and other documents that describe the relationship between you and any Defendant;

- All communications concerning the Products and Brands;

- Documents sufficient to show the flow of cash between you and any Defendant, including for any Product or service you provided to the Defendant or invoices for any Product or 3PL service,[5] including the identity of financial institutions used by the Defendant;

- Documents identifying the Amazon Vendor Central Account that any Defendant used; and

---

[4] Products and Brands and Defendants are defined similarly to those in the Retail Subpoenas.
[5] 3PL is defined as third-party logistics and 3PL Services include warehousing, storing, inventory management, picking and packing, shipping and receiving, freight shipping and forwarding, kitting/assembling and reverse logistics.

- A business records affidavit.

The subpoena on Convenient Logistics also requests: All reports concerning the Products, including any statistics concerning your 3PL services for these Products, Documents sufficient to show the identity of all Products that you provided 3PL services for, including Products you stored or warehoused, and documents identifying the freight forwarder for the Products.

The subpoena on Shifl Inc. also requests: Documents sufficient to show the identity of all Products that you provided services for, including Products you shipped, and Documents identifying from whom you received Products, and to whom you shipped Products.

All of the subpoenas seek information that is also sought in Requests for Documents served on the Defendants.

The Friedman/Ilowitz Defendants have moved to quash the subpoenas (ECF Nos. 78, 86). The Executive Laundry Defendants have separately moved to quash the subpoenas (ECF Nos. 83, 90). None of the subpoenaed entities have appeared or moved to quash.

The Executive Laundry Defendants state that they are a commercial laundry service and do not sell any products. They have submitted an affidavit stating that Friedman and Ilowitz did not create, operate or control the Executive Laundry Defendants, and the principals and employees of Executive Laundry were never employed by Sound Around and are not alleged to have committed any of the acts attributed to Friedman and Ilowitz. (ECF No. 91-2.) As a result, the Executive Laundry Defendants contend that the Bank Subpoenas are overbroad and seek

personal and sensitive financial information unrelated to this action. They make essentially the same argument with regard to the other subpoenas.

The Friedman/Ilowitz Defendants argue that the Bank Subpoenas are overbroad and seek sensitive, individual financial information regarding irrelevant matters such as credit history, family finances and home mortgages. They argue that the bank records for their related businesses are also overly broad and seek invasive information about non-parties and other entities that have no relationship to the claims and defenses in this case. They argue that the Freight Service Subpoenas are similarly overbroad and seek records that do not concern products at issue in this case and jeopardize their relationship with these providers.

The Friedman/Ilowitz Defendants also argue that the Retail subpoenas are overbroad insofar as they are not tailored to include products specifically at issue in this action and threaten their business relationship with the retailers.

Sound Around argues that the motions to quash should be denied because Defendants failed to meet and confer regarding their scope and failed to follow court procedures requiring them to file a letter motion requesting a conference to discuss their objections to the subpoenas prior to filing motions. Sound Around also asserts that Defendants lack standing to object to subpoenas on grounds of relevancy, proportionality, ripeness and burden. It argues the Bank Subpoenas seek documents that will show when Defendants began competing with Sound Around, the third parties through which Defendants were operating or using to carry out their allegedly unlawful actions, and value of the kickbacks Defendants received, the source of Defendants' funding, and their revenues and profits necessary to calculate damages. It argues

9

the Retail Subpoenas and Freight Service Subpoenas are necessary to show that Defendants were competing and the scope of the competition and products involved, among other things.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The party seeking discovery bears the initial burden of proving the discovery is relevant." *Sheindlin v. Brady*, No. 21-CV-01124 (LJL) (SDA), 2021 WL 2075483, at *2 (S.D.N.Y. May 24, 2021) (citing *In re Subpoena to Loeb & Loeb LLP*, No. 19-MC-00241 (PAE), 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019)), *aff'd*, 2021 WL 2689592 (S.D.N.Y. June 30, 2021).

