**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
SOUND AROUND, INC.,

                                     Plaintiff,

        -against-

MOISES FRIEDMAN et al.,

                                  Defendants.
----------------------------------------------------------------X

**24-CV-1986 (DLC) (KHP)**

**OPINION AND ORDER ON MOTION FOR PROTECTIVE ORDER WITH RESPECT TO PLAINTIFF'S DOCUMENT REQUESTS**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Defendants Moises Friedman, Shulim Eliezer Ilowitz, ML Imports, Inc. ("MLI"), CYRF, Inc. ("CYRF"), LRI Group, LLC ("LRI"), MDF Marketing, Inc. ("MDF"), and World Group Import, LLC ("WGI") (collectively, the "Defendants"), seek a protective order pursuant to F.R.C.P. 26(b)(2) and 26(c) which would "significantly narrow[] Plaintiff's Requests" for documents "to comport with the requirements set forth in F.R.C.P. 26(b) and F.R.C.P. 34(b)(1)." (ECF No. 150.) Plaintiffs oppose. For the reasons that follow, the Court grants in part and denies in part the motion for a protective order.

**BACKGROUND**

This is an action alleging that Defendants Moises Friedman and Shulim Eliezer Ilowitz, along with the other Defendants, misused proprietary information entrusted to them in connection with Friedman and Ilowitz performing services for Plaintiff Sound Around, Inc. ("Sound Around"). (ECF No. 1.) Plaintiff alleges twenty-two causes of action, including violations of the Lanham Act relating to trademarks; trade dress; false designation of origin; unfair competition; federal and common law misappropriation of confidential information; various claims under New York common law for breach of the duty of loyalty, breach of fiduciary

1

duty, unjust enrichment, diversion of corporate opportunity, tortious interference with business expectancy, breach of contract, fraud, and conversion; violation of N.Y. General Business Law Section 360-L; and violation of federal civil RICO laws.

Essentially, Plaintiff alleges that Friedman and Ilowitz (together, the "Individual Defendants") were employees of Plaintiff who conspired with ML, CYRF, LRI, MDF, and WGI (together, the "Corporate Defendants") to misappropriate confidential and trade secret information, divert corporate opportunities for their own benefit, use Plaintiff's trademarks and trade dress to market competing products, and steal "hundreds of thousands (if not millions) of dollars from the company to build their business, pay their personal debts and expenses, and compete directly with Sound Around." Compl. ¶ 2.  In support of these allegations, Plaintiff alleges that the Individual Defendants exploited the relationships they had with "Sound Around's vendors, manufacturers, and employees," demanded kickbacks from vendors which raised the price of products for Sound Around, used their travel and workdays to develop and usurp products for themselves, paid for freelancers, samples, a computer using Plaintiff's credit cards and funds, and procured "retail licenses" by fraud. Compl. ¶¶ 54-58, 61-66, 72-97.

For their part, Defendants assert they were not employees but independent contractors of Plaintiff for the relevant time period.  They have not yet interposed an answer.

On July 10, 2024, Plaintiff served its First Request for the Production of Documents on each Defendant individually (together, the "RFPs").  It served a substantially identical set on the Individual Defendants (the "IDRFPs") and the Corporate Defendants (the "CDRFPs"), with only a

few requests omitted between the two. The requests in each RFP are substantially similar.[1] Plaintiff seeks a broad scope of documents purportedly relating to its claims, which the Court groups into the following categories: (1) documents related to the Purported Competing Business (IDRFPs 1, 3, 20-24, 34-40, 42-45, 50, 55, 57-59, 66-68, 71-74; CDRFPs 1, 3, 14-18, 28-34, 36-39, 42, 47, 49-51, 58-60, 62-66), (2) documents related to Purported Unlawful Kickbacks (IDRFPs 2, 4-6, 65; CDRFPs 2, 57), (3) documents related to Purported Theft of Funds from Sound Around (IDRFPs 7- 12, 14, 18, 19, 25-33, 46, 48, 63, 64; CDRFPs 4-8, 12, 13, 19-27, 55, 56), (4) documents related to Purported Theft of Confidential Information/Trade Secrets/Licenses (IDRFPs 47, 51, 52, 56, 62; CDRFPs 40, 43, 44, 48, 54), and (5) documents related to Purported Trademark Infringement (IDRFPs 15-17; CDRFPs 9-11). They also request tax returns for Friedman and Ilowitz, as well as for the Corporate Defendants (i.e., MLI, CYRF, LRI, MDF, and WGI) (IDRFPs 69, 70; CDRFP 61).

