# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Jesús E. Cuza
305 789 7513
Jesus.cuza@hklaw.com

May 8, 2025

**VIA ECF**
Hon. Katharine H. Parker
United States District Court, S.D.N.Y.
500 Pearl Street, Courtroom 17D
New York, NY 10007-1312

Dear Judge Parker,

Sound Around respectfully requests that Your Honor reconsider and modify the April 25, 2025 Order ("Order") [ECF No. 175] on Defendants' Motion for Protective Order ("Motion"). In particular, Sound Around asks that the Court reconsider the narrow limitations the Order imposes on discovery from Defendants as those limitations run counter to Rule 26. *See, e.g.*, *MacCartney v. O'Dell*, No. 14-CV-3925 (NSR), 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018) ("It is well-established within this Circuit that the rule of discovery will be satisfied if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action.").

First, the Order narrows the scope of the majority of requests by stating that Defendants need only produce discovery regarding two brands specifically referenced in the Complaint and 50 products *Defendants* claim to be the only products (of the more than 600 they claim to sell) that actually compete with Plaintiff.[1] *See, e.g.*, Order at 10 (limiting discovery "because six of the eight of the brands identified are not mentioned in the Complaint"). In doing so, however, the Court overlooks important facts and allegations that clearly implicate **all** brands and products being used by Defendants in their competing business.

For example, in the contract signed by Defendant Friedman—which is attached and therefore incorporated by reference into the Complaint and which forms the basis of Sound Around's contract claim against Friedman—Friedman agreed not to compete with Sound Around for a period of two years after he left the company in February 2024. ECF No. 1-1 ¶ 11. Importantly, this obligation extends beyond those products that actually compete with Sound Around. The non-compete provision makes clear that Friedman "obligated himself" not to (a) sell goods he brought into the company, (b) sell *any other goods* sold by Sound Around, or (c) "***work as an employee or any other types of work for others in this line of business***." *Id.* (emphases added). In other words, this claim is not premised on, or restricted by, the scope of products sold by Sound Around. And there is no question that Sound Around's business and Defendants' competing businesses are in the same "line of business."

---

[1] Defendants' assertion that only 50 products compete with Sound Around—on which the Court relies in limiting discovery—is self-serving, unproven, and inaccurate. Notably, Sound Around cannot even discern *which* 50 products Defendants claim to be competing. In any event, as discussed below, whether the products compete with Sound Around is irrelevant given the breadth of Friedman's non-compete and the claims asserted, including for usurpation and diversion of corporate opportunities as to products and brands that rightfully belonged to Sound Around.

Likewise, the Complaint asserts claims relating to Defendants' ***usurpation of corporate opportunities*** from Sound Around, *including new brands and products not sold by Sound Around* (which should have been sold by Sound Around had Defendants not been secretly competing with Sound Around from within).  Sound Around alleges that "part of the Individual Defendants' role was to help Sound Around develop new products and ideas as well as new brand and product names for Sound Around's further expansion" but that "[r]ather than fulfilling these obligations, the Individual Defendants were developing ideas and creating new brand and product names for their own competing business." ECF No. 1 ¶ 52.  It further alleges that Defendants were "usurping products that were being presented to Sound Around by vendors and manufacturers, which they were supposed to evaluate for Sound Around's business, and instead diverting those products to their own business lines."  *Id.* ¶ 64; *see also id.* ¶ 249 (claiming breach of duty of loyalty and explaining that Defendants "diverted and exploited various opportunities that belonged to Sound Around during the time of their employment with Sound").  Like the contract claim, these claims relate to products that are not already being sold by Sound Around (but which should have been presented to Sound Around). These claims, too, necessitate discovery into products and brands beyond those explicitly referenced in the Complaint.

By way of example, the Order specifically limits communications between Defendants and vendors to those relating to the 50 competing products, but the Complaint alleges that Defendants "contacted vendors they met at conferences, trade shows, or other meetings" they were attending on Sound Around's behalf and solicited information regarding products they then purchased and listed for their own business. *Id.* ¶ 65; *id.* ¶ 70 ("Defendants procured products and samples from Sound Around's vendors using Sound Around's established brands . . . claiming to be purchasing products for those brands on Sound Around's behalf" and then "commandeered those products for their own competing lines").  Those communications are just one category of documents that are necessarily excluded by the narrow confines currently set by the Order, but which are indisputably relevant to the allegations and claims raised in the Complaint.

