```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
SOUND AROUND, INC.,                       :    24cv1986 (DLC)
                                          :
                    Plaintiff,            :    OPINION AND
                                          :       ORDER
          -v-                             :
                                          :
MOISES FRIEDMAN et al.,                   :
                                          :
                    Defendants.           :
                                          :
----------------------------------------- X
```

APPEARANCES:

For plaintiff:

Jesus E. Cuza
Rebecca J. Canamero
Annelise Del Rivero
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131

Marisa Marinelli
Holland & Knight LLP
West 52nd Street
New York, NY 10019

For defendants Moises Friedman, Shulim Eliezer Ilowitz, ML Imports, Inc., CYRF, Inc., LRI Group, LLC, MDF Marketing, Inc., and World Group Import, LLC:

Nicholas Fortuna
Megan Jeane Muoio
Han Lin Rong
Allyn & Fortuna LLP
400 Madison Avenue, Suite 10
New York, New York 10017

For defendants Executive Laundry, LLC and Executive Services:

Paul Novak
Michael J. Byrne

Byrne & O'Neill, LLP
26 Broadway, 3rd Floor
New York, NY 10004

DENISE COTE, District Judge:

Sound Around, Inc. ("Sound Around") has moved for a preliminary injunction against two former employees, Moises Friedman and Shulim Eliezer Ilowitz, and other defendants. It asserts that it is being harmed by the defendants' operation of a competing business and seeks to enjoin them from operating that business pending trial. Sound Around's motion for a preliminary injunction is denied.

## Background

The following facts are drawn from documents filed in connection with this motion. Most of the facts recited here are not disputed. Any disputes material to this motion are noted.

Sound Around is operated by Zigmond Brach and his sons Jeremiah ("Jerry") and Abraham ("Abe"). Sound Around locates products manufactured abroad, principally in China, that it imports and sells on online retail platforms such as Amazon and Walmart.

Sound Around hired Friedman, Abe's brother-in-law, in 2013. It moved him into a "buyer" role in 2017. Sound Around hired Ilowitz, Jerry's friend and the brother of Jerry's personal secretary, in 2019. Ilowitz also worked as a buyer. Friedman

2

and Ilowitz were both in their twenties and had little work experience when Sound Around hired them. They learned about the online retail sales business primarily through their work with Sound Around.

Friedman and Sound Around memorialized a Hebrew-language contract on June 6, 2018. It described Friedman as an employee and included, inter alia, a provision that Friedman would not compete with Sound Around, "neither during the hours in which he works as an employee . . . nor if he leaves his job either involuntarily or voluntarily, or if [Sound Around] will terminate him -- for 2 years after he leaves the job" (the "Noncompete"). The contract stated that, if Friedman breached the Noncompete, he would pay "half the profit he earns from the goods that he obligated himself not to do business with." It also stated that Friedman would not need to abide by the Noncompete "for goods that [he] brought in" if he was terminated "for reasons other than misconduct." Sound Around did not execute any such document with Ilowitz.

The defendants have submitted evidence that, although Friedman and Ilowitz were first hired by Sound Around as employees, Friedman became an independent contractor in December 2018 and Ilowitz became an independent contractor in January 2022. Beginning at those times, they were no longer paid

3

salaries and were instead paid exclusively on a commission basis.  Sound Around takes the position that Friedman and Ilowitz continued to be its employees.

In late 2021 or 2022, Friedman and Ilowitz began to build a separate online retail sales business that they did not disclose to Sound Around.  Their business operated similarly to Sound Around, by locating manufacturers in China, buying and importing their goods, and selling those goods through online retail platforms.  They developed new brands and product lines for sale on the same platforms that Sound Around used to sell its products.  Some of the defendants' products were very similar to products sold by Sound Around.  In creating their new business, Friedman and Ilowitz worked with manufacturers with whom they had relationships as buyers for Sound Around.

Ilowitz also obtained vendor licenses on Amazon and Walmart for the new business.  He did so by reaching out to the contacts he used at Amazon and Walmart as a buyer for Sound Around, using his Sound Around email address and signature block.

