**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

SOUND AROUND, INC.,

                               Plaintiff,

               -against-

MOISES FRIEDMAN et al.,

                            Defendants.
----------------------------------------------------------------X

**24-CV-1986 (DLC) (KHP)**

**OPINION AND ORDER ON CROSS MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Defendants Moises Friedman, Shulim Eliezer Ilowitz, ML Imports, Inc. ("ML Imports"), CYRF, Inc., LRI Group LLC, MDF Marketing, Inc., and World Group Import, LLC (collectively, the "Friedman/Ilowitz Defendants") move pursuant to Federal Rule of Civil Procedure ("Rule") 37(a) to compel Plaintiff Sound Around, Inc. ("Sound Around") to produce documents responsive to their document requests. (ECF No. 241)  Likewise, Sound Around cross moves under Rule 37(a) to compel the Friedman/Ilowitz Defendants to produce documents responsive to its document requests and supplement interrogatory responses.  (ECF No. 243)

In general, and as discussed below, the cross-motions contain tit-for-tat accusations with few specifics about documents that are known to exist but have not yet been produced.  Both sides repeat broad categories of documents that they contend they still need, yet both sides also represent they have produced all the documents they have that are relevant or have been previously ordered to be produced and that no documents (or additional documents) exist. With the exception of a few requests by Sound Around in its motion which are granted, as set forth below, its motion is denied.  Likewise, with the exception of requiring Sound Around to

1

provide Defendants clarifying supplements to its responses to Defendants' document requests, Defendants' motion is denied.

**BACKGROUND**

The Court assumes familiarity with this matter and only includes facts to provide context for this motion. (*See* ECF No. 232, at 2-6)  Friedman and Ilowitz were employed by Sound Around and paid salaries.  They later were paid solely on a commission basis.  The parties dispute whether Friedman and Ilowitz were employees or independent contractors when they were paid solely on a commission basis and no payroll withholding taxes withheld from their commission payments.  They have since early 2024 severed all ties, and Friedman and Ilowitz run their own business that is similar to Sound Around's business.

Sound Around brings claims for breach of fiduciary duties, diversion of corporate opportunities, misappropriation of trade secrets, and misappropriation of confidential information, as well as a claim against Friedman for breach of a non-compete agreement. contends that the Friedman and Illowitz misappropriated confidential and trade secret information, diverted Sound Around's corporate opportunities for their own benefit, used Sound Around's trademarks and trade dress to market competing products, and stole "hundreds of thousands (if not millions) of dollars" from Sound Around to build their business, pay their personal debts and expenses, and compete directly with Sound Around.

Friedman and Ilowitz have asserted a number of counterclaims against Sound Around for breach of contract.  First, they contend that when they were independent contractors, Sound Around failed to honor an agreement to pay them a sales commission of ten percent of

the profit of sales of products sourced by them and offered for sale to Sound Around.  They also assert a claim of conversion against Sound Around alleging that Sound Around improperly charged them for returned products that were later given to a company called Returaround LLC, which sold the returned products, and then failed to share the revenue from the resale of the returned products with them. They also assert claims of tortious interference with contractual relations and prospective economic advantage against Sound Around in connection with Sound Around's alleged attempts to induce vendors and manufacturers in China and retailers such as Amazon with whom they do business to terminate their relationships with Defendants. Finally, they contend that Sound Around engaged in a series of unlawful schemes, including a so-called "Amazon Reviews Scheme," induced them to unwittingly take action in furtherance of these schemes, and is responsible for indemnifying them in the event they are held liable in connection with any such scheme.

Discovery has been contentious in this action, with both sides contending the other has failed to conduct reasonable searches for documents and/or failed to produce all relevant and responsive documents.  Fact discovery is now largely complete, with the exception of any discovery ordered pursuant to the instant motions.  The deadline for the close of all discovery is October 31, 2025.

## LEGAL STANDARD

Rule 37 of the Federal Rules of Civil Procedure sets forth the procedures for enforcing discovery rules and orders and imposing sanctions for misconduct in discovery.  *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 158 (2d Cir. 2012). The Rule's

sanction provisions serve several purposes including to "ensure that a party will not benefit from its own failure to comply;" to deter and "obtain compliance with the particular order issued;" and to "serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976); *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)). Rule 37(a) permits a party to move for an order compelling disclosure or discovery and must be accompanied by a certification that the movant has in good faith attempted to confer with the other party in an effort to obtain the discovery without resort to a motion. Fed. R. Civ. P. 37(a)(1). The Rule can be invoked for failure to answer deposition questions, answer interrogatories, produce documents, provide initial disclosures and also for evasive or incomplete disclosures or production. Fed. R. Civ. P. 37(a)(3-4).

If a Rule 37(a) motion is denied, the Court must, after giving an opportunity to be heard, require the movant to pay the party who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees, unless the motion was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B). If a Rule 37(a) motion is granted, the court similarly must order the party whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in bringing the motion, including attorney's fees, unless the movant filed the motion without first conferring in good faith to resolve the matter, the opposing party's nondisclosure, response or objection was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A).

4

When considering any motion to compel discovery, the Court is guided by Rule 26(b), which specifies the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Under Rule 26(b), the Court may deny discovery of relevant information if it is not proportional to the needs of the case.

