USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/20/2026

T 305.374.8500 | F 305.789.7799

Having considered the letter, the Court finds a pre-motion conference is not needed. A motion for Rule 37 sanctions shall be filed by **January 30, 2026**. Opposition due **February 13, 2026**. Reply due **February 20, 2026**. Extensions of this schedule are unlikely to be granted.

SO ORDERED:

*Katharine H. Parker*   1/20/2026
HON. KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE

January 15, 2026

**VIA ECF**
Hon. Katharine H. Parker
United States District Court, S.D.N.Y.
500 Pearl Street, Courtroom 17D
New York, NY 10007-1312

Re: *Sound Around, Inc. v. Friedman et al.,* Case No. 1:24-cv-01986-DLC-KHP

Dear Judge Parker,

Sound Around, Inc. ("Plaintiff") submits this letter-motion pursuant to Local Rule 37.2 and Rule II.C. of Your Honor's Individual Practices in Civil Cases to request a pre-motion discovery conference relating to outstanding discovery—namely, WeChat conversations—from Defendants.

**Background**

Defendants still have not completed production of the WeChat communications between the Individual Defendants and the manufacturers in China notwithstanding that Your Honor has ordered them to do so on multiple occasions. In particular,

- On July 10, 2024, Plaintiff's served Requests for Production of documents that included a request for communications with vendors and manufacturers (including in China) relating to the products, payments/donations received from manufacturers, and requests for donations/payments from manufacturers.

- The Individual Defendants confirmed that they used WeChat as the main form of communication with manufacturers in China. *See*, *e.g.*, Affirmation of Lazer Ilowitz, ECF No. 61 ¶ 16 ("Due to the nature of their business and their location many time zones away, instant messaging via WeChat is the most efficient method to get in contact with factories in China and is far more reliable than email.").

- By April 2025, it was clear Your Honor had ordered those communications be produced by Defendants, and Defendants confirmed they were searching for them over nine months ago. *See, e.g.*, Apr. 28, 2025 Hr'g Tr. at 5:2-3 ("THE COURT: So you still don't have any WeChat . . . THE COURT: Okay. And from defendants' standpoint, have you started to collect the messages, the WeChat messages and so forth? MR. FORTUNA: Oh, yes, for a while now.").

- As of August 20, 2025, Defendants had "retained a technology expert to access, review, and produce" the "communications with manufacturers that were conducted via WeChat" and "w[ere] in the process of reviewing and producing . . . communications with manufacturers that were conducted via WeChat." ECF No. 246 at 3 n.2.

- When the communications were still not produced in October, Plaintiff raised the issue, and in a hearing on October 31, Your Honor explained that "from early on in this case, I asked the Friedman defendants to get a proper ESI vendor and to produce WeChat communications." ECF No. 302 at 22-23. Defendants' counsel explained that they "ran into some complications" and the Court provided a deadline of October 29 for the production. *Id.*; ECF No. 298 ("Defendants shall produce those communications by October 29, 2025. No extensions.").

- Defendants made a production of 8 WeChat conversations with Chinese manufacturers.

- After reviewing the production, Plaintiff's counsel notified Defendants' counsel that a review of the conversations made clear they had been edited and/or portions of the conversations excluded. **Exhibit A**. For example, there are references to messages that do not appear within the chain, messages that appear to be empty, and clear indications that there were prior or concurrent conversations with the manufacturers regarding orders and products that were apparently excluded. *Id.* Counsel also noted that conversations with additional manufacturers appeared to have been excluded (despite emails referencing WeChat exchanges with manufacturers beyond the 8 for whom conversations were produced). *Id.* Plaintiff's counsel requested a meet-and-confer the following week to discuss the deficiencies. *Id.* Defendants' counsel responded that he would review the production and provide dates for a conference.

- A week later, on November 17, Defendants' counsel advised that their "tech guy" was "reviewing WeChat to see if we missed anything." **Exhibit B**.

- On December 8, 2025, after Defendants' counsel failed to provide any update, Plaintiff's counsel again requested a status update regarding the additional WeChat production and a date for a meet-and-confer. *Id.* In response, Defendants' counsel instead asked for documents requested in their October 3, 2025 Request for Production and stated, "When I get the reports and spreadsheet, I'll respond to your inquiries below." *Id.* Plaintiff—having already timely responded—produced the requested documents on December 14, 2025. Defendants, however, provided no further response regarding the outstanding WeChat production.

- On December 22, 2025, Plaintiff's counsel again requested an update on the "pending WeChat production and time for a meet-and-confer." Defendants' counsel did not respond. **Exhibit C**.

- On January 7, 2025, Plaintiffs' counsel followed up again with Defendants' counsel requesting the "outstanding WeChat production." *Id.* Defendants' counsel responded that he would "get back to you guys later today." *Id.*

- The following day, having received no further response on the WeChats, Plaintiff's counsel again requested the "WeChats asap." **Exhibit D**. Defendants' counsel has not responded to that email or produced the requested information.

### Materiality

The minimal WeChat conversations produced to date are highly revealing, showing that Friedman and Ilowitz demanded personal "commissions" of 3–10% of the product cost from Sound Around's manufacturers in exchange for placing orders for Sound Around products. *See,*

2

*e.g.*, ECF No 326-17 at 1-2:



They also reveal that when Ilowitz and Friedman were negotiating with the manufacturers as Sound Around's agents, they were advocating for an increase in the prices to be paid by Sound Around to allow for maximum "commissions" for themselves and refused to approve lower prices or discounts for Sound Around unless they were guaranteed the discount would not affect their "commission" as the examples below illustrate:



**ECF No. 326-14** at 6-8;



**ECF No. 326-11** at 2. At times, Friedman even instructed the manufacturers on how best to reject requested discounts from Sound Around in order to preserve their commissions:



**ECF No. 326-17** at 5.[1]

     All of these conversations are highly relevant to, among other things, Plaintiff's claims for breach of fiduciary duty and duty of loyalty and the faithless servant doctrine under New York law. Based on the foregoing, Plaintiff requests a pre-motion discovery conference regarding the outstanding WeChat discovery.

     Thank you for your consideration of the matter.

---

[1] A more detailed discussion regarding the contents of the WeChat conversations is contained in Plaintiff's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment at paragraphs 49-56, 184-198, and 203-218.

3

Respectfully submitted,

HOLLAND & KNIGHT LLP
By: */s/ Rebecca J. Canamero*
Jesus E. Cuza (*Admitted PHV*)
Florida Bar No. 428991
Email: jesus.cuza@hklaw.com
Rebecca Canamero (Admitted PHV)
Florida Bar No. 86424
Email: rebecca.canamero@hklaw.com
Annelise Del Rivero
Florida Bar No. 1003234 (*Admitted PHV*)
Email: annelise.delrivero@hklaw.com
Gabriel Godoy-Dalmau
New York Bar No. 5668447
Email: gabriel.godoy-dalmau@hklaw.com

701 Brickell Avenue, Suite 3300
Miami, Florida 33131

and

Marisa Marinelli
31 West 52nd Street
New York, NY 10019
(212) 513-3200
Marisa.Marinelli@hklaw.com

*Attorneys for Plaintiff Sound Around, Inc.*