

ATTORNEYS AT LAW

NEW YORK
400 MADISON AVE., 10TH FL
NEW YORK, NEW YORK, 10017
TELEPHONE:(212)213-8844
FACSIMILE: (212)213-3318

NEW JERSEY
51 JFK Parkway
Short Hills, New Jersey 07078
Telephone (973) 379-0038
Facsimile (973) 379-0048

WWW.ALLYNFORTUNA.COM

January 22, 2026

**VIA ECF**

Hon. Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
Courtroom 17D
New York, New York 10007-1312

      Re:    *Sound Around, Inc. v. Friedman et al.*, Case No. 1:24-cv-01986-JHR-KHP

Dear Judge Parker:

      This firm represents Defendants Moises Friedman, Shulim Eliezer Friedman, ML Imports, Inc., CYRF, Inc., LRI Group, LLC, MDF Marketing, Inc., and World Group Import, LLC (collectively, "Defendants"). I write to request permission to file a motion pursuant to F.R.C.P. Rule 37 to Strike Plaintiff Sound Around Inc. ("Plaintiff")'s Rebuttal Expert Report of Quentin L. Mimms, dated December 23, 2025 (the "Rebuttal Report"), a copy of which is annexed here as Exhibit A for review.[1] The Rebuttal Report should be stricken in its entirety because, as will be detailed herein and in our anticipated motion, Mr. Mimms relied on several categories of highly relevant information which has been requested by Defendants throughout the action and which Plaintiff has refused to produce.

      Your Honor will recall that on December 3, 2024, Defendants served their First Document Demands on Plaintiff ("Defendants' First Request")[2], seeking, *inter alia*, detailed information regarding Plaintiff's calculation of Defendants' sales commissions and the business costs and expenses used in making those calculations. This information is relevant not only to Defendants' defense of Plaintiff's claims, but also to Defendants' counterclaims for unpaid commissions. In response, Plaintiff failed to produce any relevant documents or information. Throughout 2025, counsel for Defendants repeatedly follow up regarding Plaintiff's production of the requested information and met and conferred with Plaintiff, to no avail.

      Defendants moved to compel production of this and other information from Plaintiff on August 15, 2025. After an initial denial and a motion for reconsideration, Defendants' motion to

---

[1] Defendants' have highlighted the Exhibits and Tables containing the undisclosed information in the attached Rebuttal Report to ease the Court's review of this material.
[2] Defendants' First Request was filed at ECF Doc. No. 241-2 on August 15, 2025 in connection with Defendants' motion to compel.

compel was granted with respect to the information in Plaintiff's "data warehouse" pursuant to the Opinion and Order of this Court on October 8, 2025. (ECF Doc. No. 290.) In connection with that Opinion and Order, Your Honor found that Plaintiff failed to conduct a reasonable search for the relevant information and misled both counsel for Defendants and the Court regarding their search and sanctioned Plaintiff. (ECF Doc. No. 352.) Once the information from the data warehouse was obtained by the Defendants, we were able to piece together a portion of the picture of the financial situation at Plaintiff but were unable to compile a complete picture of Plaintiff's calculation of their commissions and Plaintiff's profits from the sale of their products.[3]

In reviewing the Rebuttal Report, Defendants have learned that Plaintiff *also* failed to disclose the existence of detailed financial statements and spreadsheets containing the exact expense, cost, and commission information sought by the Defendants since the inception of this action. Despite repeatedly claiming that such information did not exist and submitting sworn statements to that effect, Plaintiff in fact provided exactly that information to Mr. Mimms in the form of its 2018, 2019, 2020, 2021, 2022, 2023, and 2024 Combined Financial Statements.[4]

Using information unavailable to Defendants, Mr. Mimms then created Exhibit 2 of the Rebuttal Report, which purports to show Plaintiff's comprehensive profits and losses from January 1, 2018 through December 31, 2024, and which breaks out not only the cost of goods before and after the application of freight and shipping costs, but also details 13 distinct categories of selling expenses, 25 categories of general and administrative expenses, and another 5 categories of other income and expenses applicable to its business. Mr. Mimms also created Exhibits 1, 1.1, 1.2, and 1.3, which purport to show the calculation of Defendants' commissions from January 1, 2019 through December 31, 2023, and which apply detailed categories of selling, general, and administrative expenses. The information in the Exhibits was then used throughout the Rebuttal Report to support Mr. Mimms' calculation of Plaintiff's overall profit and loss on all products (Table 4, pg. 9), a comparison of sales for products sourced by the Defendants (Table 5, pg. 11), Plaintiff's profit and loss for products sourced by Friedman (Table 7, pg. 13), Plaintiff's profit and loss for products sourced by Ilowitz (Table 8, pg. 14), and Plaintiff's freight and duty for Defendants' sales (Tables 14, 15, and 16, pgs. 23-24).[5]

Defendants have been severely prejudiced Plaintiff's withholding of relevant information, in contravention of this Court's orders and the Federal Rules, and the incorporation of such information into the Rebuttal Report. Because Plaintiff withheld the very data and documents upon which its expert's rebuttal is based, Defendants' own expert was deprived of the opportunity

---

[3] The tax information produced by Plaintiff's accountants was not helpful in this regard because they do not contain accurate information regarding Plaintiff's financial affairs. Soon after receipt of Plaintiff's returns, Defendants noticed that Plaintiff had massively underreported its income to the federal government to the tune of $222 million, in some years reporting less gross sales income than was generated from sales of Defendants' products alone.

[4] The 2018-2024 Combined Financial Statements are cited in footnotes 19 and 20 of the Rebuttal Report on pages 9 and 10 respectively.

[5] In addition, Plaintiff provided Mr. Mimms with an undisclosed report regarding "FOB Price" and undisclosed Excel spreadsheet called "AgedOver365-Lazer-Moshef-Feb 2024.xlsx," which contains information regarding "aged inventory," which has been at issue throughout this litigation. The "FOB Price" report was used to create Exhibit 1, and the "aged inventory" spreadsheet was used to support the conclusions drawn by Mr. Mimms in paragraph 25 of the Rebuttal Report.

to review, analyze, and respond to this information when formulating his opinions. This not only undermines the integrity of the expert discovery process, but also deprives Defendants of a fair opportunity to rebut Plaintiff's expert's methodology and conclusions. Such prejudice is precisely what the disclosure rules are designed to prevent. The inability to test or challenge the foundation of Plaintiff's expert's opinions is not a minor technicality, but a fundamental unfairness that cannot be cured by a continuance or other lesser remedy. Allowing Plaintiff to rely on data that Defendants were denied would eviscerate this basic protection and encourage gamesmanship in discovery, precisely the outcome the rules are meant to prevent.

Therefore, Defendants respectfully request permission to file a motion striking the Rebuttal Report, together with such other relief as this Court deems appropriate. Thank you for your consideration.

Sincerely,

/s/Nicholas Fortuna

Nicholas Fortuna

cc:     All counsel (via ECF)