UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SOUND AROUND, INC.,

24-CV-1986 (DLC) (KHP)

Plaintiff,

OPINION AND ORDER ON
MOTION FOR SANCTIONS

-against-

MOISES FRIEDMAN et al.,

Defendants.
-----------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge:**

Plaintiff Sound Around, Inc. ("Sound Around"), seeks an order sanctioning Defendants

Moises Friedman and Shulim Eliezer Ilowitz[1] ("Ilowitz") (collectively, "Defendants") under

Federal Rule of Civil Procedure 37 ("Rule 37").  For the reasons that follow, the Court **grants** the

motion.

## BACKGROUND

This is an action alleging that Friedman and Ilowitz, through various entities they control,

misused proprietary information entrusted to them in connection with performing services for

Sound Around. (ECF No. 1.)  Plaintiff alleges that Friedman and Ilowitz were employees of

Plaintiff who conspired through use of their entities—which are also named defendants—to

misappropriate confidential and trade secret information, divert corporate opportunities for

their own benefit, use Plaintiff's trademarks and trade dress to market competing products, and

steal "hundreds of thousands (if not millions) of dollars from the company to build their

business, pay their personal debts and expenses, and compete directly with Sound Around."

---

[1] Plaintiff's Memorandum in Support refers to "Lazer Ilowitz." (ECF No. 390, at 2.)  Given the record and the
substance of the motion, the Court interprets this to be the same individual named in the Complaint, *i.e.*,
Shulim Eliezer Ilowitz.

1

(Compl. ¶ 2.)  Defendants' Answer (ECF No. 258-1) largely denies these allegations, asserts a number of affirmative defenses, and interposes counterclaims for (1) two counts of breach of contract, (2) tortious interference with contractual relations, (3) tortious interference with prospective economic advantage, (4) conversion, and (5) common law indemnification. Throughout this litigation, the parties have argued their relative positions turn in large part on whether the Defendants were employees of Plaintiff or independent contractors.  They also allege that Defendants took kickbacks from Sound Around's vendor/manufacturing partners in China.

On July 10, 2024, Sound Around served its First Request for Production on the Defendants, requesting large swaths of documents. (ECF No. 149-4.)  The Court subsequently trimmed those requests by protective order issued on April 25, 2025, but nevertheless ordered Defendants to respond to the requests in a manner consistent with its protective order within two weeks. (ECF No. 175.)  In particular, the Court limited the definition of "Competing Brands" to two known competitive brands and fifty potentially competitive products. *Id.* at *5-6. Because Defendants improperly had withheld documents altogether (even ones they did not object to producing) pending a ruling on the protective order, the Court's order also stated "it is completely improper for Defendants to say they have responsive documents but are withholding them until the Court decides their protective order," and that "Defendants are not at liberty to filibuster discovery by refusing to produce relevant and responsive documents which they have already identified and which do not pose any specific or unusual burden or annoyance." *Sound Around v. Friedman*, 24-cv-1986 (DLC) (KHP), 2025 WL 1212505, at *4 (S.D.N.Y. Apr. 25, 2025).

On April 28, 2025, the Court held a case management conference at which Sound Around asserted Defendants failed to produce their WeChat communications with vendors/manufacturers in China. (ECF No. 393-4, at 5:2-8.)  Defendants represented they had been collecting the messages "for a while." (*Id.* at 5:13-16.)

By August 20, 2025, Defendants still had not produced the WeChat communications, in violation of this Court's prior order, but represented they had "retained a technology expert to access, extract, review, and produce" the WeChat communications Defendants had with manufacturers and were "reviewing and producing" these communications. (ECF No. 246 ¶ 4 n.2.)

