```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
SOUND AROUND, INC.,                      :
                                         :
                          Plaintiff,     :
                                         :       24cv1986 (DLC)
             -v-                         :
                                         :       OPINION AND
MOISES FRIEDMAN et al.,                  :          ORDER
                                         :
                          Defendants.    :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff Sound Around, Inc.:

Annelise Del Rivero
Gabriel Godoy-Dalmau
Jesus Enrique Cuza
Rebecca Canamero
Marisa A. Marinelli
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131

For defendants Moises Friedman; Shulim Eliezer Ilowitz; ML
Imports, Inc.; CYRF, Inc.; LRI Group, LLC; MDF Marketing, Inc.;
and World Group Import, LLC:

Nicholas Joseph Fortuna
Han Lin Rong
Megan Jeane Muoio
Allyn & Fortuna LLP
400 Madison Avenue, Suite 10d
New York, NY 10017

For defendants Executive Services and Executive Laundry, LLC:

Michael Joseph Byrne
Paul P. Novak
Byrne & O'Neill, LLP
26 Broadway, Third Floor
New York, NY 10004

DENISE COTE, District Judge:

This action arises from a dispute between plaintiff Sound Around, Inc. ("Sound Around"), an e-commerce importer, and two product buyers, defendants Moises Friedman and Shulim Eliezer Ilowitz, who located goods from foreign manufacturers for Sound Around. Sound Around alleges that while working for the company, Friedman and Ilowitz secretly received kickbacks from manufacturers, operated a competing business selling similar products, and infringed its trademarks. Discovery having concluded, the parties have filed three motions for summary judgment. For the following reasons, the motions are granted in part.

## Background

Sound Around has sued Friedman, Ilowitz, and companies with whom those two individuals are associated, claiming breaches of fiduciary duty and other unlawful acts. Sound Around is a family business which locates foreign manufactured products, imports them, and sells them as private-label brands through e-commerce platforms such as Amazon.

In August of 2012, Sound Around hired Friedman as a salaried warehouse manager. By 2018, Sound Around transitioned Friedman into a second role as a buyer with the opportunity to earn sales commissions. On June 6, 2018, Sound Around and

2

Friedman executed a contract, drafted by a local rabbi, formalizing his two roles at the company. The contract contained a non-compete provision.[1]

Friedman contends that their contractual arrangement ended in December of 2018. Thereafter, Friedman continued to work for Sound Around solely as a buyer paid on commission. From 2018 to 2023, Sound Around made out all of Friedman's commission checks -- totaling nearly $8 million -- to defendant MDF Marketing, Inc. ("MDF").

Sound Around has introduced evidence that, beginning in 2020, Friedman arranged for foreign manufacturers to pay him kickbacks in connection with their sales to Sound Around. By 2024, Friedman had received $2.7 million from six manufacturers in kickbacks paid through MDF. Sound Around has produced evidence that the kickbacks resulted in the manufacturers increasing the price of the goods they sold to Sound Around.

According to Ilowitz, he began working for Sound Around in early 2019. He also had two roles at the company at first -- a

---

[1] The contract also described Friedman's responsibilities as a buyer, which were "to hunt and search for all merchandise and goods" that could "turn a good profit," and then "take the first step with th[e] merchants, or with the manufacturers, to negotiate with them about the quality of the goods" and for "the best price." The parties dispute whether this describes Friedman's role as a buyer after December 2018.

salaried employee selling Sound Around's overstock inventory, and a buyer paid on commission.  Beginning in January 2022, Ilowitz worked with Sound Around solely as a buyer.  Between 2019 and 2023, Sound Around made out all Ilowitz's commission checks -- totaling approximately $3.37 million -- to defendants Executive Laundry, LLC and Executive Services (the "Executive Defendants").

Sound Around has offered evidence that beginning in 2020, Ilowitz also received kickbacks from foreign manufacturers on their contracts with Sound Around.  By the year 2024, those kickbacks amounted to over $1.2 million in payments to Ilowitz from forty-four manufacturers.[2]  Friedman and Ilowitz do not dispute that they received these payments but assert that they were "commissions" paid in exchange for services provided to the manufacturers.

Sound Around also asserts that in early 2022, Friedman and Ilowitz set up their own business -- defendant ML Imports, Inc. ("ML Imports") -- replicating Sound Around's business model. Through ML Imports, Friedman and Ilowitz created private-label brands such as Bakken-Swiss (for the sale of kitchen-related

---

[2] Ilowitz routed the kickback payments to an individual named Levi Rottenberg, defendant Executive Laundry, LLC, and the nonprofit religious entity Congregation Kozover.

products) and Lifemaster (for the sale of scooters and other products) and imported and sold goods online.  They purchased goods from many of the same manufacturers that sold products to Sound Around, and on occasion at cheaper prices than they negotiated for Sound Around.  Sound Around has identified at least one product -- the Scootkid 3-wheel scooter -- that the defendants' business competed against directly.

To run ML Imports, Friedman and Ilowitz solicited the help of contacts they obtained as buyers for Sound Around, including a customer service representative, graphic designer, and photographer.  Sound Around also introduced evidence that Ilowitz, using his Sound Around email address, used a contact at Amazon that he obtained through his work at Sound Around to acquire an Amazon Vendor Central License -- an exclusive, invite-only program that enables companies to sell their products wholesale to Amazon.  By September 2023, their business had generated $3.7 million in sales.

Sound Around discovered this competing business in early 2024.  Ilowitz resigned from Sound Around on January 30, 2024, and Sound Around terminated its association with Friedman on February 3, 2024.

Sound Around filed this action on March 15, 2024, asserting twenty-two claims against the defendants under New York and

federal law.  The defendants primarily consist of Friedman and Ilowitz (the "Individual Defendants"), and companies they control: ML Imports, CYRF, Inc. ("CYRF"), LRI Group, LLC ("LRI"), MDF, and World Group Import, LLC ("WGI") (together with the Individual Defendants, the "Friedman Defendants").[3]  The two other defendants -- Executive Services and Executive Laundry, LLC (the "Executive Defendants") -- are companies owned by a non-party individual, Levi Rottenberg, that Ilowitz used to deposit the commissions paid to him by Sound Around and the kickbacks received from foreign manufacturers.  All defendants besides Friedman and Ilowitz are referred to herein as the "Corporate Defendants."

Sound Around moved for a preliminary injunction on April 22, 2024.  The action was reassigned to this Court on April 11, 2025.  On April 16, Sound Around's initial motion for a preliminary injunction was denied without prejudice to renewal. Sound Around renewed its motion for a preliminary injunction on June 27, which was denied on July 22.

---

[3] CYRF owns the Seller Central account on Amazon that Friedman and Ilowitz use to sell their products directly to consumers. LRI owns one of Friedman and Ilowitz's Vendor Central Accounts on Amazon.  WGI owns many of the trademarks associated with Friedman and Ilowitz's brands, as well as another Vendor Central Account.

