UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOUND AROUND, INC.,

Plaintiff,

-v-

MOISES FRIEDMAN et al.,

Defendants.

24cv1986 (DLC)

OPINION AND ORDER

APPEARANCES:

For plaintiff Sound Around, Inc.:

Annelise Del Rivero
Gabriel Godoy-Dalmau
Jesus Enrique Cuza
Rebecca Canamero
Marisa A. Marinelli
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131

For defendants Moises Friedman; Shulim Eliezer Ilowitz; ML Imports, Inc.; CYRF, Inc.; LRI Group, LLC; MDF Marketing, Inc.; and World Group Import, LLC:

Nicholas Joseph Fortuna
Han Lin Rong
Megan Jeane Muoio
Allyn & Fortuna LLP
400 Madison Avenue, Suite 10d
New York, NY 10017

DENISE COTE, District Judge:

Plaintiff Sound Around, Inc. ("Sound Around") moves for sanctions and other relief based on defendants' alleged fraud on the court. Sound Around contends that defendants concealed tens

of thousands of relevant WeChat communications, destroyed or failed to preserve documentary evidence, instructed potential witnesses to conceal material facts, and made false statements under oath. For the following reasons, the motion is granted in part.

## Background

The Court assumes familiarity with the background of this litigation as set forth in its April 10 Opinion. Sound Around, Inc. v. Friedman, No. 24-cv-1986, 2026 WL 972984 (S.D.N.Y. Apr. 10, 2026) ("April 10 Opinion"). Briefly stated, Sound Around brought this action on March 24, 2024 against Moises Friedman ("Friedman"), Shulim Eliezer Ilowitz ("Ilowitz") (together, "defendants"), and several entities they control. Sound Around alleges that, while serving as buyers for Sound Around, Friedman and Ilowitz secretly received kickbacks from Chinese manufacturers in connection with Sound Around's purchases, operated a competing business, and diverted Sound Around's corporate opportunities to their competing venture.

On July 10, 2024, Sound Around served its first requests for production ("RFPs") on defendants. Among other things, the RFPs sought defendants' communications with Chinese manufacturers concerning products, payments, and requests for payment. According to defendants, those communications occurred

primarily through WeChat, a messaging platform commonly used in China. On March 14, 2025, defendants moved for a protective order narrowing Sound Around's RFPs and, while that motion remained pending, refused to produce any documents in response to most of the requests, including their WeChat communications with manufacturers.

On April 25, Magistrate Judge Katharine Parker narrowed plaintiff's RFPs. With respect to plaintiff's kickback-related RFPs, Judge Parker narrowed them to three categories of documents: (1) relevant bank statements, accounting records, and online pay records (such as Zelle/Pay Pal/Venmo statements); (2) communications directing, transmitting, or confirming payments made by the vendors/manufacturers to defendants, Congregation Kosover, or any entity in which defendants have an interest; and (3) communications reflecting requests by defendants to such vendors/manufacturers (or their employees) to make payments to themselves or any person or entity. Judge Parker ordered defendants to produce all documents consistent with her ruling within two weeks and criticized defendants' effort to "filibuster discovery by refusing to produce relevant and responsive documents which they have already identified and which do not pose any specific or unusual burden or annoyance."

At an April 28, 2025 conference, Sound Around advised Judge Parker that defendants had not produced their WeChat communications with Chinese manufacturers. Defendants represented that they had been collecting the WeChat messages "for a while," although defendants' data collector later attested that he did not obtain Ilowitz's and Friedman's cell phones until July and October 2025, respectively.

Defendants had still not produced the requested WeChat communications by October 12, 2025, when Sound Around sought permission to move to compel their production. At an October 22 conference, defendants represented to Judge Parker that technical complications had delayed production and Judge Parker allowed them one week to produce the relevant communications. In response, defendants produced 137 pages of excerpted WeChat conversations. Discovery ended on October 31.

On February 26, 2026, Sound Around moved to compel and for Rule 37 sanctions based on defendants' failure to produce all relevant WeChat messages in violation of Judge Parker's prior orders. On March 19, while that motion was pending, defendants produced an additional 181 pages of excerpted WeChat conversations.