Federal Rule of Civil Procedure 45(a) permits a party to request and serve on a non-party a subpoena seeking production of documents. *See* Fed. R. Civ. P. 45(a). A document subpoena may be served "at any place within the United States." Fed. R. Civ. P. 45(b)(2). The party serving a subpoena must take steps to avoid imposing "undue burden or expense" on the subpoenaed person. Fed. R. Civ. P. 45(d)(1).

As a general matter, only recipients of a subpoena have standing to seek a protective order quashing or modifying the subpoena. *See City of Almaty, Kazakhstan v. Ablyazov*, No. 1:15-cv-05345 (KHP) (AJN), 2019 WL 275701, at *2 (S.D.N.Y. Jan. 22, 2019). A non-recipient has standing to challenge a subpoena "only if it has a privilege, privacy or proprietary interest in the documents sought." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 Civ. 1590 (LTS)(HBP), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) ("A party lacks standing to challenge subpoenas issued to non-parties on grounds of relevancy or undue burden."); *Malibu Media, LLC v. Doe No. 4*, No.

10

12 Civ. 2950(JPO), 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012) ("Even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden." (internal quotation marks and citation omitted)).

The movant bears the burden of persuasion on a motion to quash. *See Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654 (RA)(HBP), 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014). However, the party issuing the subpoena must demonstrate that "the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Sheindlin*, 2021 WL 2075483, at *2 (citing *Loeb*, 2019 WL 2428704, at *4). "Motions to quash under Rule 45 are entrusted to the sound discretion of the district court." *Id.* at *2 (quoting *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-01590 (LTS) (HBP), 2013 WL 57892, at *2 (S.D.N.Y. Jan. 4, 2013)).

## DISCUSSION

To start, none of the parties have conducted themselves properly with respect to discovery thus far. Sound Around served the subpoenas without the benefit of obtaining discovery directly from Defendants, which would have allowed it to more narrowly tailor third-party subpoenas. As a result, all of the subpoenas are overbroad. Sound Around does not specify particular products, contracts or relationships and does not even know if Defendants banked at all the banking institutions subpoenaed or have relationships with all the retailers subpoenaed. Sound Around makes only very general arguments about the relevance of the information sought.

For their part, Defendants failed to comply with the Court's rules regarding motions and filed these motions without first seeking a conference to discuss the subpoenas. Moreover,

11

they make arguments for which they do not have standing.  Because Defendants were not served with the subpoenas, the only basis for them to object are on privacy or privilege grounds.

The Court held a conference with the parties urging them to meet and confer and come to an agreement on the scope of the subpoenas.  They have been unable to do that, requiring Court intervention.

Defendants have failed to meet their burden that they have a privacy interest in the records sought by the Retail and Freight Service Subpoenas. While the records sought in these subpoenas are likely to contain information about Defendants' business activities, "a non-subpoenaed party has standing only if it has a privilege, privacy or proprietary interest in the documents sought." *Universitas Educ., LLC*, 2013 WL 57892, at *5.  Here, the Friedman/Ilowitz Defendants argue that such records will reveal the products they sell, and information related to brands and flow of cash that they would not reveal to competitors.  But the Retail and Freight Service Subpoenas seek records from 2019 to the present, which primarily covers a time period in which Friedman and Ilowitz worked for Plaintiff and therefore were not competitors.  To the extent Defendants are arguing that the Defendant entities were competitors of Plaintiff, or that Friedman and Ilowitz were competitors of Plaintiff despite working for Plaintiff, Defendants have not provided enough detail or information for the Court to assess that argument.  *See Refco Grp. Ltd., LLC*, 2014 WL 5420225, at *4 ("In order for a party to have standing to challenge a subpoena served on a non-party, there must be more than 'a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive.'"); *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. CV126383JFBAKT, 2017 WL 1133349, at *5

(E.D.N.Y. Mar. 24, 2017) ("[A] party's general desire to thwart disclosure of information by a non-party is [ ] not an interest sufficient to create standing.") (internal quotations and citations omitted). The Court further notes that it has issued a Protective Order in this case which can protect confidentiality of any trade secret information. (ECF No. 116.) To avoid concerns about disclosure of competitively sensitive information, any such information produced pursuant to the Retail and Freight Service Subpoenas may be produced subject to the terms of the Protective Order. *See In re Application of FB Foods, Inc.*, No. M8-85 (JFK), 2005 WL 2875366, at *1 (S.D.N.Y. Nov. 2, 2005) (concluding that even if there was a privacy interest, the documents at issue were protected by a confidentiality agreement approved the by court). Therefore, the motions to quash the Retail and Freight Service Subpoenas are denied. This ruling, however, is without prejudice to the subpoenaed entities' rights to object on grounds of relevance, proportionality and burden.