Defendants have largely refused to produced documents in response to the majority of RFPs, stating in their responses to these RFPs that they are overbroad and seek information not relevant to this action and that does not lead to the discovery of relevant information in this action. Defendants acknowledge in their responses that they likely have responsive documents to these requests, but state "those documents cannot be determined due to the overbreadth of the Request and are being withheld pending the resolution of" the instant motion.

---

[1] Because the RFPs are nearly identical, the Court refers to the RFP numbers in the requests served on Friedman and ML Imports, Inc. specifically, but these numbers align with those in the requests to the other Individual and Corporate Defendants, and the Court's rulings herein apply to the requests on all Defendants.

Defendants have stated that they have no documents responsive to the IDRFPs 4-6, 14, 45, 47, 68, 71-73[2] and to the CDRFPs 39-40, 60, 62-66.[3] Defendants state that they have produced unspecified documents to IDRFPs 20, 56, 62[4] and to CDRFPs 44, 48 and 54.[5]

**LEGAL STANDARDS**

The Federal Rules of Civil Procedure ("Rules") are designed to allow the parties in the litigation to gather relevant facts necessary to prosecute and defend the action in the most

---

[2] These RFPs request documents relating to requests or solicitations of payments from vendors or manufacturers from January 2018 through February 2024, donations to any entity made by vendors and manufacturers at defendant's request, use of Sound Around's resources to start, fund, or operate the Corporate Defendants, sell products that compete with Sound Around, communications with consumers regarding Sound Around products from January 2024 to the present, licenses owned by or registered to the Defendants relating to sale of any product online, Congregation Kozover, and contracts between and among the defendants and between the defendants and Sound Around.

[3] These RFPs request document relating to communications with consumers regarding any Sound Around product from January 2024 to the present, licenses owned by or registered to the Defendants, Congregation Kozover, tax returns for 2018 to 2023, contracts between and among the defendants and between Sound Around and Defendants, and corporate entities in which defendant has an ownership interest.

[4] These seek, respectively, all documents from 2013 to February 2024 that reflect payments from Sound Around to the defendant; all documents that show or reflect any information of Sound Around, including hard drives, customer lists, vendors lists, excel spreadsheets, Power BI reports or printouts, Back Office reports or Printouts, Go Flow reports or Printouts, in defendant's possession after January 2024; and copies of documents and communications downloaded from Sound Around computers, servers, databases, software, systems, or other platforms that are still within defendant's possession.

[5] These seek, respectively, all documents and communications referencing the transportation or storage of any products carrying, purchased for, or sold using the Competing Brands from January 2018 through February 2024; all documents that show or reflect any information of Sound Around, including hard drives, customer lists, vendors lists, excel spreadsheets, Power BI reports or printouts, Back Office reports or Printouts, Go Flow reports or Printouts, in the defendant's possession after January 2024; and copies of documents and communications downloaded from Sound Around Computers, servers, databases, software, systems, or other platforms that are still within defendant's possession.

economic, efficient, and fair way.  *Brown v. Barnes and Noble, Inc.*, 474 F. Supp. 3d 637, 643 (S.D.N.Y. 2019); Fed. R. Civ. P. 1.