Second, the Order states that Sound Around could be entitled to information regarding the additional brands excluded by the Order if Sound Around can develop "a good-faith basis during the course of discovery to seek documents pertaining to such brands."  Order at 10.  But Sound Around has *already* established such a basis; to be clear, Defendants have *admitted* they were using those *and other brands* to sell products that compete with Sound Around as well as other products (in violation of their contractual and legal obligations).  In fact, Defendants' recent testimony reveals that there are now five *additional* brands (of which Sound Around was previously unaware) being used by Defendants to sell products (including competing products)— that were registered after commencement of the litigation to individuals and entities not parties in this action.[2]  Among other things, these brands and products are relevant because they relate to Defendants' business, which (again) is in the same line as Sound Around's business and the non-compete does not expire until Feb. 2, 2026 (2 years after Friedman's termination on Feb. 3, 2024).

Third, as the Order acknowledges, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The purported limitation based on solely those brands and

---

[2] This revelation raises an additional question as to whether Sound Around will need to bring those additional parties into this litigation as well.

products explicitly referenced in the Complaint narrows the scope of discovery beyond what is contemplated by the federal rules. *See, e.g.*, *Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578 (AJN), 2021 WL 2418841, at *2 (S.D.N.Y. June 14, 2021) ("The Supreme Court has instructed that [Rule 26(b)(1)] 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case,' and that 'discovery is not limited to issues raised by the pleadings. . .'" (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 183 (S.D.N.Y. 2006) ("Discovery is not limited to the issues raised in the pleadings.").

Fourth, the Order limits the relevant timeframe for discovery to a period from January 2019 to February 2024, but *as the Court previously recognized*, the relevant time period goes beyond the time the Individual Defendants were still working for Sound Around, particularly in light of Friedman's agreement not to compete for a period of two years after terminating his working relationship with Sound Around. *See, e.g.*, ECF 119 at 14 (noting that, for Friedman, records "from 2019 to the present would be relevant because Friedman is subject to a non-compete provision pursuant to his employment contract for two years post-termination, and Friedman was terminated in February 2024"); *see also* Feb. 21, 2025 Hr'g Tr. 23:13-23. Indeed, not only is the contractual non-compete provision still in force after Friedman's termination, but Defendants have also admitted they received kickback payments from vendors relating to orders by Sound Around even after their departure from the company. The restricted timeframe in the Order would also exclude any documents relating to those payments or Defendants' activities after termination.

Finally, Sound Around notes that although the Order suggests Sound Around failed to comply with its "obligation to narrow its requests in writing" when confronted with Defendants' objections, Sound Around repeatedly attempted to do so (both by videoconference and in writing). As just one example, the March 21, 2025 email attached to Sound Around's response to the Motion does precisely that, attempting to identify specific, more narrow categories of documents Sound Around is asking Defendants to produce.[3] ECF No. 159-9; *see also* ECF No. 113-2 at 4-5 (Nov. 20, 2024 email proposing initial phase of discovery).

Based on the foregoing, Sound Around respectfully requests that Your Honor reconsider and modify the Order as discussed above.

---

[3] The Order notes that Defendants claim not to have any documents responsive to a number of requests, and thus the Order does not address those requests. Those requests include, for example, requests for documents or communications relating to (a) solicitation of payments from vendors, (b) donations from vendors at Defendants' request, (c) licenses owned by Defendants for the sale of products online, and (d) Congregation Kozover. Even the limited evidence received to date makes clear Defendants *must* be in possession of such documents. To be sure, Defendants are clearly in possession of their communications with vendors soliciting the millions of dollars in kickbacks they received (which are "payments from vendors") as well as documents associated with those payments. Defendants also admitted they possess multiple licenses to sell products online, despite their claim not to be in possession of any documents relating to such licenses. Likewise, the testimony of both Executive Laundry and the Individual Defendants makes clear Congregation Kozover played a significant role in receipt of funds on Ilowitz' behalf and transfer of those funds at Ilowitz' direction. And the documents produced by Executive Laundry contain communications between Ilowitz and the principal of Executive Laundry as to those payments, notwithstanding that Defendants' maintain they have no documents regarding Congregation Kozover. Sound Around will meet and confer with Defendants regarding this issue.

Respectfully submitted,

HOLLAND & KNIGHT LLP
By: */s/ Jesus E. Cuza*
Jesus E. Cuza (*Admitted PHV*)
Florida Bar No. 428991
Email: jesus.cuza@hklaw.com
Rebecca Canamero (Admitted PHV)
Florida Bar No. 86424
Email: rebecca.canamero@hklaw.com
Annelise Del Rivero
Florida Bar No. 1003234 (*Admitted PHV*)
Email: annelise.delrivero@hklaw.com
Gabriel Godoy-Dalmau
New York Bar No. 5668447
Email: gabriel.godoy-dalmau@hklaw.com

701 Brickell Avenue, Suite 3300
Miami, Florida 33131

and

By: */s/ Marisa Marinelli*
31 West 52nd Street
New York, NY 10019
(212) 513-3200
Marisa.Marinelli@hklaw.com

*Attorneys for Plaintiff Sound Around, Inc. and Non-Party Brach Family Foundation*

4