By January 2024, Jerry and Abe had discovered that a competitor was selling certain products online that were similar to products sold by Sound Around.  Ilowitz resigned from Sound Around on January 30, 2024.  Sound Around terminated its relationship with Friedman on February 3, 2024.

4

Sound Around filed this action on March 15, 2024.  The defendants consist principally of Friedman, Ilowitz, and companies they control: ML Imports, Inc., Cyrf, Inc., LRI Group, LLC, MDF Marketing, Inc., and World Group Import, LLC (collectively, the "Friedman Defendants").  The two other defendants are companies that Ilowitz used to deposit money paid to him by Sound Around, Executive Services and Executive Laundry, LLC (the "Executive Defendants").  Sound Around brings claims under federal and New York law.  They include claims for breach of fiduciary duties, diversion of corporate opportunities, misappropriation of trade secrets, and misappropriation of confidential information, as well as a claim against Friedman for breach of the Noncompete.

Sound Around first moved for a preliminary injunction on April 22, 2024.  This action was reassigned to this Court on April 11, 2025.  On April 16, Sound Around's initial motion for a preliminary injunction was denied without prejudice to renewal.

The possibility of a renewed preliminary injunction motion was addressed at a conference held on June 6.  The Court scheduled a preliminary injunction hearing for July 29 and explained that the hearing would be necessary if the parties presented factual disputes that are material to the motion.

5

Meanwhile, discovery is scheduled to end on October 31 and any summary judgment motions are due November 21.

Sound Around filed a renewed motion for a preliminary injunction on June 27. That motion is supported by declarations from Abe Brach, Jack Tyberg, Jerry Brach, Mohamed Sadik, and Ryan Parks, as well as many exhibits. Sound Around requests a preliminary injunction that would enjoin Friedman, Ilowitz, and those "acting in concert with them" from:

(1) operating in the same line of business as Sound Around;

(2) selling products online that the defendants developed while working for Sound Around;

(3) using the brands that the defendants and "their entities" created while working for Sound Around; and

(4) using the vendor licenses that were procured with Sound Around's contacts and resources.

The Friedman Defendants and Executive Defendants filed separate opposition papers on July 18. The Friedman Defendants' opposition includes declarations from Friedman, Keith Sterling, and Rabbi Yakov Markowitz, as well as many exhibits. Sound Around's reply is due July 25. The Friedman Defendants also filed a motion in limine on July 21, arguing that the declarations and exhibits that Sound Around filed on June 27 should be excluded because they are unreliable. As noted, a hearing is scheduled for July 29. For the reasons described below, a hearing is unnecessary.

## Discussion

"A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant, by a clear showing, carries the burden of persuasion." St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C., 131 F.4th 102, 106 (2d Cir. 2025) (citation omitted). The movant must show

> (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest.

Id. (citation omitted).

"The irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction and must therefore be satisfied before the other requirements for an injunction can be considered." Id. (citation omitted). To show irreparable harm, the plaintiff must "demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C., 120 F.4th 59, 80 (2d Cir. 2024) (citation omitted). An irreparable harm must be "a continuing harm." Id. at 81 (citation omitted).

Generally, irreparable harm may be found "only where there is a threatened imminent loss that will be very difficult to quantify at trial."  Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 38 (2d Cir. 1995).  "Where the loss of a product will cause the destruction of a business itself or indeterminate losses in other business, the availability of money damages may be a hollow promise and a preliminary injunction appropriate."  Id.  "Monetary compensation need only be 'adequate' for preliminary relief to be unwarranted, not perfect."  St. Joseph's Hosp. Health Ctr., 131 F.4th at 106 (citation omitted).

Sound Around's request for preliminary relief is not supported by the evidence or arguments it has submitted through this motion.  To begin with, Sound Around has not shown that it is likely to prevail in demonstrating that Friedman and Ilowitz remained its employees throughout the period of their ties to the company.  Instead, it appears that Friedman and Ilowitz became independent contractors for Sound Around and worked in that capacity for a substantial period of time.  As a result, their legal obligations to Sound Around changed and they were entitled at the very least to set up their own business.