The specific disputes before the Court primarily relate to Rule 34, which governs document requests and responses to document requests. That rule requires parties to describe with reasonable particularity each item or category of items requested. Fed. R. Civ. P. 34(b)(1)(A). Recent amendments to the rule were designed to prohibit "overly broad, non-particularized discovery requests that reflexively [seek] all documents." *The Sedona Conference Federal Rule of Civil Procedure 34(b)(2) Primer: Practice Pointers for Responding to Discovery Requests*, 19 Sedona Conf. J. 452-53 (2018). Rule 34 also imposes the responsibility on a responding party to state what it is withholding or describe the scope of the production it is willing to make, including the parameters of the search to be made (i.e., custodians, sources, date ranges and search terms, or search methodology). *See also* Fed. R. Civ. P. 34 Advisory Committee's Note to 2015 amendment. This aspect of the Rule is intended to prohibit "overuse of boilerplate objections that provide[] insufficient information about why a party [i]s objecting

5

to producing," and "responses ... that fail[] to clarify whether responsive documents [are] being withheld on the basis of objections." 19 Sedona Conf. J. 452-53.

Importantly, Rule 26(g) requires lawyers who serve document requests to certify that the request is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" or "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B)(ii)-(iii).  With respect to responses to document requests, Rule 26(g) requires the lawyers responding to certify that the response "is complete and correct as of the time it is made."  Fed. R. Civ. P. 26(g)(1)(A).

The Rule does not specify the exact format for document requests and responses.  The Rule states only that the request must describe "with reasonable particularity each item or category of items to be inspected" or produced and specify the time, place, and manner for inspection or production.  Fed. R. Civ. P. 34(b)(1).  However, Rule 34 must be read in conjunction with other Rules, including Rules 5, 11, and 26.  Rule 26(g) requires document requests to be certified and signed, and Rule 5 requires document requests to be served on every party unless the court orders otherwise.  Fed. R. Civ. P. 5; 26(g)(1).  Parties need not respond to unsigned requests.  Fed. R. Civ. P. 26(g)(2).

Rule 5 further specifies that discovery requests should not be filed with the Court until they are used in the proceeding or the court orders filing.  Fed. R. Civ. P. 5(d)(1)(A).  It also contemplates that a certificate of service of the document be created in the event the document is later filed with the court, at which time the certificate of service must be filed.

6

Fed. R. Civ. P. 5(d)(1)(B). Finally, Rule 11(b) applies if a document request is filed in court and contains a certification and signing requirement in connection with document requests that are the subject of discovery motions. The Court may impose sanctions on lawyers who violate Rule 26(g) or 11(b). Fed. R. Civ. P. 11(c); 26(g)(3).

Sound Around also contends that the Friedman/Ilowitz Defendants failed to properly respond to 10 interrogatories. Interrogatories are governed by Rule 33. Like objections to document requests, objections to interrogatories must be stated with specificity. Any objection not made within 30 days of service of the interrogatory is waived, absent a court order otherwise upon a showing of good cause. Fed. R. Civ. P. 33(b)(2)-(4). A party may answer an interrogatory by specifying particular business records that provide the answer. Fed. R. Civ. P. 33(d). Interrogatories and responses thereto also are subject to the same provisions of Rules 5, 11, and 26 applicable to document requests and responses discussed above.

## DISCUSSION

### 1. *Motion to Compel Sound Around to Produce Documents*

The Friedman/Ilowitz Defendants' motion to compel is difficult to follow. Their memorandum of law does not identify the specific document requests they served that are at issue. However, based on documents filed in connection with the memorandum of law that include an attorney affidavit and various letters and emails between the parties regarding discovery, it appears the requests at issue are Document Requests 9, 13-14, 17-18, 20-22, 24, 31, 46, and 52. Defendants do not help their case by making the court sift through voluminous correspondence to ascertain what in fact is at issue and truly outstanding.

These requests, and Sound Around's objections and responses to them are as follows:

7

**Request No. 9:**  Documents concerning payments made to the Individual Defendants, including but not limited to sales commission payments, bonuses, or expense reimbursement.

**RESPONSE:**  Plaintiff objects to this request to the extent it seeks the production of privileged attorney-client communication and work product.  Subject to this objection, Plaintiff will produce all non-privileged documents responsive to this request, if any, that are within its possession, custody or control and can be found through a reasonable search. . . .

**Request No. 13:** Documents concerning the products developed and procured for Plaintiff by the Individual Defendants (the "Products"), including but not limited to sales reports for the Products and documents sufficient to identify the Products, their cost, their sales prices, and the retailer through which they were sold.

**RESPONSE:**  In addition to its objection regarding the overbroad definition of "Products," Plaintiff objects to this request as being overbroad and irrelevant to the extent it intends to seek discovery on products that are not implicated by this litigation. Many products for which the Individual Defendants were involved with the development or procurement are well beyond the scope of this case. Plaintiff further objects to this request to the extent it calls for production of every single document concerning every product with which the Individual Defendants were involved during their employment with Sound Around, and is not limited to the scope of the litigation and the claims and defenses asserted herein. Plaintiff also objects to this request to the extent it seeks the production of privileged attorney-client communication and work product. Subject to these objections, Plaintiff agrees to confer with Defendants regarding the appropriate scope of this request. Plaintiff will withhold the production of responsive documents, if any, until these objections are properly resolved.

**Request No. 14:** Documents concerning Plaintiff's selection of which Products to sell, Plaintiff's rejection of Products, the quantity of Products selected, and the price of such Products.

**RESPONSE**:  In addition to its objection regarding the overbroad definition of "Products," Plaintiff objects to this request as being overbroad and irrelevant to the extent it intends to seek discovery on products that are not implicated by this litigation. Many products that the Individual Defendants helped develop or

procure are beyond the scope of this case. Plaintiff further objects to this request to the extent it calls for production of every single document concerning the selection of any product sold by Sound Around with which Individual Defendants were involved during their employment with Sound Around, and is not limited to the scope of the litigation and the claims and defenses asserted herein. Plaintiff also objects to this request to the extent it seeks the production of privileged attorney-client communication and work product. Subject to these objections, Plaintiff agrees to confer with Defendants regarding the appropriate scope of this request. Plaintiff will withhold the production of responsive documents, if any, until these objections are properly resolved. . . .