By October 12, 2025, Defendants still had not produced the WeChat messages.  Plaintiffs sought permission to move to compel production of the WeChat messages. (ECF No. 291.)  The Court held a conference on October 22, 2025 at which Defendants represented there were technical "complications" looking at the WeChat communications. (ECF No. 389-2.)  The Court accepted Defendants' representations that they had collected the messages and were in the process of working through those difficulties in order to produce the WeChat. (ECF No. 298.) The Court gave the Defendants one week to produce the relevant communications. (*Id.*)

Defendants produced only eight WeChat conversations in response to the Court's prior orders.  Understandably, Sound Around's counsel notified defense counsel by email that it believed the production was incomplete. (ECF No. 357-1.)  As part of the meet and confer process, defense counsel represented he would review to ensure that no communications were missed in the review. (*Id.*)  On November 18, 2025, defense counsel noted via email that Defendants' technology expert was still "reviewing WeChat to see if we missed anything." (ECF

No. 357-2, at 2.)  Still hearing nothing, Plaintiff's counsel followed up on December 8, 2025. (ECF No. 357-3.)  Instead of responding regarding the WeChat communications, Defense counsel refused to provide any further information until Sound Around produced certain information Defendants had requested in discovery and that was still outstanding.  (ECF No. 357-3.)  As of January 8, 2026, Defendants still had not confirmed that the WeChat production was complete. (ECF Nos. 357-3, 357-4.)

On January 15, 2026, Plaintiffs sought court intervention again, asking for permission to move for Rule 37 sanctions. (ECF No. 357.)  Defendants did not respond.  The Court set a briefing schedule for the instant sanctions motion. (ECF No. 368.)  On January 22, 2026, Defendants told Sound Around they believed their production of WeChat messages "complie[d] with Judge Parker's orders." (ECF No. 389-3.)  They also set forth additional technological details about how the messages are formatted. (*Id.*)  Defense counsel took the position that Plaintiff had expanded its request for WeChat communications and was now seeking to compel production of communications beyond what this Court had allowed in its ruling on Defendants motion for a protective order at ECF No. 175.  He represented he was able to meet and confer "at any[ ]time . . . regarding the WeChat issue." (*Id.*)

In a series of filings after this motion was submitted, the parties continued to dispute certain facts.  Namely, Defendants filed a letter purporting to respond to Sound Around's Reply in Support of this motion, although leave to file a sur-reply was not requested.  In the filing, Defendants appear to suggest that they were willing to make a supplemental production of WeChat messages and had communicated that to Plaintiff. (ECF No. 397.)  Sound Around responded to that letter, also without leave, acknowledging that Defendants had produced

more WeChat messages on March 19, 2026 and attaching screenshots of some of the recently produced WeChat messages. (ECF No. 398.)  The screenshotted messages, which Defendants have not disputed, show Defendants discussing commissions and price details with ostensible manufacturers.  One message from an individual identified as Yineng states, "Hi Lazer,[ ]finally the container is shipped,[ ]but [Sound Around principal] Ziggy [Brach] charge us lot lots discount,[ ]and we only can give 3% bonus on new items,[ please] see the below list."  Another from Yineng says, "Hi Lazer,[ ]as Ziggy is cut our [sic] some profit,[ ]we hope to ship earlier, so that the price is almost our profit and your bonus,[ ]that is the best [I] can fight for you." (ECF No. 398.)

Defendants responded by filing another letter accusing Plaintiff of failing to attempt to resolve the WeChat production issue without the need for court intervention and mischaracterizing Defendants' willingness to cooperate on discovery.  (ECF No. 399.)

### LEGAL STANDARDS

It is well established that "[a] federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." *Penthouse Intern., Ltd. V. Playboy Enterprises, Inc*., 663 F.2d 371, 386 (2d Cir. 1981); *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) (per curiam).

Rule 37(b) provides for motions for sanctions for violations of court orders regarding discovery.  Fed. R. Civ. P. 37(b).  Rule 37(c) provides for sanctions for failing to disclose information or to supplement an earlier response.  Fed. R. Civ. P. 37(c)-(d).  In general, if a party fails to obey an order to provide or permit discovery, the court may impose sanctions or issue

other orders appropriate to the situation.  Rule 37(b)(2) provides examples of such sanctions or orders, including: (1) directing that matters addressed in the order be taken as established by the prevailing party; (2) prohibiting the sanctioned party from supporting or opposing claims or defenses or from introducing evidence; (3) striking pleadings in whole or in part; (4) staying the proceedings until the order at issue is obeyed; (5) dismissing the action in whole or in part; (6) entering judgment against the disobedient party; and (7) treating the failure to obey the orders at issue as contempt of court (except where the orders direct the party to submit to a physical or mental examination). Fed. R. Civ. P. 37(b)(2)(A).  The same types of sanctions are available under Rule 37(c)-(d).  Fed. R. Civ. P. 37(c)(1).