The Friedman Defendants answered the complaint on May 7, 2025, and asserted six counterclaims against Sound Around.[4]  On November 21, 2025, Sound Around moved for partial summary judgment on five of its claims and two of the counterclaims filed against it.  The Friedman and Executive Defendants each moved for summary judgment on all claims brought against them.  The three summary judgment motions became fully submitted on January 16, 2026.  On February 12, Sound Around voluntarily dismissed Counts II, III, IV, VII, XII, XIII, XX, and XXI of its complaint.

## Discussion

As noted, Sound Around, the Friedman Defendants, and the Executive Defendants have each moved for summary judgment.  Their motions are addressed in that order.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  Choi v. Tower

---

[4] On May 14, 2025, the Friedman Defendants filed a third-party complaint against Returnaround, LLC, the company with which Sound Around contracts to receive and resell its returned products.  The third-party action was voluntarily dismissed a month later.

Rsch. Cap., LLC , 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted). "[S]ummary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Indemn. Ins. Co. v. Unitrans Int'l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted). "The court's role with respect to such a motion is not to resolve disputed questions of fact but solely to determine whether, as to any material fact, there is a genuine issue to be tried." Moll v. Telesector Res. Grp., Inc., 94 F.4th 218, 227 (2d Cir. 2024) (citation omitted). "In determining whether genuine issues of fact exist, . . . the court must review the record taken as a whole" and draw "all reasonable inferences in favor of the nonmoving party." Id. at 227 (emphasis omitted) (citation omitted). "Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact." Bustamante v. KIND, LLC, 100 F.4th 419, 432 (2d Cir. 2024) (citation omitted).

I.    Sound Around's Motion for Partial Summary Judgment

The following addresses the claims and counterclaims on which Sound Around seeks summary judgment, as well as any cross-motions as to those claims.

A.    Breach of Fiduciary Duty and Duty of Loyalty Against the Individual Defendants (Counts VIII and X)

Sound Around and the Friedman Defendants cross-move for summary judgment on Counts VIII and X, which assert breaches of the duty of loyalty and of fiduciary duty, respectively.  Sound Around alleges that the Individual Defendants violated their duties in two ways: first, by collecting kickbacks on Sound Around's purchases, and second, by secretly operating a competing business.

1.    Kickbacks

Under New York law,[5] a claim for breach of fiduciary duty requires proof of "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."  Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 138 (2d Cir. 2011).  A fiduciary duty arises where one party acts as an agent of another -- that is, when a principal manifests consent to another, his agent, that the agent shall act on the principal's behalf and subject to his control, and the agent consents to do so.  See N.Y. Mar. & Gen. Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 122 (2d Cir. 2001); Restatement (Third)

---

[5] The parties agree that New York law applies to the state law claims in this action, which is sufficient to apply that law under New York choice-of-law rules.  See Ins. Co. of Pa. v. Equitas Ins. Ltd., 68 F.4th 774, 779 n.2 (2d Cir. 2023).

of Agency § 1.01.  An agent owes a duty of undivided loyalty to the principal and may not obtain undisclosed compensation in connection with transactions conducted on the principal's behalf.  See Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 203 (2d Cir. 2003); Western Elec. Co. v. Brenner, 41 N.Y.2d 291, 295 (1977).

The parties devote substantial attention in their briefs to whether the Individual Defendants were employees or independent contractors when they received kickbacks.  But that dispute is not dispositive.  Independent contractors may owe fiduciary obligations where they act as agents.  Pergament v. Roach, 838 N.Y.S.2d 591, 593 (2d Dep't 2007); see also Restatement (Third) of Agency § 1.01 cmt. c ("[S]ome termed independent contractors are agents while others are nonagent service providers."); id. cmt. g ("[N]onemployee agents who represent their principal in transactions with third parties act on the principal's account and behalf.").  Thus, the relevant inquiry is whether, and to what extent, the Individual Defendants acted on Sound Around's behalf in their dealings with foreign manufacturers.

On this record, there is no genuine dispute that the Individual Defendants acted on Sound Around's behalf in their dealings with foreign manufacturers in connection with Sound Around purchases.  Both defendants acknowledge that, in their

roles as buyers, they identified products, developed relationships with manufacturers, and communicated with those manufacturers in connection with products that Sound Around would purchase and resell.

Using their Sound Around email addresses, the Individual Defendants discussed pricing, commissions, and purchase orders with manufacturers in connection with Sound Around purchases. In those communications, they consistently used collective identifiers such as "our brand," "our product," "our attorney," "we," and "us," clearly aligning themselves with Sound Around. While the Individual Defendants dispute the extent of their authority to bind Sound Around or finalize transactions, they do not dispute that they served as Sound Around's intermediaries with the manufacturers whose goods Sound Around purchased. Moreover, although Friedman contends that the June 6, 2018 Agreement ceased to govern after December 2018, the Agreement is nonetheless probative of the parties' understanding of the buyer role. It provided that Friedman, as a buyer, would "hunt and search for all merchandise and goods" that could "turn a good profit," and then "take the first step" with manufacturers to negotiate quality and "the best price."

These facts establish, as a matter of law, that the Individual Defendants acted as Sound Around's agents in their

11

dealings with manufacturers.  That they may have lacked final authority to bind Sound Around or that Sound Around retained ultimate decision-making authority does not negate the existence of a fiduciary relationship.  See Pergament, 838 N.Y.S.2d at 593 (noting that a fiduciary "can give advice to an entity without having the authority to bind it"); Restatement (Third) of Agency § 1.01 cmt. c (acknowledging that agents can "lack authority to bind their principals to contracts" but nevertheless have "authority to negotiate . . . on their behalf").

Because Friedman and Ilowitz acted as Sound Around's agents in their dealings with manufacturers, they owed Sound Around a duty of loyalty in connection with those transactions.  That duty prohibited them from receiving undisclosed compensation from the manufacturers with whom they were negotiating on Sound Around's behalf.  See Phansalkar, 344 F.3d at 203; Western Elec., 41 N.Y.2d at 295.

Beginning in 2020, unbeknownst to Sound Around, both defendants arranged for manufacturers supplying goods to Sound Around to pay them a percentage of the purchase price on Sound Around's orders.  The Individual Defendants do not dispute that they received these kickbacks, and that Sound Around did not know about them.  Instead, they seek to recharacterize them as "commissions" paid in exchange for advice provided to the

12

manufacturers.  But that characterization does not create a triable issue of fact as to liability.  An agent may not receive undisclosed compensation from a counterparty in connection with a transaction conducted on the principal's behalf.  Phansalkar, 344 F.3d at 203; Western Elec., 41 N.Y.2d at 295; see also Lamdin v. Broadway Surface Adv. Corp., 272 N.Y. 133, 139 (1936) (requiring agent to "account to his principal for secret profits").

Construing the evidence in the Individual Defendants' favor, no reasonable jury could find that the receipt of undisclosed payments from counterparties in transactions conducted on Sound Around's behalf was consistent with their duty of loyalty.  See Phansalkar, 344 F.3d at 203; Western Elec., 41 N.Y.2d at 295.  Accordingly, Sound Around is entitled to summary judgment on its claims for breach of fiduciary duty and breach of the duty of loyalty to the extent those claims are based on the Individual Defendants' receipt of kickbacks on Sound Around purchases.