In an Opinion of April 7, 2026, Judge Parker granted Sound Around's motion. She found that defendants had pursued a

"policy of filibustering discovery by holding relevant and producible documents hostage" and questioned whether defense counsel had been "forthright" with her in attributing the delay to technical difficulties. Judge Parker concluded that defendants' handling of the WeChat messages was "sufficiently egregious" to warrant an order compelling a broad production of WeChat communications within two weeks, and to award Sound Around its attorneys' fees and costs associated with filing the motion.

While this discovery dispute was ongoing, and without the benefit of the full universe of relevant WeChat messages, the parties cross-moved this Court for summary judgment. The motions became fully submitted on January 16, 2026.

The April 10 Opinion granted Sound Around's motion for summary judgment on several claims. It found that defendants, while serving as Sound Around's buyers, breached their fiduciary duties by receiving undisclosed kickbacks from several Chinese manufacturers and by forming and operating a competing business, ML Imports, Inc. ("ML Imports"), through which they usurped Sound Around's corporate opportunities. It ordered Friedman and Ilowitz to disgorge the kickback amounts established by the report of plaintiff's forensic accounting expert, Quentin Mimms

-- $2,776,527 as to Friedman and $1,222,117 as to Ilowitz.[1] April 10 Opinion, 2026 WL 972984, at *6.

To derive these amounts, Mr. Mimms analyzed bank statements for the accounts that defendants testified were used to receive kickbacks and tallied the payments made from Chinese entities into those accounts. According to Friedman, he received kickback payments through two bank accounts owned by MDF Marketing, Inc., and according to Ilowitz, he received kickback payments through accounts belonging to Executive Laundry, LLC, Levi Rottenberg, and Congregation Kozover (the "Executive Accounts"). Through his analysis of the bank statements for those accounts, Mr. Mimms identified six manufacturers who paid kickbacks to Friedman, and forty manufacturers who paid kickbacks to Ilowitz. On summary judgment, defendants did not dispute that they received these amounts from Chinese manufacturers. April 10 Opinion, 2026 WL 972984, at *6 n.6.

The Opinion also ordered disgorgement of commissions earned by defendants from Sound Around on tainted transactions prior to the formation of ML Imports,[2] all commissions earned after the

[1] In Mr. Mimms's first declaration submitted in support of this motion, he reduced the kickback amount for Ilowitz to $1,179,356 after removing payments from one entity, Dekel Abstract LLC, from his calculation.

[2] "Tainted transactions" are transactions between Sound Around and Chinese manufacturers on which defendants earned both a

formation of ML Imports in 2022,[3] and Sound Around's lost profits caused by defendants' diversion of corporate opportunities, with those amounts to be determined at trial. April 10 Opinion, 2026 WL 972984, at *17. Additional claims, including claims for tortious interference, fraud, and conversion, remain for trial, which is scheduled to begin on August 10.

On April 21 -- after the close of fact discovery, after expert reports had been served, and after summary judgment had been fully briefed and decided -- defendants produced more than 57,000 pages of additional WeChat communications. Sound Around contends that this production revealed extensive responsive communications that defendants should have produced during discovery, evidence concerning additional aspects of defendants' kickback arrangements, communications relating to the destruction or concealment of evidence, and false testimony regarding matters central to the litigation. Based on those allegations, Sound Around now seeks sanctions under Rule 37 and

---

commission from Sound Around and a secret kickback from the manufacturer.

[3] In the instant motion, plaintiff contends ML Imports was created on January 5, 2022. Defendants dispute this, arguing that they sold no products until late December 2022. Under the April 10 Opinion, however, the relevant date is the formation date, not the date of first sale. See April 10 Opinion, 2026 WL 972984, at *7. If the parties cannot agree on the formation date, the issue will be decided at trial.

the Court's inherent authority. Defendants opposed the motion, which became fully submitted on June 18.

On July 14, an evidentiary hearing was held regarding the allegations in the motion. Rebecca Canamero of Holland & Knight LLP, the partner in charge of reviewing the WeChat productions for plaintiff, and Mr. Mimms testified. Both witnesses were subject to cross examination. At the Court's direction, defendants submitted a post-hearing letter with supporting charts on July 15, and Sound Around filed a response on July 17. After hearing closing arguments, the Court issued preliminary rulings by telephone on July 17. This Opinion follows.