The Bank Subpoenas are likely to contain personal financial information concerning Friedman and Ilowitz. Nonetheless, certain personal financial information necessarily will be exchanged in this case because it is relevant to the parties' relationship and damages. For example, bank records reflecting payments from Sound Around to Executive Laundry or MDF Marketing, Inc., and Executive Laundry or MDF Marketing, Inc. to Friedman and Ilowitz (and from Sound Around directly to Friedman and Ilowitz) are relevant to ascertaining what was paid to the individual defendants and how. Tax records including W-2, W-9, 1099 and other reporting of the payments will also be relevant to ascertaining the parties' relationship to each other. Similarly, payments made by Defendants in connection with any Trademark registration for the ScootKid and infringing scooter products are relevant, as would be gross sales

information for sale of the allegedly infringing scooter product. Bank records may show deposits from scooter sales proceeds or deposits from online retailers for the infringing scooter products. Bank records also may show payments made to online retailers for setting up accounts on behalf of Sound Around or Defendant businesses that are relevant for determining what accounts Friedman and Ilowitz set up for online sales of products. Insofar as Ilowitz left Sound Around in January 2024, the relevant bank records would not post-date February 2024. The actions in the Complaint concern the time period 2019-2024, and therefore records from this period are temporally relevant. For Friedman, however, bank records from 2019 to the present would be relevant because Friedman is subject to a non-compete provision pursuant to his employment contract for two years post-termination, and Friedman was terminated in February 2024.

At this time, Sound Around has not met its burden to show the relevance of all of the Bank records it seeks, such as signature cards, leger cards, detailed account statements, loan records, credit card records, or purchases of bank checks. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.") Accordingly, the motions to quash the Bank Subpoenas are granted in part and denied in part. *See Insured Advoc. Grp., LLC v. Spartan Servs. Corp.*, No. 23-CV-07212 (LJL), 2024 WL 4893580, at *3-4 (S.D.N.Y. Nov. 26, 2024) (granting in part and denying in part a motion to quash subpoenas served on nonparty banks); *MG Freesites Ltd. v. Scorpcast, LLC*, No. 22 MISC. 361 (PAE), 2023 WL 2822272 (S.D.N.Y. Apr. 7, 2023) (modifying the scope of a document request contained in a nonparty subpoena). At this juncture in the litigation, the records produced shall include a listing of the accounts held by the

14

entities listed on the subpoenas, information on 1099s issued, documents showing transactions between and among Sound Around, Friedman, Ilowitz, MDF Marketing, Inc., and Executive Laundry, documents showing all transactions in the 4 specific accounts/routing numbers identified in the Northfield Bank, TD Bank, Bank of America, and M&T Bank subpoenas, and documents showing transactions between Defendants and the Retail Entities and the Freight Service entities.  This production will highlight at a macro level relevant transactions.  Later in discovery Sound Around may apply to the Court to seek additional information from the Banks after it is better informed from discovery provided by Defendants.

## CONCLUSION

For the reasons set forth above, the motions to quash are denied as to the Retail and Freight Service Subpoenas and granted in part and denied in part as to the Bank Subpoenas. The parties are warned that in the future the Court will not entertain motions that are filed prior to a robust meet and confer process or for failing to follow the court procedures requiring a pre-motion letter.  **The Clerk of Court is respectfully direct to terminate the motions at ECF Nos. 78, 83, 86 and 90**.

SO ORDERED.

DATED:    New York, New York
          January 3, 2025

_____
KATHARINE H. PARKER
United States Magistrate Judge

15