Rules 26 and 34 are at issue in this case.  Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Since the 2015 amendments to the Rules, the scope of discovery permitted has narrowed.  Nonetheless, relevance is still a broad concept under Rule 26(b)(1). *See, e.g., Villella v. Chemical & Mining Co. of Chile Inc.*, 15-cv-2016, 2019 WL 171987, *2-3, (S.D.N.Y. Jan. 11, 2019); *New York v. United States Department of Commerce*, 18-cv-2921 & 5025, 2018 WL 5260467, *1 (S.D.N.Y. Aug. 17, 2018).  Additionally, this Court has broad discretion in determining relevance for discovery purposes. *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017); *In re Air Crash Near Clarence Center, New York, on February 12, 2009*, 277 F.R.D. 251, 253 (W.D.N.Y. 2011); *In re PE Corp. Securities Litigation*, 221 F.R.D. 20, 23 (D. Conn. 2003).

Rule 34 permits a party to serve on any other party a request for documents and electronically stored information so long as the request is within the scope of Rule 26(b)(1). Thus, under Rule 34, a requesting party has an obligation to tailor a document request so that it requests only relevant information but also so that it is proportional to the needs of the case. *Optionality Consulting Pte. Ltd. v. Edge Technology Group LLC*, 18-cv-5393, 2022 WL 1977746, at *3-4 (S.D.N.Y. June 3, 2022).  Further, the request must "describe with reasonably particularity

5

each item or category" of documents and information sought. Fed. R. Civ. P. 34(b)(1)(A). Objections to document requests must be stated with specificity and include the reasons for the objection. Fed. R. Civ. P. 34(b)(2)(B-C). As this Court has previously noted, "attorneys have an explicit duty to conduct reasonable searches for documents and to certify that all discovery disclosures are complete and correct." *Aviles v. S&P Glob., Inc.*, 17-cv-2987, 2021 WL 2077932, at *4 (S.D.N.Y. May 24, 2021).

When propounding and responding to document requests, parties are expected to act in accordance with both the letter and intent of the Rules as amended in 2015, which "were intended to address systemic problems in how discovery requests and responses traditionally were handled." The Sedona Conference, *Federal Rule of Civil Procedure 34(b)(2) Primer: Practice Pointers for Responding to Discovery Requests*, 19 Sedona Conf. J. 447, 452 (2018). Amended Rule 1 emphasizes that the parties have a responsibility to construe and administer the Rules to ensure the just, speedy and inexpensive resolution of every action. Fed. R. Civ. P. 1; Fed. R. Civ. P. 1 advisory committee's note to 2015 Amendment. Parties also must certify that every discovery request and response is in fact consistent with Rule 26(b)(1), not interposed for any improper purpose, and not unreasonable or unduly burdensome. Fed. R. Civ. P. 26(g).

In making rulings on the scope of discovery, a court "must limit the frequency or extent of discovery otherwise allowed by these rules" if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

6

Fed. R. Civ. P. 26(b)(2)(C).

When carrying out its duty to manage litigation, a court "may, for good cause issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The burden is upon the party seeking non-disclosure or a protective order to show good cause," and "the trial court has broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Melendez v. Primavera Meats, Inc.*, 270 F.R.D. 143, 144 (E.D.N.Y. 2010) (internal quotations, alterations, and citations omitted). A district court has "wide latitude to determine the scope of discovery" and "abuses its discretion only when the discovery is so limited as to affect a party's substantial rights." *In re Agent Orange Prod. Liability Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (internal quotations and citations omitted).

Upon denying, in whole or in part, a motion for a protective order, "the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2). Rule 26 also incorporates the provisions of Rule 37(a)(5), which permit the Court to award attorneys' fees and expenses to the prevailing party. Fed. R. Civ. P. 26(c)(3), 37(a)(5)(B)-(C).

## DISCUSSION

The Court is unimpressed with the parties' efforts to resolve their disputes over the RFPs without resort to motion practice. As a reminder to the parties, Rule 26(c)(1) and the Court's Individual Practice Rules require parties to meet and confer in good faith to resolve disputes without the need for court action. Similarly, Local Civil Rule 26.4(a) states that "[c]ounsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process." Indeed, the Court believes virtually every issue

7

raised in this motion could have been resolved through a more robust (and good-faith) meet-and-confer process.