An even more fatal deficiency in Sound Around's motion is that it cannot demonstrate irreparable harm that would warrant preliminary relief.  Accordingly, it is unnecessary to put the

parties through the additional expense and burden of holding a hearing.

Specifically, Sound Around has argued that there are three grounds for a preliminary injunction: Friedman's violation of the Noncompete, the defendants' diversion of corporate opportunities, and the defendants' misappropriation of trade secrets and confidential information. Sound Around fails to show the existence of irreparable harm from any of these grounds.

I. Friedman's Noncompete

Sound Around seeks to enforce Friedman's Noncompete. It appears to take the position that the Noncompete runs through February 3, 2026 (two years after Sound Around severed its relationship with Friedman). Sound Around seeks a preliminary injunction on this claim that would bar Friedman and those "acting in concert" with him from working in any business that competes with Sound Around pending trial. Sound Around fails to show that it is entitled to such extraordinary preliminary relief.

Even if Sound Around can succeed in proving that the Noncompete is enforceable, its terms do not suggest that any injunctive relief is appropriate. The Noncompete provides a

9

formula to calculate damages arising from a breach, and does not envision injunctive relief.[1]

Regardless, Sound Around fails to show that any irreparable harm will result from Friedman working in a competing business over the next several months.  For instance, while Sound Around argues that there is a "high chance" that Friedman (along with Ilowitz) will use Sound Around's customer information to "interfere with or affect Sound Around's relationships with its customers," it has offered no evidence to support such a finding.  And although Sound Around suggests that irreparable harm is analyzed with less rigor if a restrictive covenant has been breached, there is "no automatic assumption that irreparable harm must inevitably be assumed in breach of covenant cases."  JTH Tax, LLC v. Agnant, 62 F.4th 658, 673 (2d Cir. 2023).  A plaintiff must still present "factual particulars" showing "actual and imminent" harm.  Id. (citation omitted).

II.  Diversion of Corporate Opportunities

Sound Around next argues that Friedman and Ilowitz usurped its business opportunities by developing brands and products for

---

[1] The Friedman Defendants argue that the contract containing the Noncompete, which was drawn by a rabbi, is a religious contract and not enforceable under New York law.  Sound Around seeks to enforce it as a valid contract governed by New York law.  It is unnecessary to resolve this issue at this time.

their own business while working as its buyers. Sound Around seeks to prove in this litigation that it is entitled to a constructive trust over that property. In the meantime, it seeks to prevent the defendants from selling products and using brands that they developed while Friedman and Ilowitz were working for Sound Around, and from using the vendor licenses that were procured with Sound Around's contacts and resources. Sound Around fails, however, to show that it is experiencing ongoing irreparable harm based on the defendants' current operation of their business.

To be sure, Sound Around has provided evidence that the defendants have sold certain products that are very similar to its own products. But Sound Around does not rely on this evidence of direct competition as a ground for preliminary relief. Sound Around also does not offer evidence to show that the defendants are still selling products that directly compete with Sound Around's products, and in what volumes. And Sound Around provides no meaningful linkage of the defendants' listings to any of its trade secrets or confidential information. Overall, there is no basis to conclude that a damages award at the conclusion of this litigation cannot adequately compensate Sound Around for any harm it is able to prove based on directly competing product listings.

Instead of focusing on similar product listings, Sound Around argues that it would have achieved greater sales and growth if Friedman and Ilowitz had given it access to their brands and products instead of developing those products for themselves.  But this argument does not describe an ongoing harm for which preliminary relief is appropriate.  After all, Sound Around has not shown that the defendants are currently diverting any business opportunities.  Sound Around will be given an opportunity at trial to prove the lost sales and growth it alleges based on diversion of past business opportunities, and should it succeed in making such a showing it may seek compensation through monetary damages.