**Request No. 17:** Contracts, agreements, and drafts thereof, between Plaintiff and any third-party concerning the Products.

**RESPONSE**: In addition to its objection regarding the overbroad definition of "Products," Plaintiff objects to this request as being overbroad and irrelevant to the extent it intends to seek discovery on products that are not implicated by this litigation. Many products that the Individual Defendants helped develop or procure are beyond the scope of this case, and therefore contracts covering those products are not discoverable. Plaintiff further objects to this request to the extent it calls for production of every single contract/agreement (or draft) with any individual or entity concerning every product with which the Individual Defendants were involved during their employment with Sound Around, and is not limited to the scope of the litigation and the claims and defenses asserted herein. Plaintiff also objects to this request to the extent it seeks the production of privileged attorney-client communication and work product. Subject to these objections, Plaintiff agrees to confer with Defendants regarding the appropriate scope of this request. Plaintiff will withhold the production of responsive documents, if any, until these objections are properly resolved.

**Request No. 18:** Sales commission policies applicable to the Individual Defendants during the Relevant Time Period, and any revisions or amendments thereto, including but not limited to sales commission calculations, breakdowns, statements, and/or reconciliations for the Individual Defendants.

**RESPONSE**: . . . Plaintiff will produce all nonprivileged documents responsive to this request, if any, that are within its possession, custody or control and can be found through a reasonable search. . . .

**Request No. 20:** Documents evidencing expenses deducted from the Individual Defendants' sales commissions, including but not limited to shipping container costs, import duties, tariffs, storage and warehousing, finance fees, administrative charges, liability insurance, advertising and agency fees, and Amazon.com fees.

**RESPONSE**: Plaintiff objects to the phrasing of this request to the extent it calls for an incidental or implied admission of fact that these expenses were "deducted" from "commission." The fact that Plaintiff has answered this request may not properly be taken as an admission that it accepts or admits the existence of any facts set forth or assumed by this request. Subject to this objection, Plaintiff will produce nonprivileged documents regarding the calculation of the Individual Defendants' payments, if any, that are within its possession, custody or control and can be found through a reasonable search.

**Request No. 21:** Documents concerning administrative charges and/or fees deducted from the Individual Defendants' sales commissions, including but not limited to the method by which administrative charges and/or fees were calculated by Plaintiff and correspondence with the Individual Defendants regarding administrative charges and/or fees.

**RESPONSE**: Plaintiff objects to the phrasing of this request to the extent it calls for an incidental or implied admission of fact that these expenses were "deducted" from "commission." The fact that Plaintiff has answered this request may not properly be taken as an admission that it accepts or admits the existence of any facts set forth or assumed by this request. Plaintiff also objects to this request to the extent it seeks the production of privileged attorney-client communication and work product. Subject to these objections, Plaintiff will produce nonprivileged documents regarding the calculation of the Individual Defendants' payments, if any, that are within its possession, custody or control and can be found through a reasonable search.

**Request No. 22:** Documents concerning retailer charges and/or fees deducted from the Individual Defendants' sales commissions, including but not limited to the method by which retailer charges

and/or fees were calculated by Plaintiff and correspondence with the Individual Defendants regarding retailer charges and/or fees.

**RESPONSE**:  Plaintiff objects to the phrasing of this request to the extent it calls for an incidental or implied admission of fact that these expenses were "deducted" from "commission." The fact that Plaintiff has answered this request may not properly be taken as an admission that it accepts or admits the existence of any facts set forth or assumed by this request. Plaintiff also objects to this request to the extent it seeks the production of privileged attorney-client communication and work product. Subject to these objections, Plaintiff will produce nonprivileged documents regarding the calculation of the Individual Defendants' payments, if any, that are within its possession, custody or control and can be found through a reasonable search. . . .

**Request No. 24:** Documents concerning storage of the Products, including contracts and/or agreements with storage providers, statements, invoices, and payments.

**RESPONSE**:  In addition to its objection regarding the overbroad definition of "Products," Plaintiff objects to this request as being overbroad and irrelevant to the extent it intends to seek discovery on products that are not implicated by this litigation. Many products that the Individual Defendants helped develop or procure are not discoverable.  Plaintiff further objects to this request to the extent it calls for production of every single document concerning storage of every product with which the Individual Defendants were involved during their employment with Sound Around, and is not limited to the scope of the litigation and the claims and defenses asserted herein. Plaintiff also objects to this request to the extent it seeks the production of privileged attorney-client communication and work product. Subject to these objections, Plaintiff agrees to confer with Defendants regarding the appropriate scope of this request. Plaintiff will withhold the production of responsive documents, if any, until these objections are properly resolved.

**Request No. 25:** Documents concerning tariffs or import fees deducted from the Individual Defendants' sales commissions, including but not limited to agreements and/or contracts with third-parties regarding such tariffs or import fees, the payment of such tariffs or import fees by Plaintiff, and correspondence with the Individual Defendants regarding such tariffs or import fees.

**RESPONSE**:  Plaintiff objects to the phrasing of this request to the extent it calls for an incidental or implied admission of fact that these expenses were "deducted" from "commission." The fact that Plaintiff has answered this request may not properly be taken as an admission that it accepts or admits the existence of any facts set forth or assumed by this request. Plaintiff also objects to this request to the extent it seeks the production of privileged attorney-client communication and work product. Subject to these objections, Plaintiff will produce nonprivileged documents regarding the calculation of the Individual Defendants' payments, if any, that are within its possession, custody or control and can be found through a reasonable search. . . .

**Request 31:**  Documents concerning Plaintiff's allegation that the Individual Defendants used the Plaintiff's bank account(s) and/or PayPal account(s) to pay for samples, shipping costs, photographers, brand creators, and/or freelancers for products not developed or procured for Plaintiff, or for the Individual Defendants' personal credit cards or expenses, including documents sufficient to identify the item(s) and/or service(s) reimbursed.