In addition to ordering sanctions, under Rule 37(b) and (d), the court *must* order payment of reasonable expenses to the party who succeeds on the motion, unless the failure was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C); 37(b)(2)(d)(1)(3).  Likewise, the court *must* order sanctions where "the disclosure or requested discovery is provided after the motion was filed," except where the nondisclosure was substantially justified, the movant failed to act in good faith to obtain the disclosure prior to seeking court intervention, or other circumstances would make the award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A).

Discovery sanctions are designed to serve several purposes: (1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general. *See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979); *see also Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 147-49 (2d Cir.

2010) (noting district court did not err by imposing default judgment on defendants who willfully deleted and refused to produce relevant documents); *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 70-71 (2d Cir. 1988) (granting summary judgment to plaintiff was an appropriate sanction where defendant engaged in extreme dilatory tactics).

When determining whether sanctions should be imposed under Rule 37, courts in the Second Circuit weigh the following non-exhaustive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (cleaned up) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).  No single factor is dispositive and "'they need not each be resolved against the party challenging the district court's sanctions . . . to conclude that those sanctions were within the court's discretion.'" *See id.* at 159 (quoting *Southern New England Tel. Co.*, 624 F.3d at 144).

Additionally, the courts have inherent power to sanction abusive litigation practices. *Penthouse Intern., Ltd.*, 663 F.2d at 386.  However, a court generally should look to Rule 37 before invoking its inherent power, which is generally reserved to deter abuse of the judicial process and prevent perpetration of a fraud on the court and when there is clear and convincing evidence of misconduct. *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235-36 (2d Cir. 2020); *see also Abbot Lab. v. H&H Wholesale Serv., Inc.*, No. 23-446-cv(L), 2024 WL 4297472, at *3 (2d Cir. Sept. 26, 2024) (summary order) (affirming district court finding that lesser sanctions would be ineffective and the sanction was warranted).

The imposition of sanctions lies within the sound discretion of the court. *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994); *see also Doe v. Delta Airlines Inc.*, 672 F. App'x 48, 50 (2d Cir. 2016) (cleaned up) ("When faced with a breach of a discovery obligation that is the non-production of evidence, a District Court has broad discretion in fashioning an appropriate sanction.").  However, any sanction must be both "just" and "commensurate" in severity with the non-compliance. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) (cleaned up); *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD) (BCM), 2017 WL 3671036, at *21 (S.D.N.Y. July 18, 2017), *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017).  The Court is free to consider the full record in the case in order to select the appropriate sanction for discovery violations. *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010); *Syntel Sterling Best Shores Mauritius Limited v. TriZetto Group*, 328 F.R.D. 100 (S.D.N.Y. 2018).

## DISCUSSION

On this motion, Sound Around seeks an order requiring Defendants to produce *all* WeChat communications from January 2020 through February 2024 between Defendants and any manufacturer: (1) from whom Defendants demanded and/or received any commission payments relating to Sound Around orders; (2) from whom Defendants ordered products both for Plaintiff and for their competing business; (3) with whom Defendants communicated using Plaintiff's Sound Around email address, signature block, and/or brand names, but then diverted those communications to WeChat. (ECF No. 390, at 20-21.)  They also seek reasonable attorneys' fees and costs in connection with their motion. (*Id.*)

The briefing and the letters filed subsequent to the close of briefing show that Defendants failed to comply with this Court's prior orders by failing to produce all relevant WeChat communications within the time period set by this Court in violation of Rule 37(b). Since the beginning of this case in multiple case management conferences and in orders this Court has been unequivocal regarding production of WeChats.  Further, it showed Defendants leniency when they professed "technical issues" caused them to miss a court-ordered deadline to produce WeChat messages, and clearly set October 29, 2025 as the date for completion of production of relevant WeChat messages (and after Defendants represented that they would meet this deadline).[2]  (ECF Nos. 175, 298)  Defendants are incorrect insofar as they argue that they have not violated a court order.  They were ordered to produce relevant WeChat messages, dragged their feet, and then produced only a portion of the relevant and responsive messages.