   2. Competing Business

Sound Around also argues that the Individual Defendants breached their fiduciary duties by operating a competing business while serving as buyers for Sound Around.

13

Under New York law, an agent "is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Phansalkar, 344 F.3d at 200 (citation omitted). Pursuant to this duty of loyalty, an agent may not compete with the principal as to the subject matter of the agency while the agency relationship continues. Mar. Fish Prods., Inc. v. World-Wide Fish Prods., Inc., 100 A.D.2d 81, 88 (1st Dep't 1984); see also Restatement (Third) of Agency § 1.01 cmt. e. Although an employee or agent may take preliminary steps to establish a competing business before departure, he may not, while still serving the principal, use that position to operate a rival business, divert business, or otherwise place himself in direct competition with the principal in the subject matter of the agency. See Island Sports Physical Therapy v. Burns, 923 N.Y.S.2d 156, 157 (2d Dep't 2011); Mar. Fish Prods. Inc., 100 A.D.2d at 88.

It is undisputed that, beginning in early 2022 and while Friedman and Ilowitz were working as buyers for Sound Around, they formed and operated ML Imports. Through that business, they created brands including Bakken-Swiss and Lifemaster, purchased products from foreign manufacturers, and sold those

14

products online.  By September 2023, ML Imports had generated approximately $3.7 million in sales.

The record also reflects substantial overlap between ML Imports' operations and the work the Individual Defendants were performing for Sound Around.  It is undisputed that the Individual Defendants purchased goods for ML Imports from many of the same manufacturers that supplied Sound Around.  Sound Around has also identified at least one product -- the Lifemaster 3-wheel scooter -- that directly competed with a Sound Around product, and that the Individual Defendants obtained at a lower price for ML Imports than they obtained for Sound Around.  In addition, the record indicates that the Individual Defendants used contacts developed through their work for Sound Around, including a customer-service representative, graphic designer, photographer, and Amazon liaison, in connection with ML Imports.

The Individual Defendants principally dispute the scope and nature of their relationship with Sound Around, arguing again that they were independent contractors and free to start their own venture.  They do not dispute, however, that Sound Around had no knowledge of ML Imports.  Thus, even construing the evidence in the light most favorable to the Individual Defendants, the undisputed record establishes that, while acting

as Sound Around's buyers, they operated, without Sound Around's knowledge, a separate business that sold overlapping products from overlapping manufacturers through overlapping channels.  On this record, no reasonable jury could conclude that, in doing so, the Individual Defendants acted in a manner consistent with their agency.  Sound Around is therefore entitled to summary judgment on Counts VIII and X to the extent those claims are based on the defendants' direct competition with Sound Around. Whether all brands, products, or sales associated with ML Imports were corporate opportunities that should have been presented to Sound Around will be addressed below in connection with Count XIV.

    3.   Remedy

Under New York law, an agent who breaches the duty of loyalty must disgorge any compensation received from third parties in connection with transactions conducted on behalf of the principal.  Phansalkar, 344 F.3d at 203; Western Elec., 41 N.Y.2d at 295.  Consequently, Friedman and Ilowitz must disgorge the $2,776,527 and $1,222,117 in kickbacks they received,

16

respectively, from foreign manufacturers in connection with Sound Around transactions.[6]

A disloyal agent is also generally required to forfeit compensation paid by the principal during the period of disloyalty.[7] Phansalkar, 344 F.3d at 200.  In determining forfeiture, courts in this Circuit distinguish between salaried employees and agents paid solely on commission.  Design Strategy, Inc. v. Davis, 469 F.3d 284, 301 (2d Cir. 2006). Whereas a salaried employee forfeits all salary earned during the period of disloyalty, a commission-based agent may in some circumstances be subject to "transaction-by-transaction forfeiture," id. (citation omitted), limited to compensation

---

[6] As noted, Friedman and Ilowitz do not dispute that they received these amounts from foreign manufacturers, only their characterization as kickbacks.

[7] "New York courts have used two different standards to determine whether an employee's misbehavior warrants forfeiture, and the New York Court of Appeals has not resolved which one applies in particular circumstances." Yukos Cap. S.A.R.L. v. Feldman, 977 F.3d 216, 237 (2d Cir. 2020) (citation omitted).  The Turner standard requires forfeiture of compensation only when the disloyalty was "substantial." Id. (citation omitted).  Examples of insubstantial disloyalty might be "a single act, or where the employer knew of and tolerated the behavior." Id. (citation omitted).  Under the Murray standard, however, forfeiture is required following any misconduct that "rises to the level of a breach of a duty of loyalty." Id. (citation omitted). Considering the breadth of Friedman and Ilowitz's kickback scheme and competitive venture, no reasonable juror could conclude that their disloyalty was insubstantial.  Thus, forfeiture is warranted here under either standard.

actually "tainted by the breach of duty." Musico v. Champion Credit Corp., 764 F.2d 102, 112 (2d Cir. 1985). Such a limitation on forfeiture is permitted only where:

> (1) the parties had agreed that the agent will be paid on a task-by-task basis (e.g., a commission on each sale arranged by the agent), (2) the agent engaged in no misconduct at all with respect to certain tasks, and (3) the agent's disloyalty with respect to other tasks "neither tainted nor interfered with the completion of" the tasks as to which the agent was loyal.

Design Strategy, Inc., 469 F.3d at 301 (citation omitted).

Here, it is undisputed that the Individual Defendants were paid by Sound Around on commission during their period of disloyalty. They therefore must, at a minimum, forfeit all commissions earned from Sound Around on tainted transactions -- i.e., those for which they also received kickbacks.

Forfeiture of all commissions earned after the creation of ML Imports, however, is also warranted. Once the Individual Defendants formed ML Imports in 2022 while continuing to serve as Sound Around's buyers, they assumed interests adverse to Sound Around and placed all their subsequent services under an irreconcilable conflict. Under these circumstances, the Individual Defendants' disloyalty can no longer be separated into loyal and disloyal transactions. In other words, the Individual Defendants cannot show that their disloyalty "neither tainted nor interfered with" the work for which they seek to

retain compensation, which is required to justify more limited forfeiture.  Id. (citation omitted).

Accordingly, in addition to disgorging the kickbacks they received from manufacturers, Friedman and Ilowitz must forfeit all commissions paid by Sound Around on tainted transactions, as well as those they received from Sound Around after the formation of ML Imports.  The precise amount of those commissions will be determined at trial.

B.    Diversion of Corporate Opportunities Against the Individual Defendants (Count XIV)

The parties also cross-move for summary judgment on Count XIV, which asserts a claim for diversion of corporate opportunities against the Individual Defendants.  Sound Around contends that all products and brands that Friedman and Ilowitz diverted to ML Imports were corporate opportunities that should have been presented to, and rightfully belonged to, Sound Around.  The Individual Defendants respond that they were not obligated to present every potential product, brand, or business opportunity to Sound Around and that ML Imports pursued at least some opportunities outside the scope of any duty they owed.