## Discussion

Sound Around moves for sanctions under both the Court's inherent authority and Rule 37 of the Federal Rules of Civil Procedure. Federal courts possess inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 107 (2017) (citation omitted). That power includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process," id. (citation omitted), including when a party has perpetrated a fraud on the court. Yukos Cap. S.A.R.L. v. Feldman, 977 F.3d 216, 235 (2d Cir. 2020). Fraud on the court occurs when a party has

"sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." Id. (citation omitted). Due to the seriousness of that finding, sanctions imposed pursuant to a court's inherent authority require clear and convincing evidence of bad faith. Id.

Courts are also authorized by Rule 37 of the Federal Rules of Civil Procedure to impose sanctions for failure to cooperate in discovery. Rule 37 specifies as follows:

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party . . ..

Fed. R. Civ. P. 37(b)(2)(A). Rule 37 also instructs that "[i]nstead of or in addition to" any such sanctions,

> the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

Rule 37(e) governs the loss of "electronically stored information that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). Upon a finding of prejudice, the Rule authorizes "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the court finds that a party "acted with the intent to deprive another party of the information's use in the litigation," it may, among other things, "presume the lost information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2).

Rule 37 does not displace a court's inherent power to impose sanctions for bad-faith conduct. Chambers v. NASCO, Inc., 501 U.S. 32, 46–51 (1991). Nevertheless, Rule 37 represents the "principal enforcement power to punish discovery abuse." Yukos, 977 F.3d at 235-36 (citation omitted). Accordingly, "[i]n the discovery context," inherent-power sanctions should "serve only as a useful backstop against discovery abuses that do not clearly violate [Rule 37]." Id. at 236.

In deciding whether to impose sanctions under Rule 37, courts consider, among other factors,

> (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance.

J.C. v. Zimmerman, 150 F.4th 136, 146 (2d Cir. 2025) (citation omitted). The sanction itself must be "just" and its severity "commensurate with the noncompliance." Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007).

Judge Parker's April 7, 2025 Opinion chronicled defendants' repeated failure to comply with their discovery obligations and imposed sanctions pursuant to Rule 37(b). The April 2026 production of WeChat messages revealed, however, that the scope and significance of defendants' noncompliance were greater than the record before Judge Parker could have shown. While the Court considers Sound Around's allegations concerning fraud on the court and spoliation, the analysis centers on Rule 37, which supplies the principal basis for the additional relief awarded here.

## I. Scope of the Discovery Violation

As already explained, the record establishes a prolonged failure to produce documents responsive to Sound Around's discovery requests and Judge Parker's April 25, 2025 discovery

order. Sound Around requested defendants' communications with Chinese manufacturers in July 2024. Judge Parker subsequently ordered defendants to produce communications directing, transmitting, confirming, or requesting payments between manufacturers and defendants or entities designated by them. Notwithstanding that order, defendants did not produce the overwhelming majority of their responsive WeChat communications until April 21, 2026 -- after the close of fact and expert discovery, after summary judgment had been fully briefed, and after the April 10 Opinion had been filed.

The progression of defendants' productions illustrates the scope of their noncompliance. Defendants first produced 137 pages of excerpted WeChat conversations in October 2025. While Sound Around's motion to compel remained pending, defendants produced an additional 181 pages in March 2026. Only after Judge Parker granted that motion and compelled a broader production did defendants produce more than 57,000 additional pages of WeChat communications in April 2026. And the April 2026 production was not merely cumulative of defendants' earlier productions. Comparison of the initial excerpts with the later production demonstrates that defendants had produced only portions of conversations while withholding substantial additional discussions concerning kickbacks, written kickback

agreements, payment instructions, and related matters, all of which fell plainly within Sound Around's July 10, 2024 RFPs and Judge Parker's April 25, 2025 production order.

The timing of the April 2026 production substantially affected Sound Around's ability to litigate this case. Because the communications were not produced until after discovery had closed, Sound Around lost the opportunity to examine witnesses regarding the newly disclosed communications, seek additional discovery concerning the kickback agreements and payment arrangements they referenced, pursue additional third-party discovery, or incorporate that information into Mr. Mimms's expert analysis. Discovery, expert analysis, and summary judgment therefore proceeded on a materially comprised evidentiary record.