As the Court will explain in greater detail below, while the Court agrees with Defendants that the Requests are largely too broad and encompass more documents than are strictly relevant to the claims and anticipated defenses in this action, the Court nevertheless must note that Defendants are not at liberty to filibuster discovery by refusing to produce relevant and responsive documents which they have already identified and which do not pose any specific or unusual burden or annoyance.

To be clear, it is completely improper for Defendants to say they have responsive documents but are withholding them until the Court decides their protective order. Rule 34(c) requires a specific response and, if a responding party cannot list all the responsive documents because of the breadth of a request, the responding party has an obligation to state specifically which documents it knows of and deems responsive and relevant that it will produce. For example, IDRFP 1 requests "All documents and communications you exchanged with vendors or manufacturers (including factories in China) relating to products or product lines sold or intended for sale by, through, or under the Competing Brands." There is no question that this RFP is wildly overbroad. But the Individual Defendants should have stated why this request is overbroad, determined how it would narrow the request and offer to produce documents responsive to its narrowed request, or, alternatively, stated why the request is objectionable on other grounds that does not warrant narrowing or production of any responsive documents. The Individual Defendants could have, for example, offered to produce and produced communications with vendors or manufacturers about specific products (like scooters) under

8

the brands named in the complaint or brands the Individual Defendants believe compete with Sound Around brands for a specific time period.

Furthermore, a responding party may not withhold documents simply because it disputes the merits of a claim or defense. *See Huseby, LLC v Bailey*, 20-cv-00167, 2021 WL 3206776, at *7 (D. Conn. July 29, 2021) (holding discovery should not be denied merely because it relates to a claim being challenged as insufficient); *In re Am. Motor Club, Inc.*, 129 B.R. 981, 987 (E.D.N.Y. 1991) (same). Put another way, the Defendants may contest the facts of this proceeding, but they may not withhold relevant and responsive documents solely because they have a different view of the facts than Plaintiff.

Correspondingly, Plaintiff has done little to ameliorate the dispute. As discussed below, its requests are overbroad and redundant. When faced with objections, Plaintiff had an obligation to offer to narrow its objections in writing. At the very least, if Plaintiff disagreed with an overbreadth objection, it should have offered a narrower request subject to seeking broader responses after it reviewed the production to the narrowed request.

The parties, therefore, have utterly failed to comply with their obligations under Rule 34. As a result, they have wasted this Court's time and disadvantaged themselves, as it is extremely unlikely the Court will grant any extensions to the existing fact discovery schedule. They will have to lie in the bed they made.

The Court now turns to the specific RFPs at issue and Defendants' objections and responses to them.

1. **"Competing Brands" Definition**

9

Defendants challenge the definition of "Competing Brands" offered in the First Requests for Production. They argue, specifically, that this definition is too broad because there are 685 individual SKUs developed by Defendants, of which only 50 are potentially competitive, and because six of the eight of the brands identified are not mentioned in the Complaint. Plaintiff does not offer a persuasive response for why such a broad definition is required for all its RFPs. The Court agrees with Defendant and finds that the definition of Competing Brands is too broad and should be limited to the two brands identified in the Complaint -- Bakken-Swiss and LifeMaster. Compl. ¶¶ 142-53; 177-87. Thus, to the extent the RFPs incorporate the definition of "Competing Brands," that definition is hereby narrowed to refer only to Bakken-Swiss and LifeMaster, except as otherwise explicitly allowed herein (including in connection with the 50 products discussed later in this Opinion).

This limitation, however, will not be construed to narrow the universe of the claims themselves. And, if any of the six brands excluded from the RFP "Competing Brands" definition were involved in the alleged misconduct, evidence of their involvement, in whatever capacity, may be sought if Plaintiff develops a good-faith basis during the course of discovery to seek documents pertaining to such brands. Nor will this limitation have prejudicial effect upon any documents or exhibits offered at summary judgment or trial, provided only that Plaintiff comply with the rules governing such proffers. Finally, this limitation of the definition of "Competing Brands" does not obviate the need for the Defendants to produce documents referencing the excluded brands if the documents are otherwise relevant and responsive to other permissible RFPs.