Sound Around also argues that there is a risk of irreparable harm because the defendants' use of diverted brands and products during the pendency of the case "could" devalue that property.  But this theory of irreparable harm is entirely speculative and unsupported by any evidence.

Sound Around also seeks to preliminarily enjoin the defendants' use of the vendor licenses that Ilowitz obtained from Amazon and Walmart.  This is not an appropriate request for interim relief pending trial.  Sound Around has its own vendor licenses, and it has provided no evidence that the defendants'

use of their vendor licenses is currently causing harm to its business.

### III. Misappropriation of Trade Secrets and Confidential Information

Finally, Sound Around argues that the defendants are using its trade secrets and confidential information. It seeks to enjoin Friedman and Ilowitz from operating in the same line of business as Sound Around pending trial. This is another inappropriate request for interim relief that is unsupported by the record.

An employer's right to protect its trade secrets is balanced against an employee's right to use his "knowledge, training, and experience" and "to carry on his trade or profession after he leaves his employer." Vermont Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142, 150 (2d Cir. 1996) (citation omitted). There is no automatic presumption of irreparable harm from a former employee's use of trade secrets. Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009). The Second Circuit has explained as follows:

> A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets. Where a misappropriator seeks only to use those secrets -- without further dissemination or irreparable impairment of value -- in pursuit of profit, no such presumption is warranted because an

13

>     award of damages will often provide a complete remedy
>     for such an injury.

Id. at 118-19.

Sound Around does not identify with clarity or specificity what trade secrets and confidential information are at issue here, or how their use by the defendants creates ongoing irreparable harm. Instead, it lists as its trade secrets broad categories of information that encompass essentially its entire business -- "data relating to pricing, costs, systems, and methods"; "[c]ustomer lists and pricing information; and "[b]usiness strategies, advertising data analytics, customer preferences, and vendor relationships." Sound Around also explains that Friedman and Ilowitz had access to internal software and analytics containing large amounts of proprietary information, including two systems known as Power BI and Go Flow. According to Sound Around, it gave Friedman and Ilowitz access to almost all information of significance to its business.

As already noted, it remains to be seen whether Sound Around will prevail at trial in showing that Friedman and Ilowitz were its employees during the entirety of their relationship with Sound Around and therefore breached duties of fidelity that accompany such a relationship. If they were instead independent contractors when Sound Around shared its

14

confidential information with them, then the legal ramifications of the defendants' use of that information for their independent business opportunities will have to be analyzed under the legal obligations that pertain to independent contractors.

In any event, Sound Around's motion does not include evidence that the defendants are, today, misappropriating any specific trade secrets or confidential information in a way that is causing irreparable harm to Sound Around.  Sound Around has not shown, for example, that the defendants are currently using any specific trade secrets or confidential information in a way that devalues them.  Nor has Sound Around shown that the defendants are likely to disseminate any specific trade secrets or confidential information.

Instead, Sound Around makes a vague and general argument of irreparable harm, claiming that disclosure of its trade secrets and confidential information is inevitable because they have been incorporated by the defendants into "the very fabric of their business."  There are many problems with this argument.  Again, Sound Around does not identify any of its trade secrets or confidential information that is currently integral to the defendants' business such that its disclosure is inevitable in the course of their conduct of their separate business.  Sound Around also makes no attempt to distinguish protectable trade

15

secrets and confidential information from the kinds of ordinary knowledge, training, and experience that Friedman and Ilowitz obtained at Sound Around and were entitled to continue using after they left their employment. And Sound Around does not account for the likelihood that many of its purported trade secrets are publicly available or have become stale since Friedman and Ilowitz stopped working with Sound Around in early 2024.

## Conclusion

Sound Around's June 27 motion for a preliminary injunction is denied. The Friedman Defendants' July 21 motion in limine is terminated as moot. The preliminary injunction hearing scheduled for July 29 is cancelled.

Dated:    New York, New York
          July 22, 2025

_____
DENISE COTE
United States District Judge