**RESPONSE:** Plaintiff objects to this request to the extent it seeks the production of privileged attorney-client communication and work product. Subject to this objection, Plaintiff will produce all nonprivileged documents responsive to this request, if any, that are within its possession, custody or control and can be found through a reasonable search. . . .

**Request 46:**  Documents concerning Plaintiff's allegations that the Individual Defendants[] made false requests for reimbursement of expenses to Plaintiff.

**RESPONSE:** Plaintiff objects to this request to the extent it seeks the production of privileged attorney-client communication and work product. Subject to this objection, Plaintiff will produce all nonprivileged documents responsive to this request, if any, that are within its possession, custody or control and can be found through a reasonable search. . . .

**Request No. 52:** Documents concerning Plaintiff's solicitation and/or purchase of online reviews from consumers, including but not limited to rebate offers, reimbursement offers, and Zen Desk customer service communications with consumers.

     **RESPONSE:**  Plaintiff objects to the phrasing of this request to the extent it calls for an incidental or implied admission of fact regarding the alleged "purchase of online reviews." The fact that Plaintiff has answered this request may not properly be taken as an admission that it accepts or admits the existence of any facts set forth or assumed by this request. Plaintiff further objects to this request on the grounds that it is overly broad and burdensome because it is requesting every document relating or referring to a "solicitation" of online reviews and every rebate offer, reimbursement offer, or Zen Desk customer communication not limited to any issue or even products pending in the subject action. Plaintiff also objects to this request because it seeks documents irrelevant to any party's allegations, claims or defenses. Plaintiff further objects to this request to the extent it seeks the production of privileged attorney-client communication and work product.

(ECF No. 241-3.)

   Defendants state only in the most cursory manner that these requests are relevant and proportional to the needs of the case without tying their statements to specific requests. Nevertheless, the Court finds that they to pertain to the claims and defenses and therefore are relevant.  Requests 18, 20-22, and 24-25 all relate to payment and computation of commissions paid to Friedman and Ilowitz.  Requests 13 and 14, though broadly worded, also relate to commissions insofar as they seek information about the product sales that formed the basis for Sound Around's commission payments to Friedman and Ilowitz.  Request 9 relates to payment of commissions and expense reimbursements.  Requests 31 and 46 pertain to the allegation that Friedman and Ilowitz used Sound Around funds to pay for their personal credit cards or expenses, and documents concerning charges made to Friedman and Ilowitz's individual credit cards for items and services of Sound Around (such as rebates and charge backs/returns). And, finally, while not entirely clear from the submissions, Request 52 appears to relate to the

indemnification counterclaim—but Sound Around objected to producing any documents at all in response to this request.

Sound Around's written objections and responses to these requests are clearly improper and contrary to what is required under Rule 34. It did not describe with any particularity at all the documents it would produce or that it was withholding. It also improperly stated it would meet and confer on potentially narrowing the scope of what it perceived to be as overbroad requests rather than simply state what it considered to be a more reasonable scope producing within that scope. Worse yet, in response to some requests, it stated that it would withhold the production of responsive documents, if any, until these objections are properly resolved. Its responses to Defendants' letters attempting to meet and confer and resolve objections were opaque and not in the spirit of the rules. As a result, Sound Around created unnecessary motion practice and made discovery much more contentious than it had to be.

Nevertheless, Sound Around ultimately produced around 120,000 documents in this case, though very few of these documents relate to the computation of defendant's commissions, reimbursement of their expenses, or back up for charge-backs and customer rebates charged to Friedman's and Ilowitz's personal credit cards – core issues in this case. In an effort to understand what Sound Around actually has produced, the Court requested a document production index. That index suggests that Sound Around searched for and produced emails and documents relating to most of the document requests at issue, except Requests 31, 46, and 52. Sound Around has represented through its counsel and an affidavit from an employee of Sound Around, Jerry Brach, and Sound Around's bookkeeper, Jack Tyberg, that it

14

has produced all documents it could find after a reasonable search relating to the payment and calculation of Friedman's and Ilowitz's commissions and expense reimbursement.

Unfortunately, it appears that Sound Around did not actually keep many records. Sound Around did not always (or ever) pay commissions directly to either individual but rather paid Friedman's commissions to MDF Marketing, Inc., an entity owned by Friedman, and paid Ilowitz's commissions to an entity named Executive Laundry in which Ilowitz had no ownership interest. No monthly commission statements were provided with such payments. There appear to be no formal written commission agreements. The system containing data used to compute commissions -- the "Power BI system" -- apparently does not maintain historical data. Friedman and Ilowitz had access to the system when they were affiliated with and/or independent contractors for Sound Around and had informal meetings with Brach in which they would review data in the system and discuss and agree upon the amount of commissions to be paid and for what period. Although the system allowed for printing and emailing of reports, the parties did not usually download, print or email such reports.[1] There also do not appear to be monthly sales reports pertaining to products sold by Sound Around for which it paid commissions to Friedman and Ilowitz or monthly reports of charge backs and rebates paid to customers on sales of such products.

With regard to documents pertaining to expense reimbursements made to Friedman and Ilowitz, Sound Around's bookkeeper stated that he did not request any receipts or detailed

---

[1] The Friedman/Ilowitz Defendants suggest—not in their moving brief, but in their opposition to Sound Around's motion to compel—that Sound Around should have produced back up tapes from the Power BI System. However, this gripe is too conclusory and late to be resolved now. If Defendants wanted to pursue data from back up servers, they should have done that months ago.

accounting of expense reimbursement requests and instead simply paid requests for any amounts stated in a cursory email.[2]  And Sound Around apparently also does not have copies with most of the retailers with whom it does business, but did produce copies of agreements it had.  It is hard for the Court to understand how a business that apparently did more than $120 million in business would not maintain the above-described records and operated so informally, but Friedman and Ilowitz present no basis for the Court to question sworn declarations from Sound Around employees or representations by its counsel apart from the following.