The briefing also makes clear that Defendants failed to comply with Rule 37(c) and (d) insofar as they improperly withheld and failed to disclose relevant and requested WeChat communications and only produced them after Plaintiff was forced to file this motion.  Indeed, the Court questions whether defense counsel was forthright with this Court in stating there were "technical issues" in reviewing and producing the WeChat communications insofar as the exemplar WeChat messages produced on March 19, 2026 reference Ziggy Brach, Sound Around's principal, and reference discounts and a bonus to Defendants – topics well within what this Court found to be relevant in it prior discovery rulings and in multiple case

---

[2] The Court notes that during case management conferences in the fall the Court orally directed defense counsel to produce WeChat messages as well.  The Court also notes its oral directives to get an ESI vendor and produce WeChat communications. (ECF No. 389-2, at 22:24-23:4.)

9

management conference during which this Court managed the many disputes between the parties involving discovery and clearly within the document requested by Plaintiff.[3]  There is no reason given for failing to identify and locate the WeChat communications produced in March sooner.

Further, the emails between the attorneys plainly show that Defendants continued their policy of filibustering discovery by holding relevant and producible documents hostage pending Sound Around's productions responsive to the Defendants' own requests in violation of this Court's prior admonishments.  While Defendants suggest that their correspondence with Plaintiffs about discovery shows an effort to meet and confer in good faith, the Court does not agree.  Indeed, under the threat of a sanctions motion, defense counsel still was attempting to use its withholding of documents as leverage to obtain discovery that it believed Plaintiff should have already produced.  While the Court understands the frustration Defendants may have had trying to obtain information from Plaintiff, two wrongs do not make a right.  Any discovery misconduct by Plaintiff did not justify misconduct by Defendants.  Indeed, Defendants' conduct violates not only the Federal Rules, but this Court's standing Individual Rules of Practice requiring the parties to cooperate in good faith on discovery. *See, e.g.*, *Sound Around*, 2025 WL 1212505, at*4, *9 (noting the Court's Individual Practice Rules "require parties to meet and confer in good faith to resolve disputes without the need for court action"; noting the parties' "obligation" to do so).

---

[3] The Court will not on this motion attempt to contemplate the far worse possibility that Defendants misled the Court by artificially lowering the number of potentially competing products, as it has not been presented with evidence to that effect, but it notes that Defendants' belated disclosures raise serious concerns about that.

That Defendants produced some WeChat messages in a manner it thought complied with the Court's protective order does not change the outcome of this motion.  This Court previously ordered that "[t]o the extent the RFPs seek documents and communications with vendors, they shall be limited to the two brands and 50 products" identified and "limited to documents and communications sufficient to show specifications for and purchase orders of the potentially competing products from vendors; documents and communications sufficient to show invoicing and payment for such products; and documents and communications sufficient to identify the vendors and manufacturers used in connection with such products." *Sound Around*, 2025 WL 1212505, at *7.  But Plaintiff separately requested documents pertaining to purported kickbacks, asking for

> bank statements, accounting records, or online pay records . . .
> *and communications directing, transmitting or confirming*
> *payments (**whether or not for the specific 50 products**) made by*
> *the vendors/manufacturers of the 50 products referenced above*
> to Defendants, Congregation Kozover, or any entity in which
> Defendants have an interest, as well as communications reflecting
> requests by Defendants to such vendors/manufacturers (or their
> employees) to make payments to themselves or any person or
> entity.

*Id.*  WeChat communications responsive to this request were due in 2025.  Defendants have not denied that the messages produced in March 2026 are responsive to this request, as it is plain they are.  They also appear relevant to the calculation of Defendants' commissions and payments they received during the course of their work with Plaintiff  and damages – other categories of documents relevant and responsive to other document requests in this matter.