Under New York law, corporate fiduciaries may not, without the corporation's consent, "divert and exploit for their own benefit any opportunity that should be deemed an asset of the corporation."  Alexander & Alexander of N.Y., Inc. v. Fritzen,

19

542 N.Y.S.2d 530, 533 (1st Dep't 1989).  To determine whether a venture constitutes a "corporate opportunity," New York courts consider several related formulations, including whether the corporation had a "tangible expectancy" in the opportunity, whether the opportunity was the same, necessary, or essential to the corporation's line of business, and whether the parties understood at the outset that the fiduciary would be free to pursue other interests, even ones "in direct competition" with the principal.  Id. at 534–35.  A tangible expectancy requires more than a "desire or a hope"; it reaches property or business that the corporation "needs or is seeking," or that the fiduciary is otherwise under a duty to acquire for it.  Burg v. Horn, 380 F.2d 897, 899 (2d Cir. 1967).  Even after one owing fiduciary duties leaves his corporate employment, he still may not use the company's confidential information to appropriate business opportunities belonging to the corporation.  Am. Fed. Grp., Ltd. v. Rothenberg, 136 F.3d 897, 906 (2d Cir. 1998).

On the present record, Sound Around is entitled to summary judgment on Count XIV.  As explained above, it is undisputed that the Individual Defendants, while serving as Sound Around's buyers, purchased products for ML Imports from many of the same manufacturers with whom they dealt on Sound Around's behalf.  Many of those products were the same or substantially similar to

Sound Around's offerings.  For example, the Individual Defendants' kitchenware and bakeware products sold under their Bakken-Swiss brand were strikingly similar to those sold under Sound Around's Nutrichef brand.  ML Imports also sold a 3-wheel scooter under its Lifemaster brand that was nearly identical to that sold by Sound Around under its Scootkid brand; ML Imports further undercut Sound Around in this product category by also offering a cheaper model without a seat.  In some instances, the Individual Defendants secured better pricing for these products than the prices they had negotiated with the same manufacturers for Sound Around.  Both ML Imports and Amazon sold their products to consumers primarily on Amazon.

Although the Individual Defendants emphasize that ML Imports also expanded into new product lines, it is undisputed that they concealed the existence of their competing business from Sound Around.  The Individual Defendants have failed to offer any evidence from which a jury could conclude that Sound Around, with its diverse product offerings, did not have at least a tangible expectancy in those new product lines as well. Based on this record, no reasonable jury could conclude that the Individual Defendants, at least while they served as Sound Around's buyers, were free to divert these opportunities, all of which fit squarely within Sound Around's line of business, to

their own competing business.  Sound Around will have an opportunity to prove at trial if, and for how long, its corporate opportunities continued to be wrongfully diverted even after the Individual Defendants left Sound Around.

Sound Around is therefore entitled to "its own lost profits" caused by the wrongful diversion of its business opportunities over the period during which the Individual Defendants worked for Sound Around, and for however long thereafter Sound Around is able to prove that its corporate opportunities continued to be diverted.  Young Adult Inst., Inc. v. Corp. Source, Inc., 230 N.Y.S.3d 43, 48 (1st Dep't 2025). Sound Around's lost profits, which may be measured "by reference to the profits made by the defendants" from the diverted business opportunities, id., will be determined at trial. Accordingly, Sound Around's motion for summary judgment on Count XIV is granted, and the Friedman Defendants' cross-motion for summary judgment is denied.

C.    Breach-of-Contract Counterclaims Against Sound Around
      (Counterclaims I, II)

Sound Around also seeks summary judgment on Counterclaims I and II, in which the Individual Defendants assert breach of contract claims for unpaid commissions.  The counterclaims allege that Sound Around intentionally inflated the expenses associated with selling goods to drive down the commissions it

22

owed to Friedman and Ilowitz.  The Individual Defendants' expert estimates that, between 2019 and 2024, Friedman and Ilowitz were underpaid by at least $7,869,315.  Sound Around argues that, by virtue of Friedman and Ilowitz's fiduciary duty breaches, the counterclaims fail as a matter of law.

Under New York law, an agent who breaches the duty of loyalty is "generally disentitled to recover his compensation, whether commissions or salary."  Yukos Cap., 977 F.3d at 229 (citation omitted).  As explained above, there is no genuine dispute that Friedman and Ilowitz breached their fiduciary duties by receiving kickbacks from manufacturers in connection with Sound Around's purchases and by competing against Sound Around without its knowledge or consent.  As a result of these breaches, the Individual Defendants are disentitled to commissions paid by Sound Around on transactions tainted by kickbacks, as well as all commissions received after the formation of ML Imports.  To the extent that Counterclaims I and II seek unpaid commissions on those transactions, they are barred as a matter of law and summary judgment is granted.  To the extent that Friedman and Ilowitz seek unpaid commissions on transactions that closed before ML Imports was formed, and on which they received no kickbacks, factual disputes remain, and summary judgment is denied.

D.    Aiding and Abetting a Breach of Fiduciary Duty Against the Corporate Defendants (Count XI)

Sound Around, the Friedman Defendants, and the Executive Defendants all move for summary judgment on Count XI.  Count XI asserts that the Corporate Defendants aided and abetted the Individual Defendants' breaches of their fiduciary duties.

Under New York law, a claim for aiding and abetting a breach of fiduciary duty requires: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 294 (2d Cir. 2006) (citation omitted). The second element requires the plaintiff to prove that the defendant "had actual knowledge of the breach of duty," and provided "substantial assistance" to the primary violator.  Id. (citation omitted).  As explained above, the Individual Defendants breached their fiduciary duties by receiving kickbacks from manufacturers on Sound Around's purchases and by operating an undisclosed competing business.  The derivative aiding-and-abetting claim is therefore evaluated in light of those established breaches.

It is undisputed that the kickbacks were directed to and processed through certain corporate entities associated with Friedman and Ilowitz.  Specifically, it is undisputed that

24

Friedman received his kickbacks through defendant MDF, and Ilowitz received a portion of his kickbacks through the Executive Defendants.

As to defendant MDF, there is no dispute that Friedman formed the entity to receive his commission payments from Sound Around and eventually received his kickbacks through that entity as well.  The routing of payments through MDF enabled the breach and constituted substantial assistance.  Thus, on this record, no reasonable jury could conclude that MDF lacked knowledge of or did not participate in Friedman's breach of fiduciary duty.

The record is less clear with respect to the Executive Defendants.  Although the entities received a large portion of Ilowitz's kickbacks, they are owned by a non-party, and the parties dispute the extent to which the entities -- and their owner -- knowingly participated in Ilowitz's conduct.  Those issues present questions of fact that cannot be resolved on summary judgment.

The remaining Corporate Defendants -- ML Imports, CYRF, LRI and WGI -- were used by Friedman and Ilowitz to operate their competing business.  ML Imports served as the principal vehicle for the venture, while CYRF, LRI, and WGI held the e-commerce accounts, trademarks, and payment channels through which the business was conducted and revenues were received.  Because

Friedman and Ilowitz operated the competing business through these entities, their knowledge and conduct are imputed to them.