Moreover, Defendants' conduct was not a single discovery failure. The record reflects repeated conduct that, collectively, frustrated efforts to determine the scope of defendants' kickback schemes. Even before litigation commenced, Ilowitz exchanged messages with Chinese manufacturers about deleting evidence of their kickback arrangement, concealing kickback payments, and lying to Sound Around about their relationship. During discovery, defendants redacted references to the kickback payments from their initial production of bank

records, removing those redactions only after judicial intervention. They then resisted production of responsive WeChat communications for nearly two years, producing only selected excerpts before ultimately producing more than 57,000 additional pages after Judge Parker compelled a broader production.[4] At every turn, defendants' actions frustrated Sound Around's ability to determine the amount of kickbacks defendants received and the manufacturers from whom they were obtained.

II. Effect of the Withheld Evidence

The April 2026 production materially expanded the evidentiary record by revealing information bearing directly on the scope and operation of defendants' kickback schemes. The production has therefore called into question the completeness of the record on which discovery, expert analysis, and summary judgment proceeded.

The newly produced WeChat messages indicate that defendants may have routed kickback payments through channels of which plaintiff was entirely unaware. For example, some messages suggest that defendants directed manufacturers to pay their kickbacks to other Chinese manufacturers in satisfaction of

[4] If this production had been timely made, Sound Around would have been able to explore as well whether the production represented the entire universe of WeChat communications, or whether it was materially incomplete.

defendants' debts, as well as to another third-party in Israel. Other messages discuss routing kickbacks through personal and spousal bank accounts. Taken together, those messages appear to contradict Friedman and Ilowitz's sworn testimony -- on which Mr. Mimms relied in calculating the amounts they received in kickbacks -- that all kickbacks were received through MDF Marketing and Executive Accounts.

The chats also indicate that defendants formalized their kickback arrangements with Chinese manufacturers in written contracts, which Chinese banks required to transmit payments to the United States. Defendants did not produce those agreements and testified at their deposition that they could not recall whether any such agreements existed. Plaintiff also presented testimony at the July 14 hearing that the newly produced communications identify twenty-five additional manufacturers who discussed paying kickbacks to defendants but whose names did not appear in the earlier WeChat productions nor the bank records that Mr. Mimms analyzed.

Defendants dispute that the April 2026 production revealed any new manufacturers or kickbacks that were not already disclosed elsewhere in discovery and accounted for in Mr. Mimms's August 2025 expert analysis. In his declaration submitted in opposition to this motion, Ilowitz makes three

important representations. First, he contends that eighteen of the twenty-five "new" manufacturers were accounted for in Mr. Mimms's expert report, only under different names, and that he did not receive any kickbacks from the others, notwithstanding messages discussing that possibility. Second, Ilowitz attests that Mr. Mimms's August 2025 expert report "provided a full accounting of the [kickbacks] received by [him] and Moises Friedman during the applicable period." And third, Ilowitz reiterates his position that all the kickbacks he received from Chinese manufacturers were paid through the Executive Accounts.

The present record, however, undermines Ilowitz's representations. Mr. Mimms testified at the July 14 hearing that, even using the different manufacturer names that Ilowitz identified in his declaration, certain kickbacks cannot be accounted for in the bank records he reviewed, and therefore most are not reflected in his 2025 damages analysis. Moreover, despite repeatedly taking the position that defendants' personal accounts were not used to receive kickback payments, defendants' July 15 letter nonetheless identifies a $3,000 kickback received into Ilowitz's personal Citibank account. Defendants have also provided no explanation for the messages indicating that defendants directed payments to other manufacturers in China to satisfy their debts, which would not appear in any of the bank

accounts that defendants identified as the exclusive repositories of their kickback proceeds and therefore could not have been accounted for in Mr. Mimms's analysis. In fact, defendants' July 15 letter admits that defendants have no record of these payments either.

Rather than contend with these inconsistencies, defendants instead emphasize that most of the kickback payments discussed in the April 2026 production can be reconstructed from bank records and other documents previously produced in discovery. They therefore contend that the April 2026 production did not materially alter the evidentiary landscape or Mr. Mimms's damages analysis. Defendants nevertheless acknowledge that six of the kickback payments discussed in the WeChat messages cannot be accounted for in any record produced in discovery.