**2. The Relevant Time Period**

Defendants complain that the RFPs are not time limited. It is true that many are not. Accordingly, if an RFP does not contain a time limitation, it shall be limited to cover the period January 2019 to February 2024 because this is the period Plaintiff has indicated is the likely period in which Defendant's began their scheme to build a business to compete with Plaintiff and began competing.

### 3. Requests for "Any" and "All"

Defendants assert that the use of "any" and "all" in the RFPs, by itself, means that the RFPs are overbroad. It is true that an RFP that requests "any and all" documents and communications is disfavored when used with broad categories of information or otherwise unbounded by the remainder of the document request; but Defendants have stretched beyond recognition the law they cite to support this argument. In *De Long Corporation v. Lucas*, 138 F.Supp. 805, 809 (S.D.N.Y. 1956), it was not the mere use of the word "all" that was the issue, but a demand for "all other correspondence, memoranda, and documents," which lacked specificity. *Id.* Similarly, in *Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*, 14-cv-04394AJNBCM, 2016 WL 4613390, at *10 n.8 (S.D.N.Y. Aug. 31, 2016), the issue was not the use of the words "any" or "all" by themselves but the lack of specificity in the requests using those words. While this Court often criticizes the use of these terms in RFPs, it does so when they are not cabined. In this case, the Court will not strike RFPs simply because they use "any" or "all." However, the parties are warned that any use of this phrasing in the future must be carefully considered to ensure it is not unnecessarily sweeping in irrelevant documents or documents disproportionate to the needs of the case.

### 4. The Requests

The Court turns now to the specific document requests made by Plaintiff. The Court will review these requests as to whether they are relevant, burdensome, proportional, harassing, or otherwise non-compliant with the discovery rules. Plaintiff sets forth five categories of documents it seeks on the basis of their relevance: documents relating to the purported (a) Competing Businesses, (b) Unlawful Kickbacks, (c) Theft of Funds from Plaintiff, (d) Theft of Confidential Information/Trade Secrets, and (e) Trademark Infringement. The Court adds one further category, (f) the Tax Returns, which it treats separately.

Generally, the Court applies the limiting principle that the RFPs must be read with reference to the Complaint. If any of the RFPs Plaintiff has served upon Defendants is not related to the allegations specifically asserted in the Complaint, they will be so limited. Finally, as a matter of nomenclature, RFPs served upon the Individual Defendants are referenced as IDRFPs, and those served upon the Corporate Defendants are referenced as CDRFPs.[6]

    **a. Documents Relating to the Purported Competing Businesses (IDRFPs 1, 3, 20-24, 34-40, 42-44, 50, 55, 57-59, 66-67, 71-74; CDRFPs 1, 3, 14-18, 28-34, 36-38, 42, 49-51, 58-59).**

Plaintiff categorizes its requests for documents relating to Competing Brands as falling into several buckets, including (1) communications among Defendants (IDRFPs 21, 22, 23; CDRFPs 15-17); (2) communications with Third Parties (IDRFP 24; CDRFP 18); (3) contracts and

---

[6] The Court has omitted from its Opinion those RFPs for which the Individual Defendants, the Corporate Defendants, or both unanimously assert there are no responsive documents. The Court's Opinion is limited to discussing the RFPs for which Defendants indicated they were withholding documents (and ordering the relevant Defendants to produce the withheld documents consistent with this Opinion). Finally, to the extent documents have already been provided, the Court discusses those RFPs in equal measure to ensure additional productions may be made if necessary to comport with this Opinion. The Court's Opinion will not, by itself, empower the Defendants to claw back already produced documents.

relationships between Defendants and Sound Around (IDRFPs 20, 67, 71-74; CDRFPs 14, 59); (4) communications and transactions with vendors about competing products (Individual RFPs 1, 3, 42, 50, 66; CDRFPs 1, 3, 36, 42, 58); and documents "relating to" Competing Brands (IDRFPs 34-40, 43-44, 55, 57-59, 69, 70; CDRFPs 28-34, 37-38, 47, 49-51, 61).   To start, these requests are limited to the two Competing Brands listed in the Complaint.