Friedman and Ilowitz point to the deposition testimony of Jerry Brach regarding certain documents such as "home grown cost" spreadsheets and pricing support documents in its "back office," and complain those documents were not produced.  However, Sound Around has clarified in its opposition to the motion that it has searched for these documents and produced what it could find and that more responsive documents do not exist.  Nevertheless, it is unclear what documents Sound Around is still withholding pursuant to its objections.  Accordingly, it is appropriate for Sound Around to clarify these withheld documents to the Friedman/Ilowitz Defendants.  Besides this, the Friedman/Ilowitz Defendants fail to specify the particular documents they believe exist that should have been produced or provide evidence that Sound Around failed to conduct a reasonable search, or explain precisely what is deficient.

In light of the above, the Court finds that the Friedman/Ilowitz Defendants have failed to show a basis for granting their motion, with the exception of requiring the Plaintiff to clarify

---

[2] In a cursory manner, Sound Around suggests it has evidence that some of its funds went to pay for Chany Friedman's credit card expenses.  The Friedman/Ilowitz Defendants have represented that they produced copies of Chany Friedman's credit card statements.  Neither party specifies any additional documents that are outstanding that related to potential use of Sound Around funds to pay personal expenses of Chany Friedman.  Thus, there is no basis for compelling either side to produce additional information regarding this topic.

what documents it is withholding pursuant to its objections to Defendants' discovery request.

Accordingly, their motion to compel is DENIED, except to the limited extent set forth above.

### 2. Motion to Compel Friedman/Ilowitz Defendants to Produce Documents and Supplement Interrogatory Responses

Sound Around contends that the Friedman/Ilowitz Defendants have improperly refused to

produce:  (1) information relating to their purchase of competing products from manufacturers

and sale of those competing products to online retailers; (2) information about the flow of

monies to, from and within their businesses; (3) information related to kickback they allegedly

solicited and collected; (4) information relating to the alleged theft of Sound Around's funds;

and (5) communications with Sound Around employees and contractors post-dating February

2024.  It also contends that the Friedman/Ilowitz Defendants' responses to certain

interrogatories are deficient.

#### A.  Document Requests

Sound Around's original requests for documents were wildly overbroad.  This Court then

granted Defendants' motion for a protective order to cabin what they had to produce.  Sound

Around unsuccessfully objected to that ruling.  Its latest motion is another attempt to get

around that ruling insofar as it seeks information about "all products" sold by Defendants since

2021 on the ground they represent products that could have been sold by Sound Around.  For

each of these products (approximately 700), it wants a sample listing, the terms of the

agreement with the manufacturer who provided each product, the price paid, and

correspondence with manufacturers related to the purchase of all these products.[3]  (*See* ECF No. 245-4.)  However, Sound Around does not provide any details about any specific corporate opportunities that were usurped and appears to base its request, does not specify any particular manufacturers in connection with this request.  Apart from its contention that Friedman and Ilowitz were employees during this period – a claim the Honorable Denise Cote already has held is unlikely to succeed on the merits (ECF No. 232, at 8)—Sound Around has never homed in on any particular products, manufacturers or opportunities.  The Friedman/Ilowitz Defendants have produced information regarding 118 products they have sold that are arguably competing with Sound Around.  That production is consistent with this Court's prior discovery ruling.  Although it is true that Sound Around has asserted usurpation of corporate opportunity, it has asserted this in the most general way.  Accordingly, it has failed to demonstrate a basis for compelling production of documents in response to these supposedly narrowed requests.

Next, Sound Around seeks to compel documents showing the terms, contracts, agreements, and other details relating to Defendants' relationship with each online retailer from 2021 to the present; documents showing all products sold by Defendants through their business from 2021 to the present and the amounts collected by Defendants' business for each of those sales; documents showing each payment from online retailers; communications between Defendants and the retailers from Nov. 1, 2021 through June 1, 2023; and documents showing the

---

[3] Sound Around's motion seeks documents requested in its "narrowed" requests set forth in a July 31, 2025 letter to the Friedman/Ilowitz Defendants.  (ECF No. 245 & Exh. D)

advertising expenses paid to Amazon for Defendants' business from May 1, 2022 through March 1, 2024.

In a declaration from their attorney, the Friedman/Ilowitz Defendants explain they have produced approximately 67,000 documents, including reports identifying 118 products they sold through Amazon, a description of the items, and the sales quantities and revenue for the period 2023 to 2025, and communications with manufacturers that contain invoices with terms of purchase of these products and communications with retailers that contain purchase orders with the terms of the sale of the products, and emails regarding advertising and marketing expenditures related to these products.  The documents produced provide sufficient information for Sound Around to compute the sales revenue received through sale of potentially competing products for purposes of its damages calculations related to its unfair competition.  Sound Around have failed to demonstrate a basis for compelling the production of additional information on other unspecified products that allegedly were "competing" or Sound Around's "corporate opportunities."  Although Sound Around has the ability to look at Amazon at the brands defendants sell and the companies through which they might sell products on Amazon or other online retailers,[4] and although its has correspondence showing the defendant's opening accounts with Amazon, eBay, Target Walmart, and Wayfair and

---

[4] Online retailers generally allow consumers to look up the seller and visit the seller's store or see other products sold by the seller.  Indeed, the pictures of products allegedly being improperly sold by the Friedman/Ilowitz parties included in Sound Around's Complaint appear to have been obtained by visiting their entities' stores. (*See* ECF No. 1 ¶¶ 148, 181-82.)  This case is Sound Around's to prosecute.  It is beyond reasonable dispute that Sound Around has had wide-ranging discovery regarding the Defendants' entities and products which they could use to conduct further particularized investigations into their stores.  If, at this point, they have not found the information they seek—or, moreover, if they cannot draw the Court's attention to any additional information giving rise to further necessary discovery—that strongly hints at the answer to whether the information it seeks existed in the first place.

communications with vendors, manufacturers and retailers, Sound Around has never identified specific additional products or brands that compete or provided a non-conclusory basis for the court to find that the information about the 118 products identified by the Friedman/Ilowitz Defendants is not the proper scope of products subject to discovery.