Likewise, it does not matter that Defendants "have disclosed the identity of the manufacturers from which it sourced the overlapping products and produced tens of thousands

of pages of email communications" regarding various types of relevant information. Defendants had a duty to comply with each and every document request served by Plaintiff in this matter (subject to objections and/or any protective order), including those requesting documents pertinent to payments/alleged kickbacks received by Defendants.

Contrary to what Defendants argue, this case does not involve Plaintiff's mere "dissatisfaction" with Defendants' discovery responses. *See Olaf Soot Design, LLC v. Daktronics, Inc.*, 325 F. Supp. 3d 456, 465 (S.D.N.Y. 2018) (noting the absence of a showing of willfulness rendered the productions merely "unsatisfactory" because defendant listed issues about which its corporate representative would testify, he ultimately did testify to those issues, and the plaintiff had not objected during that deposition).  Rather, Sound Around had a reasonable basis to suspect that Defendants were *willfully* withholding relevant documents given their initial production of only eight WeChat communications contrasted with the frequency with which Defendants interacted with Chinese manufacturers and the volume of products obtained from them and the March 2026 revelation that more WeChats existed than were initially produced.  Thus, this case is distinguishable from *Technology in Partnership Inc. v. Rudin*, 894 F. Supp. 2d 274, 287 (S.D.N.Y. 2012), in which the movant did not meet its burden because the court accepted the defendants' representations regarding their computing technology and that they had not possessed the server at that point and that they produced all records within their control.  Here, it is clear Defendants had *not* produced all records in their control, necessitating the motion.  Although prejudice need not be shown to find sanctions warranted, *see S. New England Tel. Co.*, 624 F.3d at 148-49, Plaintiff has also demonstrated prejudice because they did

12

not have the WeChat messages produced in March 2026 when deposing relevant witnesses or when preparing its summary judgment motion.

For all these reasons, the motion to compel and for sanctions is **granted.**  Defendants' conduct with regard to the WeChat messages is sufficiently egregious to warrant an order compelling Defendants to produce *all* WeChat communications from January 2020 through February 2024 between Defendants Friedman and Ilowitz and any manufacturer: (1) from whom Defendants demanded and/or received any commission payments relating to Sound Around orders; (2) from whom Defendants ordered products both for Plaintiff and for their competing business; and (3) with whom Defendants communicated using Plaintiff's email address, signature block, and/or brand names, but then moved those communications to WeChat (regardless of whether they did so with any ill intent).  To avoid further quibbling between the parties about this Court's order in relation to past discovery orders, this order shall govern the scope of additional WeChat messages, if any, to be produced.  Such WeChat messages shall be produced within two weeks of the date of this Order.  This Court will not accept any excuse for missing this deadline.  To the extent no further messages exist, the Court requires that counsel for Defendants submit a Declaration setting forth the name of the vendor used to extract the WeChat messages, the number of messages extracted and loaded onto the review platform, the number of WeChat messages produced, and the number of WeChat messages withheld and the dates of the messages withheld along with the general subject matter of the withheld messages and the parties to the messages.

Finally, Plaintiff is awarded its attorneys' fees and costs associated with filing this motion.  Within two weeks of today, Plaintiff shall submit its motion for an award of fees and

costs together with a declaration attaching contemporaneous time records and other receipts of costs associated with this motion and detailing the experience of the attorneys who worked on the motion, the rates charged and a reason why the rates are consistent with those generally awarded in this District.

## CONCLUSION

In light of the above, the motion is **granted** in full.  Within **two weeks** of this Opinion and Order, Defendants must produce the WeChat messages consistent with the above and shall file a letter with this Court certifying compliance with this order.  **The Clerk is respectfully directed to terminate the motion at ECF No. 388.**

Also within **two weeks**, Plaintiff shall file its request to be reimbursed for reasonable expenses, including reasonable attorneys' fees, which were caused by the failure to produce the relevant WeChat documents, which may include the costs of filing and litigating this motion (including and up to Defendants' second sur-reply at ECF No. 399).  Defendants shall have one week to respond.  No reply.

**SO ORDERED.**

Dated: April 7, 2026
New York, NY

Katharine H. Parker
United States Magistrate Judge

14