Sound Around is therefore entitled to summary judgment on Count XI against MDF to the extent the claim is based on Friedman's receipt of kickbacks through MDF, and against ML Imports, CYRF, LRI, and WGI to the extent the claim is based on the Individual Defendants' competing business.  Sound Around's motion as to the Executive Defendants, as well as the cross-motions on this count, is otherwise denied.

E.    Trademark Infringement Against the Friedman Defendants (Count I)

Sound Around and the Friedman Defendants cross-move for summary judgment on Count I, which asserts trademark infringement against the Friedman Defendants.  Sound Around specifically alleges that the Friedman Defendants used its Scootkid mark on the packaging and advertisements for their competing scooter product.  The Friedman Defendants' motion for summary judgment on this count is granted.

To prevail on a trademark infringement claim, the plaintiff must prove "first, that its mark is protected, and second, that the defendant's use in commerce of the allegedly infringing mark would likely cause confusion as to the origin, sponsorship, or affiliation of the defendant's goods with plaintiff's goods." 1-800 Contacts, Inc. v. JAND, Inc., 119 F.4th 234, 246 (2d Cir.

2024) (citation omitted).  A mark's registration with the PTO creates a presumption that the mark is valid and entitled to protection.  Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 216 n.10 (2d Cir. 2012).  To rebut this presumption, the allegedly infringing party must show, by a preponderance of the evidence, that the mark is ineligible for protection.  Id.  A registered mark becomes "incontestable," however, after five years of continuous use.  Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000) (citing 15 U.S.C. § 1065).  The parties agree that the Scootkid mark was registered on April 9, 2024; thus, though still contestable, the mark is entitled to a presumption of validity.

Defendants contest the protectability of the Scootkid mark, which they argue is descriptive and without secondary meaning. To be entitled to protection, a mark must be "distinctive" rather than "generic."  Christian Louboutin S.A., 696 F.3d at 216 (citation omitted).  In judging inherent distinctiveness, courts classify marks, in ascending order of distinctiveness, as "(1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful."  Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 384-85 (2d Cir. 2005) (citation omitted).

A mark is "descriptive" if it merely conveys "something about a product," such as its "intended purpose, its function or

intended use, its size, or its merit." Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp., 991 F.2d 1072, 1076 (2d Cir. 1993). A mark is "suggestive" if it "suggests the product," but still requires "imagination to grasp the nature of the product." Id. A descriptive mark is "presumptively unprotectable, but can acquire a degree of protection if [it has] acquired secondary meaning, i.e. an acquired public recognition as a mark identifying the source." RiseandShine Corp. v. PepsiCo, Inc., 41 F.4th 112, 121 (2d Cir. 2022). A suggestive mark, by contrast, is entitled protected without a showing of secondary meaning. Id.

The defendants contend that the Scootkid mark is descriptive because it directly conveys the nature of the product -- a scooter for kids -- and it is not entitled to protection since Sound Around has introduced no evidence of secondary meaning. Sound Around argues that the Scootkid mark is suggestive, and thus no showing of secondary meaning is required.

The classification of a mark is ordinarily "a factual question," viewed from the perspective of the purchasing public. Lane Capital Mgmt. Inc. v. Lane Capital Mgmt. Inc., 192 F.3d 337, 344 (2d Cir. 1999). Here, however, there is no genuine dispute that the Scootkid mark is descriptive. It does no more

than describe the product's characteristics and requires no imagination to grasp the "linkage" between the mark and the "product on which [it is] employed." RiseandShine Corp., 41 F.4th 11 at 121. Thus, without any evidence of secondary meaning, no reasonable jury could conclude that the Scootkid mark is entitled to protection.[8]

Sound Around's summary judgment brief also includes allegations regarding infringement of its Pyle mark. Sound Around points to evidence that the Individual Defendants used Sound Around's Pyle mark on QR codes that misdirected the defendants' customers to Sound Around's registration page.

The defendants contend that they did not have notice through the pleadings or discovery that Sound Around claimed infringement of this mark. They assert that Sound Around failed to reference the Pyle mark in its complaint, Rule 26 Initial

---

[8] In addition to disputing the protectability of the mark, the parties devote substantial attention in their briefs to the second element of the infringement claim -- the likelihood of consumer confusion. Ordinarily, this element requires a fact-intensive analysis of the eight factors first set out in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961). But here, Sound Around alleges that the Individual Defendants used its exact Scootkid mark on their competing scooters. Courts in this District generally agree that, where counterfeit marks are involved, a step-by-step analysis of each Polaroid factor is unnecessary because "counterfeit marks are inherently confusing." Spin Master Ltd. v. Alan Yuan's Store, 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018) (citation omitted).

Disclosures, or any of its written discovery demands. Sound Around responds that it was not required to mention every infringed mark in its complaint but offers no evidence that it ever alerted the defendants during discovery that Count I encompassed infringement of the Pyle mark.

Under the federal rules of civil procedure, a complaint must provide a defendant with "fair notice of what the claim is and the grounds upon which it rests." Keiler v. Harlequin Enterprises Ltd., 751 F.3d 64, 70 (2d Cir. 2014); Fed. R. Civ. P. 8(a)(2). A defendant then learns more about the facts underlying the plaintiff's claims through the discovery process. If new bases for relief are uncovered during discovery, the plaintiff may file a motion to amend the complaint or perhaps otherwise provide formal notice of the enlargement of its claims. But a motion for summary judgment, filed after the close of fact discovery, is not the time to reshape the case. Accordingly, the law is clear that a party may not raise a new legal theory or factual allegation for the first time on summary judgment. See Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006) (declining to reach the merits of an argument that was raised for the first time on summary judgment); Montesa v. Schwartz, 836 F.3d 176, 191 n.1 (2d Cir. 2016) (declining to consider an allegation that appeared for the first time in the

plaintiffs' brief).  Sound Around's late-breaking claim related to the Pyle mark is therefore dismissed.  Accordingly, Sound Around's motion for summary judgment on Count I is denied, and the Friedman Defendants' cross-motion on this count is granted.

II.  The Friedman Defendants' Motion for Summary Judgment

The following addresses the remaining claims on which the Friedman Defendants seek summary judgment.  Their motion is granted on the unjust enrichment claim as to MDF; the conversion claim as to the unspecified sums the Individual Defendants allegedly spent on expenses for ML Imports; and the trademark claim as described above.  The motion is otherwise denied.

A.    Breach of Contract Against the Individual Defendants
      (Counts XV and XVI)

Counts XV and XVI assert claims for breach of contract against Friedman and Ilowitz, respectively.  To prevail on a breach of contract claim under New York law, a plaintiff must prove "(1) a contract; (2) performance of the contract by [plaintiff]; (3) breach by the [defendant]; and (4) damages." Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000) (citation omitted).