In any event, the question is not merely whether Sound Around can now reconstruct most or all the transactions reflected in the messages from evidence produced elsewhere. Sound Around was entitled to receive the responsive WeChat communications from defendants during discovery, when it could have investigated the third-party recipients, sought the kickback agreements, questioned defendants and other witnesses about the payment arrangements, and incorporated the information into its expert analysis. Defendants' belated production

deprived Sound Around of those opportunities, and their false testimony about where they received kickbacks further hampered Sound Around's ability to make sense of the discovery record that it did receive before discovery closed. The resulting prejudice is not eliminated merely because defendants now contend that most of the underlying payments to which the newly produced WeChat messages refer can be located somewhere in the discovery record.

## III. Remaining Questions Regarding the Completeness of the Record

Lastly, the April 2026 production raises serious questions about whether the record reflects the complete universe of responsive documents. In February 2024, after Sound Around's principal had expressed an intent to sue, Ilowitz sent messages informing manufacturers that he had destroyed or was in the process of destroying relevant evidence. Those admissions include: "I removed [files]"; "I break the computer now"; "I break the old computer and buy new phone"; "I delete everything"; and "I throw the computer away." In a separate contemporaneous exchange, a manufacturer advised Ilowitz to "delete all record at Wechat," and Ilowitz responded, "Yes I delete all WeChat."

Ilowitz asserts that these statements were exaggerated reactions made when he believed that his computer had been

hacked, and that he took no action after learning otherwise. The present record does not permit the Court to determine the extent to which responsive information, if any, was actually destroyed. Nor does it permit the Court to determine whether the April 2026 production now represents the complete universe of responsive communications.

Those uncertainties are significant. They are reinforced by defendants' redaction of kickback payments in earlier document productions, delayed production of more than 57,000 pages of responsive communications, the omission of substantial portions of these conversations from earlier productions, and the absence of the kickback agreements referenced throughout the newly produced communications. Viewed together, these circumstances prevent a finding that defendants have fully disclosed their kickback schemes to Sound Around as they were required to do in discovery. Put another way, the defendants' conduct in discovery has made it impossible for a factfinder to determine the universe of Sound Around transactions on which defendants negotiated and/or received a kickback from Chinese manufacturers.

## IV. Remedy

Each of the relevant factors governing Rule 37 sanctions supports the imposition of additional relief. Defendants'

noncompliance was willful and persisted for more than a year despite repeated discovery requests, Judge Parker's April 25, 2025 production order, and subsequent orders compelling compliance. The lesser sanction previously imposed by Judge Parker is insufficient to remedy the resulting prejudice, as the April 2026 production of over 57,000 pages of responsive WeChat communications fundamentally altered the evidentiary record as the trial date approaches. Finally, the extensive litigation and repeated court orders compelling production of the WeChat communications provided ample warning to defendants that their continued withholding could result in additional sanctions. Accordingly, the following remedies are appropriate.

A. Disgorgement of Commissions and Dismissal of Counterclaims

The withheld communications bear directly on the identity of the manufacturers involved in defendants' kickback arrangements, the methods through which kickbacks were paid, the amount of the kickbacks, and the documents reflecting those arrangements. Because those materials were not timely produced, Sound Around lost the opportunity to investigate them while discovery remained open, and the Court cannot now distinguish with confidence between commissions defendants contend were earned on untainted transactions and commissions earned during their continuing course of disloyal conduct.

On summary judgment, the Court ordered defendants to forfeit all commissions they earned from Sound Around on tainted transactions until the formation of ML Imports, after which all commissions must be forfeited. April 10 Opinion, 2026 WL 972984, at *6-7. Under New York's faithless servant doctrine, a disloyal agent is generally required to forfeit all compensation paid by the principal during the period of disloyalty. Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003). For agents paid on commission, however, a more limited transaction-by-transaction forfeiture can be appropriate where an "agent's disloyalty with respect to other tasks neither tainted nor interfered with the completion of the tasks as to which the agent was loyal." Design Strategy, Inc. v. Davis, 469 F.3d 284, 301 (2d Cir. 2006) (citation omitted). Based on the summary judgment record, the Court concluded that, once defendants formed ML Imports, their disloyalty could "no longer be separated into loyal and disloyal transactions." April 10 Opinion, WL 972984, at *6. But prior to that formation, forfeiture of only tainted transactions was appropriate. Id.