IDRFPs 1, 3, 21-24, 35, 36, 42-44, 50, 55, 57-59, 66-67, 71, and 73 (and CDRFPs 1, 3, 15-18, 29, 30, 36-38, 42, 47, 49-51, 58-60, 62, 63, and 65) require further limitation because they mention "products" without limitation. The Complaint identifies only two products—a scooter and a cooking pan—that compete with Sound Around products.  Compl. ¶¶ 110-11, 114-15, 124-27, 144-52. But Defendants state that, after a review, they have identified 50 products (with a greater number of SKUs) that could be construed as competing out of hundreds they have sold.  Given the number of products sold by Defendants, it is not proportional to the needs of the case to request every scrap of paper concerning every product sold by Defendants – which the RFPs can reasonably be read to encompass.  Accordingly, except as otherwise expressly permitted herein, to the extent the RFPs reference "products," that term shall be limited to the 50 potentially competing products identified by Defendants.[7]

To the extent the RFPs seek contracts between and among the Defendants and Sound Around, those contracts must be produced, regardless of whether they pertain to or mention Competing Brands excluded above or products beyond the 50 referenced above.

---

[7] This will be so regardless of under which brands these products have been marketed.  In other words, the requirement to produce documents connected to the 50 potentially competing products shall occur notwithstanding the limitation of the definition of Competing Brands.

13

To the extent the RFPs seek communications, they are overbroad because if read literally, every single exchange on broad topics would have to be produced. Not only will these RFPs be limited to communications about the two brands and 50 products allowed above, but they also shall be limited to communications sufficient to reflect the dates each product was sold and the platforms on which each was sold and the price(s) for which was sold, communications reflecting Defendants' knowledge that the products were competing with Plaintiff's products or an intent to compete, efforts to evade Sound Around's detection of the development and sale of competing products, efforts to solicit Sound Around's employees to work for Defendants, and consumer confusion about the origin of product (i.e., Defendants' brands or Sound Around).

To the extent the RFPs seek documents and communications with vendors, they shall be limited to the two brands and 50 products referenced above and further limited to documents and communications sufficient to show specifications for and purchase orders of the potentially competing products from vendors; documents and communications sufficient to show invoicing and payment for such products; and documents and communications sufficient to identify the vendors and manufacturers used in connection with such products.

To the extent the RFPs seek bank statements, the Court has previously ordered what shall be produced and refers the parties to its prior orders and directions.

To the extent the RFPs seek more general information about the two brands and 50 products referenced above, they shall be limited to documents and communications sufficient to show any registration or warranty cards for such products, and a representative sample of advertisements for such products.

To the extent not specifically addressed above, the remainder of the RFPs falling in this category are stricken except to the extent the Court ordered production of documents responsive to the request in prior orders or during past discovery conferences. Defendant has two weeks from the date of this Order to produce responsive documents.

### b. Documents Relating to Purported Unlawful Kickbacks (IDRFPs 2, 4-6, 65; CDRFPs 2, 57).

IDRFPs 2, 4-6, and 65 (and CDRFPs 2 and 57) seek documents relating to payment of alleged kickbacks, whether in the form of "donations" to charitable entities identified by Defendants (e.g., Congregation Kozover) or payments to any person or entity identified by Defendants or to Defendants. As a paradigmatic example, IDRFP 2 and CDRFP 2 request "[a]ll documents and communications which show payments to [Defendants] received from vendors or manufacturers (including factories in China) from January 2018 to the present." All of these RFPs are relevant to Plaintiff's allegations of a kickback scheme, but they are overbroad. Simply put, to determine whether there was an unlawful kickback scheme, the Plaintiff will need to review payments Defendants received from vendors, but they do not require "all documents and communications" which show these payments. Rather, these RFPS are limited to bank statements, accounting records, or online pay records (such as Zelle/Pay Pal/Venmo statements) and communications directing, transmitting or confirming payments (whether or not for the specific 50 products) made by the vendors/manufacturers of the 50 products referenced above to Defendants, Congregation Kozover or any entity in which Defendants have an interest, as well as communications reflecting requests by Defendants to such vendors/manufacturers (or their employees) to make payments to themselves or any person or entity. These limitations shall not be deemed a narrowing of prior orders from this Court directing Defendants to provide