Next, Sound Around seeks to compel information relating to alleged kickbacks. This information includes (i) payments from any manufacturer to Defendants or any third party at their direction from 2019 through 2024); (ii) communications regarding such payments, and (iii) bank statements for any account where Defendants ever received such payments. To start, the Friedman/Ilowitz Defendants deny demanding or receiving kickbacks and, as a result, their attorney has represented that no documents exist that would show kickbacks. Nevertheless, this Court previously ordered the Friedman/Ilowitz Defendants to produce unredacted bank statements and allowed Sound Around to subpoena banks where defendants had accounts so that Sound Around could generally see where money flowed between and among the defendant persons and entities and to see money flowing to and from manufacturers and retailers. Even so, Sound Around states that it has not received bank statements for LRI Group, LLC, CYRF, Inc., and World Group Import, LLC. The document production index provided by the Friedman/Ilowitz Defendants, however, provides bates numbers for bank statements for the corporate entities for the dates they existed in the period January 2021 through July 2025. Furthermore, Sound Around subpoenaed the banks. Therefore, it is unclear what additional information is missing related to the "flow of money." Sound Around does not identify payments from any particular manufacturer for which it requires additional information.

One potential issue identified is the absence of WeChat communications with manufacturers/vendors in China.  It appears that the Ilowitz/Friedman Defendants searched their WhatsApp communications, because they produced communications from WeChat about commissions and establishment of their allegedly competing business, but the document index does not show communications over any other topic.  And, their attorney has stated that no documents exist that would show kickbacks.  Thus, it appears there are not WeChat communications on this subject.  Sound Around does not provide sufficient factual basis to doubt that the Friedman/Ilowitz Defendants failed to conduct a reasonable search of communications.  Thus, there is nothing more to compel on this topic.

Sound Around also seeks more information about alleged use of its funds for payment of the defendants' personal expenses and the flow of money.  The Court surmises it wants this information because it never requested back up receipts from Friedman and Ilowitz for expense reimbursement.  However, the document index shows that defendants produced credit card statements, bank records, and tax returns.  Defendants fail to specify in their brief what precisely they feel is missing that they believe to still exist apart from identification of Congregation Kozover accounts.  The Friedman/Ilowitz Defendants have not clarified whether they have possession, custody or control over Congregation Kozover accounts.  The Court finds it is appropriate for defendants to provide this clarification and, if defendants do have such control, then it will require defendants to produce bank statements from such accounts.[5]

---

[5] Sound Around also may file a subpoena on Congregation Kozover.

Sound Around also seeks information about "new" brands including communications and documents related to registration and use of Emporio Kitchen, Dribble, Campior, Outdoor Cruiser, and Dave and Diane brands. The Friedman/Ilowitz Defendants do not provide a specific response regarding this category of documents and their document index does not reflect information about these brands being produced. At the same time, Sound Around does not state anything about these brands, such as whether they are competing improperly with Sound Around and why and do not state why information about these brands is proportional to the needs of the case. Thus, they fail to meet their burden to compel additional documents on this subject.

Finally, Sound Around seeks communications between and among the Friedman/Ilowitz Defendants and current and former employees and contractors of Sound Around. They state they are "aware that Defendants have reached out to at least two employees and/or contractors" but do not identify who those two people are or how the communication took place (i.e., over text, email, phone). The Friedman/Ilowitz Defendants have represented that no documents exist responsive to this request, which the Court accepts based on a lack of evidence to the contrary. Accordingly, there is nothing more to compel.

**B. Interrogatory Responses**

Sound Around next complains that the Friedman/Ilowitz Defendants have failed to properly respond to ten contention interrogatories. The interrogatories and responses are as follows:

> **Interrogatory No. 1:** Identify and provide a list that includes each financial institution (including, but not limited to, banks and credit card companies) Ilowitz, Friedman, the Corporate Defendants and/or each of their agents, entities, partnerships and/or

businesses (collectively, the "Friedman and Ilowitz Parties") have used or banked with, directly or indirectly (e.g., through and/or with the assistance of other parties like Executive Laundry or any other "straw man"), from 2018 to the present.

**Response to Interrogatory No. 1:** Defendants object to Interrogatory No. 1 because it is overbroad and seeks information that is not relevant to this action, nor will it lead to the discovery of information that is relevant to this action. Defendants further object to Interrogatory No. 1 to the extent that it seeks information that it is duplicative of other discovery requests propounded by Plaintiff and multiple depositions of the Defendants, and therefore seeks information already in Plaintiff's possession, custody, and control. Notwithstanding the foregoing, Defendants respond to Interrogatory No. 2 as follows:

American Express

Bank of America, N.A.

Capital One, N.A.

Chase Bank, N.A.

TD Bank, N.A.

**Interrogatory No. 2:** Identify and provide a list that includes each account used or owned by the Friedman and Ilowitz Parties, directly or indirectly (e.g., through and/or with the assistance of other parties like Executive Laundry or any other "straw man"), at any financial institution, including those identified in response to Interrogatory 1 above.