i.    Count XV Against Friedman

In Count XV, Sound Around alleges that Friedman breached a number of the provisions contained in his June 6, 2018 agreement (the "Agreement"), including the non-compete and confidentiality

provisions, by creating and operating ML Imports while working for Sound Around.  Friedman offers several reasons why he is entitled to summary judgment on this count, none of which have merit.

First, Friedman contends that, because the Agreement was drafted by a rabbi, it implicates issues of religious law that cannot be resolved by this Court.  The First Amendment forbids civil courts from interfering in or determining religious disputes.  Congregation Yetev Lev D'Satmar, Inc. v. Kahana, 9 N.Y.3d 282, 286 (2007).  But civil disputes involving religious parties or institutions may be adjudicated without offending the First Amendment if neutral principles of law are the basis for their resolution.  Id.; Belya v. Kapral, 45 F.4th 621, 630 (2d Cir. 2022).  In other words, judicial involvement is permitted when the case can be resolved by "secular law without undue entanglement in issues of religious doctrine."  Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94, 99 (2d Cir. 2002).

Although drafted by a rabbi, the Agreement is a standard employment contract containing non-compete and confidentiality provisions that Sound Around claims were violated.  The parties primarily dispute whether the Agreement still governed them at the time that Friedman started ML Imports, or whether it was

terminated at the end of 2018 when his job and commission structure changed.  Friedman points to no religious doctrine that is implicated in resolving these disputes, which can be decided using standard contract law principles.[9]  Thus, Friedman's first argument fails.

In the alternative, Friedman argues that the non-compete provision is unenforceable under New York law.  The provision prohibits him from competing with Sound Around during his employment and for two years thereafter, including by "selling goods that [he] brought into the enterprise, or other goods of [Sound Around's]," or by working "for others in this line of business."  Thus, if the contract was terminated in December 2018 as Friedman contends, an enforceable non-compete provision would not expire until December 2020.  Friedman contends that the non-compete provision is overbroad, and not necessary to protect any legitimate interest of Sound Around.

Under New York law, "restrictive covenants are disfavored," JLM Couture, Inc. v. Gutman, 91 F.4th 91, 106 (2d Cir. 2024), and are only enforceable to the extent that they are "reasonable

---

[9] The final paragraph of the Agreement, which describes the binding force of the parties' signatures, is the only section that refers to religious law.  But even that paragraph acknowledges that the signatures are binding "in accordance with state law."

in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 389 (1999) (citation omitted). Legitimate interests include the protection of trade secrets and confidential information, as well as any client good will developed at the employer's expense. Id. at 389, 392.

Sound Around argues that the provision is necessary to protect its trade secrets and confidential information, including supplier pricing, product-level profit margins, and its confidential "Top Products" list. It contends that the Individual Defendants used this information to identify Sound Around's most successful products and replicate them in their competing venture while negotiating more favorable prices.

To the extent the provision bars Friedman from competing with Sound Around during his employment, it is plainly reasonable. The closer question is its post-employment scope. As written, the restriction bars Friedman from employment "in this line of business" anywhere in the world for two years.

A two-year restriction without geographic limitation can be reasonable in certain circumstances, particularly where the employer's business is conducted worldwide to a global customer base. See, e.g., MasterCard Int'l Inc. v. Nike, Inc., 164 F.

34

Supp. 3d 592, 601 (S.D.N.Y. 2016).  Even so, the provision must be "no more restrictive than is necessary to protect" the employer's legitimate interests.  BDO Seidman, 93 N.Y.2d at 391. Read broadly, the phrase "this line of business" could sweep beyond those interests, potentially barring Friedman from working in any e-commerce business involving products purchased from foreign manufacturers in any nation.

Where a restrictive covenant contains both reasonable and overbroad provisions, a court may "make use of the tool of severance, paring an unreasonable restraint down to appropriate size and enforcing it."  Crye Precision LLC v. Duro Textiles, LLC, No. 15-cv-1681 (DLC), 2016 WL 1629343, at *6 (S.D.N.Y. Apr. 22, 2016), aff'd, 689 F. App'x 104 (2d Cir. 2017) (citation omitted).  Sound Around has introduced evidence that the Individual Defendants had access to and used confidential information concerning its products, and that it had a legitimate interest in preventing Friedman from using that information to compete against it in its product lines.  But it is not necessary to prohibit Friedman's employment across the full universe of e-commerce or import-related work to protect that legitimate interest.  Accordingly, the non-compete provision is enforceable during Friedman's employment and, for two years thereafter, as limited to employment involving the

importation and resale of goods that are the same as, directly competitive with, or substantially similar to the goods sold by Sound Around, or that are purchased from the same manufacturers that Friedman contacted on behalf of Sound Around.

Lastly, even if enforceable, Friedman contends that the Agreement was terminated and superseded in December 2018 when he transitioned from his dual roles as warehouse manager and buyer to serving exclusively as a buyer under a revised commission structure.  If Friedman succeeds in establishing that the contract was terminated at that time, then the non-compete provision expired in December 2020, long before he started ML Imports in 2022.  Sound Around disputes that it ever agreed to rescind the Agreement entirely, arguing instead that Friedman remained bound by its non-compete and confidentiality provisions even after he transitioned out of his warehouse manager role.

The Agreement is silent on how termination or modification must occur.  Under New York law, a contract is not deemed abandoned or rescinded absent "mutual, positive, unequivocal" conduct by both parties that is "inconsistent with an intent to be bound."  EMF Gen. Contracting Corp. v. Bisbee, 6 A.D.3d 45, 49 (N.Y. App. Div. 1st Dep't 2004) (citation omitted).  Similarly, any purported modification to a contract requires

proof of mutual assent to the new terms.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 783 (2d Cir. 2003).

The parties have submitted competing testimony regarding which provisions, if any, of the Agreement remained in effect during the period of Friedman's alleged breaches.  Because this competing evidence creates a genuine dispute of material fact that cannot be resolved on the present record, summary judgment on Count XV is denied.

### ii.  Count XVI

Count XVI asserts a breach of contract claim against Ilowitz.  Sound Around alleges that Ilowitz agreed, upon becoming a buyer, not to compete with the company or disclose its secrets while receiving compensation from the company. Ilowitz does not dispute that he had a contractual relationship with Sound Around -- indeed, he is suing Sound Around for breach of contract -- but denies that any agreement included the restrictive terms Sound Around seeks to enforce.  The parties agree that they had no written contract.

"To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound."  Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (citation omitted).  An oral contract is formed when the parties agree to terms through what was said despite

the absence of a written agreement.  Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007).  Even if not formally stated in words, a contract can be implied "from the facts and circumstances of the case," and is derived from the presumed intention of the parties "as indicated by their conduct."  Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 582 (2d Cir. 2006) (citation omitted).  Where, as here, the parties contest the terms of an oral or implied-in-fact contract, identifying the terms of the contract presents a question of fact.  Niemira v. Dean, 666 N.Y.S.2d 75, 75 (4th Dep't 1997).