The April 2026 production indicates, however, that even before the formation of ML Imports, defendants' kickback schemes were broader than the record available at summary judgment reflected. Defendants' discovery misconduct has also made it

impossible to determine with confidence which commissions, if any, were earned free of that disloyal conduct. Under these circumstances, defendants cannot insist upon the transaction-by-transaction precision that their own discovery violations have made impossible.

Accordingly, rather than requiring Sound Around to prove at trial which pre-ML Imports transactions were tainted, Friedman shall disgorge all the commissions Sound Around paid him from June 5, 2020 -- the date of his first established kickback -- through the end of his relationship with Sound Around, in the amount of $6,361,180. Ilowitz shall disgorge the commissions Sound Around paid him from April 20, 2020 -- the date of his first established kickback -- through the end of his relationship with Sound Around, in the amount of $3,274,639.

For the same reasons, defendants' counterclaims seeking unpaid commissions accruing during their respective periods of disloyalty are dismissed with prejudice. Having prevented Sound Around from establishing which transactions were unaffected by their disloyal conduct, defendants cannot recover commissions allegedly earned during that same period.

B. Revised Kickback Award

Amendment of the kickback award entered in the April 10 Opinion is also warranted. At summary judgment, the Court

adopted Mr. Mimms's August 2025 kickback calculation, which was undisputed, because it represented the best estimate supported by the record then available. That calculation depended substantially upon defendants' identification of the accounts through which they received commissions and upon the discovery defendants had produced before summary judgment.

But the April 2026 production revealed kickback agreements, payment instructions, and payment arrangements that were unknown to Sound Around during discovery. The parties continue to dispute the significance of those materials and whether particular payments ultimately can be reconstructed from documents that were obtained from elsewhere. The Court need not resolve each of those disputes. What the present record establishes is that defendants' discovery misconduct has deprived both Sound Around and the Court of confidence that the kickback amounts established at summary judgment reflected the full amount that defendants received. A party may not withhold the evidence most directly bearing on the amount of its wrongdoing and then insist that its adversary establish that amount with mathematical precision.

The appropriate remedy, therefore, is to amend the kickback amounts awarded on summary judgment to reflect an award calculated as 3% of the free-on-board ("FOB") price that Sound

Around paid manufacturers for purchases involving defendants during their periods of disloyalty. The evidence reflects that defendants had recurring arrangements with certain manufacturers under which they received kickbacks tied to the FOB value of Sound Around's purchases. Defendants' failure to timely produce the communications and related kickback agreements has made transaction-by-transaction or manufacturer-by-manufacturer proof more difficult and, for certain payments, impossible. Furthermore, the Court finds that 3% is a reasonable figure in light of WeChat communications indicating that defendants demanded kickbacks as high as 10% of the FOB price in some cases. Under these circumstances, a 3% measure represents the most reasonable approximation available on the present record, and any remaining uncertainty should be borne by defendants rather than Sound Around.[5]

Using this method of calculation, Mr. Mimms determined that Friedman and Ilowitz must disgorge \$3,814,970 and \$1,509,599 in kickbacks, respectively. This represents an increase in the disgorgement ordered at summary judgment of \$1,038,443 as to Friedman, and \$287,482 as to Ilowitz. Defendants offer no

[5] While defendants argue in opposition to plaintiff's motion for sanctions that it would be unreasonable to assume that every transaction was tainted, they do not argue that the 3% figure is itself unreasonable.

competing calculation. Accordingly, the April 10 kickback award is amended to reflect the increased amounts.

C. Remaining Requested Relief

Sound Around seeks additional relief, including asset disclosures, preservation restrictions, burden shifting, supplemental discovery, additional monetary sanctions, and an adverse jury instruction. The Court defers decision on those requests, which Sound Around may renew at an appropriate time.

**Conclusion**

Sound Around's June 3 motion is granted in part. Friedman and Ilowitz shall disgorge $6,361,180 and $3,274,639, respectively, amounting to all commissions earned from Sound Around during their periods of disloyalty. Defendants' counterclaims are dismissed with prejudice to the extent they seek unpaid or underpaid commissions accruing during that same period. Additionally, the Court's April 10 kickback award is amended to require Friedman and Ilowitz to disgorge $3,814,870 and $1,509,599, respectively. Decision is deferred on Sound Around's remaining requests for relief.

Dated: New York, New York
July 20, 2026

Denise Cote

DENISE COTE
United States District Judge