15

unredacted bank statements from all their existing bank accounts. Defendant has two weeks from the date of this Order to produce responsive documents.

### c. Documents Relating to Purported Theft of Funds from Sound Around (IDRFPs 7-12, 14, 18, 19, 25-33, 46, 48, 63, 64; CDRFPs 4-8, 12, 13, 19-27, 55, 56).

Plaintiff categorizes these requests as pertaining to (1) documents relating to freelancers, designers and photographers; (2) documents related to costs paid by Defendants for their products for, without limitation, duties, shipping, storage, advertisement; (3) documents concerning the operation/funding of the competing business; and (4) documents showing reimbursements/credit card payments from Sound Around.

IDRFPs 48, 63, and 64 (and CDRFPs 55 and 56) pertain to costs paid by the parties for things such as Defendants' trips to China, expenses for which Defendants' sought reimbursement from Sound Around, and credit card statements and receipts supporting reimbursement requests made to Sound Around. Moreover, Plaintiff is limiting its requests here to documents sufficient to show travel and related costs and reimbursement requests and back up for same. Because payments made by each defendant for travel costs and reimbursements are relevant to the claims and defenses, these documents are proportional to the needs of the case and not overburdensome. Thus, they must be produced within two weeks from the date of this Order.

By contrast, IDRFPs 7-12, 14, 18, 19, 26, 28, 33, and 46 (and CDRFPs 4-8, 12, 13, 20, 22, and 27) are overbroad and redundant and disproportionate to the needs of the case. They all seek information designed to learn how Defendants funded their allegedly competing business. However, funding sources other than Sound Around or its vendors/manufacturers with whom Defendants interacted are beyond what is proportional to the needs of the case. Plaintiff

contends Defendants either submitted bogus expense reimbursement requests to Sound Around (which were in actuality expenses of the competing businesses) or used kickback money to fund their competing business. Sound Around does not need documentation of money it paid Defendants in salary or commissions that may have been used to fund a competing business, as it has that information. And, in response to other RFPs referenced above, Sound Around is already receiving unredacted bank statements, and will thus have information about deposits made into them and their source. Thus, all of these requests seek redundant information or information that is disproportionate to the needs of this case insofar as it requests far more information than is needed to identify sources of Defendants' income, which would allow identification of unusual payments which could be a kickback. Accordingly, all these RFPs are stricken.

### d. Documents Relating to Purported Theft of Confidential Information/Trade Secrets/Licenses (IDRFP 51, 52, 56, 62; CDRFPs 43, 44, 48, 54).

These RFPs are aimed at determining whether Defendants took customer lists, vendors lists, financial information, pricing information, Go Flow reports or other competitively sensitive information of Sound Around, including related to procurement of an Amazon Vendor Central Account or Vendor Central license or WalMart DSV. However, they are overbroad.

In response to these RFPs, Defendants shall produce any Sound Around documents or devices still in their possession (or represent there are none), licenses owned by or registered to any Defendant for the sale of the 50 products referenced above, and documents and communications related to the procurement by any of the Defendants of an Amazon Vendor Central Account or Vendor Central license or WalMart DSV account.

17

The Defendants must produce these documents within two weeks of the date of this Order.