**Response to Interrogatory No. 2:** Defendants object to Interrogatory No. 2 because it is overbroad and seeks information that is not relevant to this action, nor will it lead to the discovery of information that is relevant to this action. Defendants further object to Interrogatory No. 2 to the extent that it seeks information that it is duplicative of other discovery requests propounded by Plaintiff and multiple depositions of the Defendants, and therefore seeks information already in Plaintiff's possession, custody, and control. Notwithstanding the foregoing, Defendants respond to Interrogatory No. 2 as follows:

American Express Account No. ending in 8-91009

Bank of America Account No. 483085545301

Capital One, N.A. Account No. 5589589305301574

Chase Bank Account No. 5589588737495509

TD Bank, N.A. Account No. 4345281424

**Interrogatory No. 3:** Identify and provide a list that includes each product purchased for resale from 2018 to the present by the Friedman and Ilowitz Parties that has been sold online by a party (e.g., person, entity, corporation, company, partnership and the like) other than Sound Around and the total sales generated by the Friedman and Ilowitz Parties per year for each said product.

**Response to Interrogatory No. 3:** Defendants object to Interrogatory No. 3 because it is overbroad and seeks information that is not relevant to this action, nor will it lead to the discovery of information that is relevant to this action. Defendants further object to Interrogatory No. 3 to the extent that it seeks information outside the scope of the discovery, as ordered by Magistrate Judge Katharine H. Parker. Notwithstanding the foregoing, the Defendants respond to Interrogatory No. 3 as follows:

See the document annexed hereto as Exhibit A, which bears Bates-Numbers FD66267 –FD66270.[6]

**Interrogatory No. 4:** Identify and provide a list that includes each brand used by the Friedman and Ilowitz Parties, directly or indirectly (e.g., through a third party or straw man), from 2018 to the present to sell products online and the total revenues generated per year per brand.

**Response to Interrogatory No. 4:** Defendants object to Interrogatory No. 4 because it is overbroad and seeks information that is not relevant to this action, nor will it lead to the discovery of information that is relevant to this action. Defendants further object to Interrogatory No. 4 to the extent that it seeks information outside the scope of the discovery, as ordered by Magistrate Judge Katharine H. Parker. Notwithstanding the

---

[6] The referenced documents are sales reports for 118 potentially competing products for 2023-2025.  Other sales reports going back to October 2022 were provided as well.  It appears that the earliest retail account opened by the defendants was in 2022.  (*See* ECF No. 252.)

foregoing, the Defendants respond to Interrogatory No. 4[ ]as follows:

Bakken-Swiss
BakkenMaster
LifeMaster

**Interrogatory No. 5**: Identify and provide a list of each party (including entities, individuals, partnerships and the like) that has paid a kickback, commission or fee on any product purchased by Sound Around at Friedman's or Ilowitz's request or as a result of Friedman's or Ilowitz's work or efforts as a Buyer for Sound Around, an identify to whom each such party has paid the kickbacks, commissions or fees.

**Response to Interrogatory No. 5:** Defendants object to Interrogatory No. 5 because it is overbroad and seeks information that is not relevant to this action, nor will it lead to the discovery of information that is relevant to this action. Defendants further object to Interrogatory No. 5 to the extent that it uses the term "kickbacks," which the Defendants have never received, and is unnecessarily pejorative. Defendants further object to Interrogatory No. 5 to the extent that it is duplicative of other discovery requests propounded by Plaintiff and seeks information already in Plaintiff's possession, custody, and control. Notwithstanding the foregoing, the Defendants respond to Interrogatory No. 5 by respectfully referring Plaintiff to the bank statements already received by Plaintiff in response to its third-party subpoenas which contain details regarding the commissions received by Friedman and Ilowitz.

**Interrogatory No. 6:** Identify and provide a list of all manufacturers in China that have sold products to any of the Friedman and Ilowitz Parties from 2018 to the present. Response to Interrogatory No. 6: Defendants object to Interrogatory No. 6 because it is overbroad and seeks information that is not relevant to this action, nor will it lead to the discovery of information that is relevant to this action. Defendants further object to Interrogatory No. 6 to the extent that it seeks information outside the scope of the discovery, as ordered by Magistrate Judge Katharine H. Parker. Notwithstanding the foregoing, the Defendants respond to Interrogatory No. 6 as follows:

Dongguan Hongfeng (Hong Kong)

Hainan Cooktone Household Co., Ltd.
Jiangsu Yoau Intelligent Technology Co., Ltd.
Ningbo Healthmate Health Technology Co., Ltd.
Yongkang Fulaitai Industry & Trade Co., Ltd.
Zhejiang Wuyi Hongchang Industry & Trade Co., Ltd.

**Interrogatory No. 7:** Identify and provide a list of each third party (e.g., photographers, freelancers, employees, accountants and independent contractors) that has, from 2018 to the present, worked for or provided services or assistance to any Business or Business Operation operated or owned, directly or indirectly, by any of the Friedman and Ilowitz Parties.

**Response to Interrogatory No. 7:** Defendants object to Interrogatory No. 7 because it is overbroad and seeks information that is not relevant to this action, nor will it lead to the discovery of information that is relevant to this action. Notwithstanding the foregoing, the Defendants respond to Interrogatory No. 7 as follows:

Leibish Leser, CPA
Abraham Schwartz, CPA
Jaize Cowel, independent contractor in the Philippines
Robert Bumatay, independent contractor in the Philippines
Monica Smith, independent contractor in the Philippines
Nathan Drake, independent contractor in the Philippines
Christian Corado, employee in New Jersey warehouse
Jairo Deras, employee in New Jersey warehouse
Aida Lopez, employee in New Jersey warehouse
Maria Mejia, employee in New Jersey warehouse
Brian Rapalo, employee in New Jersey warehouse

**Interrogatory No. 8:** Identify and provide a list that includes every business trip Friedman or Ilowitz took from 2018 to the present, including trips to China and trade shows and conferences.