The record is replete with disputes as to the terms governing the business relationship between Sound Around and Ilowitz, including whether Ilowitz was hired as an employee or independent contractor.  While Ilowitz contends that he has "never been restricted by a non-competition agreement," nor has he ever signed a "proprietary information agreement" with Sound Around, Sound Around submits that Ilowitz was at all times its employee who promised to keep its information confidential.  These disputes over the terms of any agreement governing Ilowitz's conduct preclude summary judgment on Count XVI.

38

B.    Unjust Enrichment Against MDF and the Executive
      Defendants (Count IX).[10]

The Friedman Defendants also move for summary judgment on Count IX, which asserts a claim of unjust enrichment against MDF and the Executive Defendants.  A claim for unjust enrichment requires proof "(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  Myun-Uk Choi v. Tower Rsch. Cap. LLC, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted).

A claim for unjust enrichment is only available "in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation."  Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012).  Thus, an unjust enrichment claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  Id.  "Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages."  NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (citation omitted).

---

[10] Although Count IX names all defendants, Sound Around appears to maintain this claim against MDF and the Executive Defendants only.

Sound Around alleges that MDF and the Executive Defendants were unjustly enriched by the Individual Defendants' sales commissions and kickbacks, which Sound Around is entitled to recover due to their breaches of their fiduciary duties. Sound Around's unjust enrichment claim (Count IX) against MDF is predicated on the same facts and seeks identical damages as its aiding and abetting claim (Count XI), which it also asserts against MDF. Accordingly, the Friedman Defendants' motion for summary judgment on Count IX as to MDF is granted. Because the Executive Defendants are owned and controlled by a third party, Count IX's theory of recovery against them is not entirely duplicative of the theory on which Count XI rests. Thus, the Executive Defendants' motion for summary judgment on Count IX is denied.

C.    Conversion Against the Individual Defendants (Count XIX).[11]

The Friedman Defendants also move for summary judgment on Count XIX, which asserts a claim of conversion against the Individual Defendants. Under New York law, a conversion takes place when "someone, intentionally and without authority, assumes or exercises control over personal property belonging to

---

[11] Although Count XIX names all defendants, Sound Around appears to maintain this claim against the Individual Defendants only.

someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50 (2006).

Money may be the subject of a conversion action only where (1) "there is a specific, identifiable fund," and (2) "an obligation to return or otherwise treat in a particular manner the specific fund in question." Bascunan v. Elsaca, 874 F.3d 806, 820 n.56 (2d Cir. 2017) (citation omitted). To determine whether funds are specifically identifiable, New York courts look to whether the funds "constitute a 'specific sum,' one that is 'determinate,' and reflects an 'ascertained' amount." Fam. Health Mgmt., LLC v. Rohan Devs., LLC, 171 N.Y.S.3d 44, 50 (1st Dep't 2022) (citation omitted). The inquiry does "not turn on nature of the account that received the funds." Id. at 48.

Sound Around makes two categories of allegations in support of its conversion claim. First, it alleges that Friedman took over $1 million from Sound Around's bank accounts for alleged work expenses, which in fact covered his and his wife's personal expenses. Friedman argues that summary judgment is warranted because Sound Around failed to identify specifically ascertainable and segregated money that he converted. Based on its expert's analysis of bank account and credit card statements, however, Sound Around has identified $323,243 in

41

payments for Friedman's wife's credit cards, and $712,220 in payments for Friedman's personal expenses.  These are sufficiently specific and identifiable sums to sustain a conversion claim, and any factual disputes regarding the accuracy of those amounts, as well as whether they covered business or personal expenses, must be resolved by a jury.

Second, Sound Around alleges that Friedman and Ilowitz used Sound Around's PayPal account to pay expenses for their competing business.  For example, Sound Around introduced evidence that Ilowitz paid two photographers "thousands of dollars" from Sound Around's PayPal account to photograph their Lifemaster and Bakken-Swiss products.  Nowhere in its summary judgment submissions, however, does Sound Around identify with any precision the "specific sum of money" that was converted.[12] Id. at 52.  Thus, Sound Around's conversion claim as to this second set of allegations against the Individual Defendants is dismissed.

---

[12] In fact, in the email that Sound Around relies on in support of these allegations, the photographer admits that he was unable to determine with certainty whether the brands associated with several of the photography projects paid for by Sound Around belonged to Sound Around or the Individual Defendants.

D.    Fraud Against the Individual Defendants (Count XVIII)

The Friedman Defendants also move for summary judgment on Count XVIII, which asserts a fraud claim against the Individual Defendants.  The elements of common law fraud in New York include: (1) a material, false representation; (2) an intent to defraud; and (3) reasonable reliance on the representation, causing damage to the plaintiff.  Hyosung Am., Inc. v. Sumagh Textile Co., 137 F.3d 75, 78 (2d Cir. 1998) (citation omitted). "[W]here a fiduciary relationship exists, the mere failure to disclose facts which one is required to disclose may constitute actual fraud, provided the fiduciary possesses the requisite intent to deceive."  Kaufman v. Cohen, 307 A.D.2d 113, 120 (1st Dep't 2003) (citation omitted).

Sound Around has introduced evidence that, but for Friedman and Ilowitz's intentional concealment of their kickback scheme and competing business, it would not have continued to retain and pay them as buyers.  Sound Around has also proffered evidence that Friedman and Ilowitz's kickback scheme caused manufacturers to increase the prices charged to Sound Around. Thus, evidence regarding concealment, reliance, and damage preclude summary judgment for the Friedman Defendants on this count.

E.   Misappropriation of Trade Secrets (Count VI) and
Confidential Information (Count V) Against the
Individual Defendants.[13]

The Friedman Defendants also move for summary judgment on

Sound Around's claims involving the misappropriation of trade

secrets (Count VI) and confidential information (Count V).  A

claim for misappropriation of trade secrets under the Defend

Trade Secrets Act (DTSA) requires the plaintiff to prove that it

possessed a trade secret that the defendants misappropriated.

18 U.S.C. § 1836(b)(1).  Under the DTSA, business information

constitutes a "trade secret" if:

> (A) the owner thereof has taken reasonable measures to
> keep such information secret; and
> (B) the information derives independent economic
> value, actual or potential, from not being generally
> known to, and not being readily ascertainable through
> proper means by, another person who can obtain
> economic value from the disclosure or use of the
> information[.]

18 U.S.C. § 1839(3).

Similarly, to prevail on a claim for misappropriation of

confidential information under New York law, a plaintiff must

demonstrate that the defendant used the plaintiff's confidential

information for the purpose of securing a competitive advantage.

See, e.g., Arcadia Biosciences, Inc. v. Vilmorin & Cie, 356 F.

---

[13] Although the complaint names all defendants in Counts V and
VI, Sound Around appears to maintain these claims against the
Individual Defendants only.

Supp. 3d 379, 401 (S.D.N.Y. 2019).  Where claims of misappropriation of trade secrets and confidential information are duplicative of each other, courts often analyze them together.  See, e.g., Better Holdco, Inc. v. Beeline Loans, Inc., 666 F. Supp. 3d 328, 394 (S.D.N.Y. 2023); A Star Grp., Inc. v. Manitoba Hydro, No. 13-cv-4501 (PAC), 2014 WL 2933155, at *8 (S.D.N.Y. June 30, 2014), aff'd, 621 Fed. App'x 681 (2d Cir. 2015).