### e. Documents Relating to Purported Trademark Infringement (IDRFPs 15-17; CDRFPs 9-11).

These RFPs seek documents and communications referencing the SCOOTKID mark in connection with products sold or marketed by the Competing Brands and any other trademark registered to Defendants. The Complaint identifies only one mark – the SCOOTKID mark. Accordingly, only discovery concerning this mark is relevant. Defendants shall produce documents showing any use of the SCOOTKID mark on any product sold by them, including representative packaging for and inserts for scooters sold by Defendants as described in the Complaint. Additionally, to the extent Defendants contend that they are the owners of the SCOOTKID mark or contest its validity, they shall produce documents on which they rely for that defense.

### f. Tax Returns (IDRFPs 69, 70; CDRFP 61).

"[C]ourts have been reluctant to order routinely" the discovery of tax returns, due to "the private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns." *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y. 1979). There also must be "a compelling need for the returns because the information contained therein is not otherwise readily available." *Rosas v. Alice's Tea Cup, LLC*, 127 F.Supp. 3d 4, 11 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

Defendants say that the tax returns are not relevant, but even if they are, the information therein is available from other sources such as W-2s and 1099s. The Court

disagrees. (*See* ECF No. 117, at 31:21-32:5.) Defendants clearly intend to make the question of whether they were employees or independent contractors an issue in this case. Thus, to the extent that being independent contractors forms a basis of any defense they intend to assert, these documents are relevant. No other source of information will reveal how the Individual Defendants reported their income to federal and/or state tax authorities. Thus, the Defendants shall produce their personal tax returns, except they may redact personally identifying information of any dependents on those returns. The Corporate Defendants' tax returns are also relevant to demonstrating income reported to taxing authorities and will allow Sound Around to determine if income from the bank statements was reported on tax returns. To the extent a Defendant received 1099s or W-2s from another Defendant, that too will show the financial arrangements between and among Defendants. Thus, these too should be produced.

This information must be produced within two weeks of the date of this Order.

\* \* \*

While the Court's role is to supervise discovery, it does not wish to micromanage it, as the parties have asked it to do on this motion. The Court does not today shift fees and costs in connection with this discovery motion, because it finds that both parties are equally at fault for failing to comply with their obligation to meet and confer in good faith to resolve discovery disputes and to tailor document requests and responses as required by Rule 34. But the parties are reminded the Court has the power to impose costs to the party that is on the losing end of a motion for a protective order to compel. Accordingly, the Defendants are ordered to produce

disagrees. (*See* ECF No. 117, at 31:21-32:5.) Defendants clearly intend to make the question of whether they were employees or independent contractors an issue in this case. Thus, to the extent that being independent contractors forms a basis of any defense they intend to assert, these documents are relevant. No other source of information will reveal how the Individual Defendants reported their income to federal and/or state tax authorities. Thus, the Defendants shall produce their personal tax returns, except they may redact personally identifying information of any dependents on those returns. The Corporate Defendants' tax returns are also relevant to demonstrating income reported to taxing authorities and will allow Sound Around to determine if income from the bank statements was reported on tax returns. To the extent a Defendant received 1099s or W-2s from another Defendant, that too will show the financial arrangements between and among Defendants. Thus, these too should be produced.

This information must be produced within two weeks of the date of this Order.

\*     \*     \*

While the Court's role is to supervise discovery, it does not wish to micromanage it, as the parties have asked it to do on this motion. The Court does not today shift fees and costs in connection with this discovery motion, because it finds that both parties are equally at fault for failing to comply with their obligation to meet and confer in good faith to resolve discovery disputes and to tailor document requests and responses as required by Rule 34. But the parties are reminded the Court has the power to impose costs to the party that is on the losing end of a motion for a protective order to compel. Accordingly, the Defendants are ordered to produce

all documents herein required within two weeks of the date of this Order, and the RFPs are otherwise stricken to the extent consistent with this Order.[8]

**SO ORDERED.**

Dated: 4/25/2025  
New York, NY

_Katharine H. Parker_  
Katharine H. Parker  
United States Magistrate Judge

---

[8] To the extent that a particular Defendant has already certified that no responsive documents exist within the possession of that specific Defendant for a particular RFP, they obviously need not make a production of documents in that category.