**Response to Interrogatory No. 8:** Defendants object to Plaintiff's characterization of Interrogatory No. 8 because no trips to China were taken by Friedman or Ilowitz for the purpose of conversion or embezzlement. The Defendants do not have records regarding the exact dates of business trips they took during the relevant period and are providing the following response based on their memories, which may not be precise. In addition to the following approximated dates for trips to China, Friedman traveled three

times to Germany but does not have the dates of those trips. Regarding trips to China, Friedman took business trips on the approximate dates: April 2018, October 2018, November 2018, May 2018, October 2019, January 2020, May 2023, and October 2023. Ilowitz took business trips to China on the approximate dates: July 2019, October 2019, and July 2023.

**Interrogatory No. 9**: Identify and list the address of each location used by the Friedman and Ilowitz Parties, directly or indirectly (e.g. through or with the assistance of a third party or "straw man"), to operate and/or support their Business Operations from 2018 to the present.

**Response to Interrogatory No. 9:** 66 Seven Springs Mountain Road, Monroe, New York; 1818 50th Street, Brooklyn, New York; 1468 51st Street, Brooklyn, New York; 61 Executive Avenue, Edison, New Jersey.

**Interrogatory No. 10:** Identify and list all software, applications, and programs used by the Friedman and Ilowitz Parties (at any point in time since 2018) in operating their business or businesses, including but not limited to, those software, applications, and programs for accounting, profit-tracking, payroll, project and task management, customer service, supply chain management, and internal and external communications.

**Response to Interrogatory No. 10:** Defendants object to Interrogatory No. 10 because it is overbroad and seeks information that is not relevant to this action, nor will it lead to the Identify and list all software, applications, and programs used by the Friedman and Ilowitz Parties (at any point in time since 2018) in operating their business or businesses, including but not limited to, those software, applications, and programs for accounting, profit-tracking, payroll, project and task management, customer service, supply chain management, and internal and external communications.

**Response to Interrogatory No. 10:** Defendants object to Interrogatory No. 10 because it is overbroad and seeks

information that is not relevant to this action, nor will it lead to
the . . . .[7]

(ECF No. 245-10.)

Sound Around complains that the defendants merely refer them to bank statements

generally in response to their interrogatory seeking a list of entities/people who paid

defendants kickbacks.  However, the defendants deny receiving kickback and presumably are

referencing the bank statements because they show money going to all of their accounts.  The

only question outstanding, potentially, is whether the alleged kickbacks were paid to

Congregation Kozover.  And, as noted above, the Court has held that defendants must provide

more detailed information about whether they have any control over that entity and if so must

produce its bank records.  Sound Around otherwise does not provide any specific facts to

suggest that there are more documents or a different response required.  To the extent it says it

should not be required to parse through "hundreds of pages of bank statements," it is incorrect.

Rule 33 permits reference to documents when responding to interrogatories.

Sound Around contends that it is entitled to a list of all 700 products sold by defendants.

The Court disagrees for the same reasons it has refused to compel production of documents

about all of the products sold by defendants.

Sound Around complains that Defendants failed to list all 12 brands they used to sell

products and only listed the three that sold competing products in response to interrogatory 4.

They characterize the response as a "lie."  Insofar as Sound Around admits that it has obtained

information about 12 brands in deposition testimony and provides no additional information

---

[7] The Exhibit provided to the Court ends with an incomplete Response to Interrogatory No. 10. (*See* ECF No. 245-10, at 6.)

that it is missing through discovery, the court finds that there is no basis to require defendants to supplement their response to this interrogatory. Furthermore, Sound Around provides no facts to suggest that the 9 additional brands sold products that competed with products sold by Sound Around – so the relevance of these brands is entirely unclear.

Sound Around states that in response to interrogatory six, defendants listed only six companies and that emails produced indicate that there were other manufacturers. Similarly, they complain that in response to interrogatory 7, defendants failed to list additional third parties mentioned in their depositions with whom they did business. It appears that Sound Around actually has the information it seeks through discovery and it fails to identify the additional manufacturers and third parties it is speaking of. As a technical matter, if in fact defendants discovered additional entities and persons to list, they should supplement their interrogatory responses in accordance with the Rules.

Finally, Sound Around complains that defendants did not list all bank accounts for ML Imports, the principle entity through which defendants operated their allegedly competing business. It states that bank statements obtained in discovery show there are additional accounts, including Congregation Kozover accounts. It does not, however, identify the other accounts that are missing. As stated above, the Court directs the Friedman/Ilowitz Defendants to state whether they have possession, custody or control over Congregation Kozover (and its bank accounts) and, if it does, it must produce the bank accounts. Apart from this, Sound Around fails to provide sufficient clarity as to what is missing.

### 3. *Attorneys' Fees and Costs*

Although the Court finds that the Friedman/Ilowitz Defendants must supplement their responses related their control over Congregation Kozover and, if they have control, produce bank account information from Congregation Kozover, and supplement their interrogatory responses, it has otherwise denied Sound Around's motion—which, in the Court's view, was largely not well founded.  Similarly, although the Court finds that the Plaintiff must supplement its responses to Defendants' document requests, as stated above, Defendants' motion was largely unsuccessful. In light of the Court's rulings on the respective motions and the fact that both sides spent time lodging and responding to largely unsuccessful motions, the Court finds that an award of attorneys' fees and costs is not warranted for either side.  See Fed. R. Civ. P. 37(a)(5)(A)(iii) & (B).

CONCLUSION

For the reasons set forth above, Sound Around's motion to compel is denied except to the limited extent set forth above and the Friedman/Ilowitz Defendants' motion to compel is denied.

**SO ORDERED.**

Date:   September 8, 2025
        New York, NY

Katharine H. Parker
U.S. Magistrate Judge