Under both the DTSA and New York law, the plaintiff bears the burden of identifying a purported trade secret with sufficient specificity.  Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc., 68 F.4th 792, 800 (2d Cir. 2023).[14] "The existence of a trade secret, including whether it was adequately identified, is a fact-specific question to be decided on a case-by-case basis."  Id. at 801 (citation omitted).

Defendants argue that summary judgment should be granted in their favor because Sound Around has failed to identify a trade secret with particularity, instead invoking generic categories of business information.  In opposition, Sound Around proffers three specific and identifiable trade secrets: (1) the prices

---

[14] The Second Circuit has yet to articulate the "precise contours of the specificity requirement in the context of trade secrets." Syntel Sterling, 68 F.4th at 800 n.9.

paid by Sound Around to its manufacturers for the purchase of products to be sold online, (2) Sound Around's calculation of the gross profits generated by its sales for each of its products between 2020 and 2024, and (3) Sound Around's confidential reports identifying its top-selling and highest-profit products. These categories are sufficiently specific to create a triable issue as to the existence of a trade secret.

Defendants also argue that summary judgment should be granted because Sound Around did not take reasonable measures to keep the above-mentioned information secret. Sound Around has introduced evidence of such efforts, including its Policy and Practice Guide -- which requires company information, pricing, and proprietary data to be kept strictly confidential -- and the data privacy procedures it employs to protect its business information. Whether these measures were reasonable is another triable issue of fact.

Lastly, the Individual Defendants argue that summary judgment should be granted because Sound Around has failed to establish that its trade secrets were misappropriated. While the Individual Defendants allege that any use of Sound Around's confidential information was for their work for the company, Sound Around has introduced evidence that it was used to negotiate cheaper prices from manufacturers for the Individual

Defendants' competing business.  This evidence presents yet another triable issue of fact.  Thus, summary judgment on Count VI is denied.

F.   Tortious Interference with Business Expectancy Against the Individual Defendants (Count XVII)

The Friedman Defendants also seek summary judgment on Count XVII, which asserts a claim for tortious interference with business expectancy against the Individual Defendants.  Sound Around alleges that Friedman and Ilowitz interfered with its relationships with foreign manufacturers by demanding kickbacks on Sound Around orders and, in some instances, threatening to withhold business from manufacturers that did not comply.

To establish this claim under New York law, a plaintiff must prove that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (citation omitted).

Sound Around has introduced evidence that it maintained ongoing relationships with certain manufacturers and, when the Individual Defendants conditioned the continuation of Sound Around's business on paying kickbacks to them, the Individual

Defendants harmed Sound Around's relationships with those manufacturers. Indeed, an email from one Chinese manufacturer to Sound Around executives explained that, following Ilowitz's demand for a commission on Sound Around orders, the manufacturer "didn't do any other business with him" because they didn't "want to cooperate with money under the table."

The Individual Defendants contend that they, rather than Sound Around, had business relationships with manufacturers. Moreover, even if Sound Around had its own relationships, the Individual Defendants dispute that their conduct had any adverse effect on those relationships. Given these factual disputes, the Friedman Defendants' motion for summary judgment on Count XVII is denied.

G.    Accounting Against the Individual Defendants (Count XXII).[15]

The Friedman Defendants move for summary judgment on Count XXII, which asserts an equitable accounting claim. Under New York law, there are four elements to a claim for equitable accounting: "(1) a fiduciary relationship (2) entrustment of money or property (3) no other remedy and (4) a demand and

---

[15] Although the complaint names all defendants in Count XXII, Sound Around appears to maintain this claim against the Individual Defendants only.

48

refusal of an accounting." In re Guardianship of Kent, 729
N.Y.S.2d 352, 353 (N.Y. Sup. Ct. 2001).

The Individual Defendants argue they are entitled to
summary judgment on this count because they were not in a
fiduciary relationship with Sound Around. This argument fails
for the reasons explained above. The Individual Defendants
further argue that summary judgment is warranted because Sound
Around has already received all their bank statements, tax
returns, and other records through discovery, which Sound Around
disputes. Courts applying New York law have repeatedly observed
that a claim for an accounting is not mooted by the production
of financial documents. See, e.g., Soley v. Wasserman, No. 08-
cv-9262, 2013 WL 526732, at *6 (S.D.N.Y. Feb. 13, 2013)
(collecting cases). Thus, the Friedman Defendants' motion for
summary judgment on Count XXII is denied.

H.    Damages

Lastly, the Friedman Defendants argue that they are
entitled to summary judgment on all counts because Sound Around
has failed to substantiate any damages in support of its claims.
This argument is meritless. Sound Around has provided evidence
of damages it has suffered due to the defendants' conduct, such
as the compensation it paid the Individual Defendants, the
kickbacks the Individual Defendants received, and the amounts

that Friedman allegedly stole.  This is sufficient to create a triable issue of fact as to damages.

III. The Executive Defendants' Motion for Summary Judgment

The Executive Defendants also moved for summary judgment on all fourteen counts in which they were named.  Sound Around has since voluntarily dismissed all but two counts against the Executive Defendants: Count IX for unjust enrichment and Count XI for aiding and abetting breach of fiduciary duty, both of which were addressed above.  Thus, for the reasons already provided, the Executive Defendants' motion for summary judgment as to the aiding and abetting breach of fiduciary duty claim (Count XI) and the claim for unjust enrichment (Count IX) is denied.

## Conclusion

Sound Around's November 21, 2025 motion for partial summary judgment is granted in part.  Sound Around is granted summary judgment on Counts VIII and X with respect to the Individual Defendants' receipt of kickbacks and operation of a competing business; on Count XIV with respect to the Individual Defendants' diversion of corporate opportunities belonging to Sound Around to their competing business; on Counterclaims I and II to the extent they seek unpaid commissions on kickback-tainted transactions or for the period after the formation of ML

50

Imports; and on Count XI against MDF as to the kickback scheme, and against ML Imports, CYRF, LRI, and WGI as to the competing business.   Friedman and Ilowitz must disgorge the kickbacks they received from manufacturers in connection with Sound Around transactions and forfeit commissions paid by Sound Around on kickback-tainted transactions and after the formation of ML Imports, with the precise amount to be determined at trial. Sound Around will also have the opportunity to establish the profits it lost due to the Individual Defendants' wrongful diversion of its corporate opportunities at trial.   Sound Around's motion is otherwise denied.

The Friedman Defendants' November 21, 2025 motion for summary judgment is granted on Count I; Count IX against MDF; and on Count XIX as to the unspecified sums allegedly spent ML Imports' expenses.   The motion is otherwise denied.

The Executive Defendants' November 21, 2025 motion for summary judgment, as well as their November 24, 2024 amended motion for summary judgment, is denied.

Dated:    New York, New York
          April 10, 2026

_____
DENISE COTE
United States District Judge

51